IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 12-1581-LPS |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| TREND MICRO INCORPORATED, AND | § | |
| TREND MICRO, INC. (USA), | § | |
| | § | **FILED UNDER SEAL** |
| Defendants. | § | |
| | § | |

## IV1'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON EIGHT TREND MICRO AFFIRMATIVE DEFENSES

Parker C. Folse III (admitted *pro hac vice*)
Brooke A.M. Taylor (admitted *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:    (206) 516-3880
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lgodfrey@susmangodfrey.com

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Richard W. Hess (admitted *pro hac vice*)
Weston O'Black (admitted *pro hac vice*)
John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:    (713) 653-7859
rhess@susmangodfrey.com
woblack@susmangodfrey.com
jlahad@susmangodfrey.com

Dated: June 14, 2013

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    Statement of the Nature and Stage of Proceedings ................................................................ 1

    A.    Summary of Argument ............................................................................................ 1

    B.    Concise Statement of Facts ..................................................................................... 1

II.   The Court Should Dismiss Eight of Trend's Affirmative Defenses ................................... 2

    A.    Trend's Laches Defenses for the '050 and '610 Patents Fails as a
        Matter of Law ........................................................................................................ 2

        1.    No Presumption of Laches Arises ............................................................. 3

        2.    Trend Cannot Show that IV1 Unreasonably and Inexcusably
            Delayed Filing Suit .................................................................................. 4

        3.    Trend Did Not Suffer Prejudice ................................................................ 6

    B.    Trend's Equitable Estoppel Defense Fails as a Matter of Law .............................. 13

        1.    Trend Cannot Show Misleading Conduct ................................................. 13

        2.    Trend Cannot Show Reliance ................................................................... 15

        3.    Trend Cannot Show Prejudice Based on Reliance ................................... 16

    C.    Trend's "Waiver," "Standing," and "Patent Exhaustion" Defenses Fail
        as a Matter of Law ................................................................................................ 16

    D.    Trend's Affirmative Defense that IV1 "Failed to Join Owners of the
        Patents-in-Suit" Fails as a Matter of Law. ............................................................ 18

    E.    Trend's "Implied License" Affirmative Defense Fails as a Matter of
        Law. ...................................................................................................................... 19

    F.    Trend's "Intervening Rights" Defense Fails as a Matter of Law .......................... 19

III.  Conclusion ........................................................................................................................ 20

## TABLE OF AUTHORITIES

Cases

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ............................................................................ passim

*Adelberg Labs., Inc. v. Miles, Inc.*,
    921 F.2d 1267 (Fed. Cir. 1990) ...........................................................................................5

*American Seating Co. v. USSC Group, Inc.*,
    514 F.3d 1262 (Fed. Cir. 2008) .........................................................................................10

*B. Braun Med., Inc. v. Abbott Labs.*,
    124 F.3d 1419 (Fed. Cir. 1997) .........................................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..........................................................................................17, 18, 19

*Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
    SA CV 03-110GLTANX, 2005 WL 5239257 (C.D. Cal. Apr. 11, 2005)........................17

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    679 F. Supp. 2d 512 (D. Del. 2010).....................................................................................7

*EZ Dock v. Schafer Sys., Inc.*,
    276 F.3d 1347 (Fed. Cir. 2002) .........................................................................................11

*F.D.I.C. v. Giammettei*,
    34 F.3d 51 (2d Cir. 1994) .................................................................................................17

*Hearing Components, Inc. v. Shure, Inc.*,
    600 F.3d 1357 (Fed. Cir. 2010) ...........................................................................................6

*Hemstreet v. Computer Entry Sys. Corp.*,
    972 F.2d 1290 (Fed. Cir. 1992) ...........................................................................................7

*Hottel Corp. v. Seaman Corp.*,
    833 F.2d 1570 (Fed. Cir. 1987) .........................................................................................13

*Humanscale Corp. v. CompX Int'l Inc.*,
    3:09-CV-86, 2010 WL 3222411 (E.D. Va. Aug. 16, 2010) .........................................8, 12

*i4i Ltd. P'Ship. v. Microsoft Corp.*,
    670 F. Supp. 2d 568 (E.D. Tex. 2009)..................................................................................8

*IXYS Corp. v. Advanced Power Tech., Inc.*,
    321 F. Supp. 2d 1156 (N.D. Cal. 2004) ...........................................................................5, 6

*LaForge & Budd Const. Co., v. U.S.*,
    48 Fed. Cl. 566 (Fed. Cl. 2001) ............................................................................................5

*Marine Polymer Techs, Inc. v. Hemcon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) ...................................................................................19, 20

*MCV, Inc. v. King-Seeley Thermos Co.*,
    870 F.2d 1568 (Fed. Cir. 1989) ............................................................................................6

*Mformation Techs., Inc. v. Research In Motion, Ltd.*,
    830 F. Supp. 2d 815 (N.D. Cal. 2011) ..................................................................................6

*Netscape Communications Corp. v. Valueclick, Inc.*,
    2010 WL 374396 (E.D. Va. 2010) ...............................................................................15, 16

*Plumley v. Mockett*,
    836 F. Supp. 2d 1053 (C.D. Cal. 2010) ..............................................................................16

*State Contracting & Engineering Corp. v. Condotee America Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003) ............................................................................................8

*Studiengesellschaft Kohle mbH v. Dart Indus. Inc.*,
    549 F. Supp. 716 (D. Del. 1982).........................................................................................5

*Wanlass v. General Elec. Co.*,
    148 F.3d 1334 (Fed. Cir. 1998) ............................................................................................5

Statutes

35 U.S.C. §§ 252, 307(b) & 316(b) ...............................................................................................19

Other Authorities

Annotated Patent Digest, §11:101 ...................................................................................................6

I.

Statement of the Nature and Stage of Proceedings

IV1 initiated this patent infringement lawsuit on December 8, 2010. D.I. 1. On February 14, 2011, Defendants Trend Micro Incorporated and Trend Micro, Inc. (USA) (collectively, "Trend") answered and asserted sixteen affirmative defenses. D.I. 28 at 8–11. Fact discovery ended on November 21, 2012. The parties have served expert reports, and all designated testifying experts have been deposed. The deadline for filing all *Daubert* and case dispositive motions is June 14, 2013. D.I. 501. At trial, IV1 will demonstrate that Trend infringes certain claims of U.S. Patent Nos. 5,987,610 ("the '610 patent"), 6,460,050 ("the '050 patent"), and 6,073,142 ("the '142 patent") (collectively, the "patents-in-suit").

A.    Summary of Argument

1.    Because no evidence supports Trend's affirmative defenses of laches, equitable estoppel, waiver, standing, patent exhaustion, "failure to join," implied license, and intervening rights, IV1 respectfully requests that the Court narrow the issues for trial and enter summary judgment in its favor on these defenses.

B.    Concise Statement of Facts

On August 24, 2011, IV1 served its Second Set of Common Interrogatories (Nos. 2–9) on Trend and the other defendants. Exhibit 1. IV1's Interrogatory No. 6 asked, "For each Asserted Patent, state separately and detail all factual and legal bases for each affirmative defense asserted in Your Answer." *Id.* at 9.

Trend responded on September 30, 2011 claiming that "[b]ecause discovery in this action is ongoing, Trend Micro has not yet fully discovered the facts relating to each of its claims and allegations." Exhibit 2 at 9. Trend added:

Trend Micro has provided such information in response to IV's First Set of Interrogatories To Defendants and in its initial disclosures. Additionally, Trend

1

Micro will produce relevant, non-privileged documents responsive to the subject matter of this Interrogatory pursuant to Fed. R. Civ. P. 33(d), to the extent not already produced Trend Micro also intends to provide such information in connection with expert reports to be submitted in this case, and will supplement its responses accordingly upon receipt of additional discovery.

*Id*. at 10.

Over two years later and on the last day of discovery, November 21, 2012, Trend supplemented those response. *See* Exhibit 3 at 11-16.[1]

II.

### The Court Should Dismiss Eight of Trend's Affirmative Defenses

Trend had nearly two years of discovery to develop the factual and evidentiary basis for each of its sixteen affirmative defenses. Trend and the other Defendants propounded dozens of interrogatories, served over 100 third-party subpoenas, and spent nearly 120 hours deposing party witnesses, inventors, previous assignees, putative prior artists, and other third parties. Despite that, Trend offers nothing more than conjecture and supposition in support of certain affirmative defenses. For others, Trend recites the elements of the defense and adds conclusory statements that the elements have been met. Because eight of Trend's affirmative defenses lack any support whatsoever, the Court should grant IV1 summary judgment on those defenses.

A.   Trend's Laches Defenses for the '050 and '610 Patents Fails as a Matter of Law

Trend cannot carry its burden to show a genuine issue of material fact for its laches affirmative defense for the '050 and '610 patents. Because no presumption of laches even arguably arises in this case, Trend must show that (1) IV1 delayed filing suit for an unreasonable and inexcusable length of time from when it knew or reasonably should have known of Trend's infringing activity; and (2) Trend suffered material prejudice as a result of the delay. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032–1033 (Fed. Cir. 1992). Trend

---

[1] Trend Micro served a corrected version of the First Supplemental Response on December 21, 2012. Exhibit 4 at 11-16.

cannot raise a material fact issue for either element of the *Aukerman* test for two of the patents-in-suit, the '050 and '610 patents.

      1.    <u>No Presumption of Laches Arises</u>

Trend cannot rely on a presumption of laches in this case. A presumption of laches arises when a patent holder delays bringing suit for more than six years after the date the patent holder knew or should have known of the alleged infringer's activity. *Id.* at 1028. This presumption shifts the burden of production from the accused infringer to the patent holder. *Id.* at 1034 ("The six years for laches begins with a patentee's knowledge of infringement and counts forward.").

IV1 and Trend agree that Trend released the first product accused of infringing the '610 patent in the first quarter of 2007—less than four years before IV1 filed suit in December 2010. Exhibit 4 at 15. For the '050, the parties disagree when Trend's alleged infringement began, but that disagreement makes no difference. Trend argues that it did not release its first accused product until February 2007, *id.*, but that date predates the lawsuit by less than the required six years.

Trend's response to Interrogatory No. 6 shows it has no evidence regarding when IV1 knew or should have known of Trend's infringing activity:

> More than six years have passed between when IV or its predecessors-in-interest knew or should have known of activity that IV now alleges infringes its Asserted Patents and when IV conducted licensing discussions, giving rise to a presumption of laches.

Exhibit 4 at 11. Trend cites no deposition testimony or documents. Nor does it adduce any facts or evidence that indicate that IV1 or a previous assignee knew or should have known about Trend's infringing activity before Trend released the accused products. Trend likewise cites no evidence regarding IV1's (or a previous assignee's) knowledge in the time between the accused products' release and IV1's filing suit. Trend's inability to find evidence in support—combined

with the fact that Trend did not introduce the accused products until well within the six-year period—vitiates any argument that a presumption arises. Accordingly, the burden remains with Trend to show unreasonable and inexcusable delay and material prejudice. *Aukerman*, 960 F.2d at 1037–1038 (stating that when the presumption evaporates, "the accused infringer is left to its proof").

2.    Trend Cannot Show that IV1 Unreasonably and Inexcusably Delayed Filing Suit

Trend cannot show that IV1 unreasonably and inexcusably delayed in bringing suit on the '050 or '610 patents. Under this laches prong, Trend must show unreasonable and inexcusable delay "from the time the plaintiff knew or reasonably should have known of its claim against defendant." *Id.* at 1032.

As discussed above, Trend does not attempt to show that IV1 knew or should have known of its infringing activities and failed to act. But even if Trend tried to make such a showing—which it did not—the earliest possible date that IV1 could have been aware of Trend's infringement of '050 or '610 patents is when Trend released its accused products. The dates when Trend first released the accused products are as follows:

| Patent | Date of First Infringement | |
|---|---|---|
| | IV1's Position | Trend's Position |
| '610 Patent | First quarter 2007 | First quarter 2007[2] |
| '050 Patent | September 2006 | February 2007 |

---

[2] In its interrogatory response, Trend said that the first infringing date for the '610 patent was February 26, 2007:

> Hosted Email Security is the only product that remains accused of infringing the '610 patent-in-suit.  Hosted Email Security was formerly called InterScan Messaging Hosted Security ("IMHS"). IMHS was first offered for sale or sold on February 26, 2007.  The date of the hypothetical negotiation would therefore have been the day before February 26, 2007.

Exhibit 4 at 15.

Accordingly, Trend must demonstrate that <u>3 years and 9 months</u> for the '610 patent and <u>4 years and 3 months</u> (or 3 years and 10 months under Trend's position) for the '050 patent constitute unreasonable and inexcusable delay.  Even accepting Trend's first-infringement positions, Trend makes no effort in its Interrogatory No. 6 response to show how this "delay" is unreasonable or inexcusable.  Trend says only that:

> IV and its predecessors-in-interest with respect to the Asserted Patents have unreasonably and inexcusably delayed filing suit and the delay has resulted in material prejudice to Trend Micro.

Exhibit 4 at 11.  Again, this unsupported statement raises no fact issue and says nothing about when Trend believes IV1 knew or should have known of alleged infringement.  This statement certainly says nothing about how or why three or four years is unreasonable or inexcusable.

Trend cannot rely solely on the fact that time has passed to show unreasonable and inexcusable delay.  "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances."  *Aukerman*, 960 F.2d at 1032; *see also LaForge & Budd Const. Co., v. U.S.*, 48 Fed. Cl. 566, 570 (Fed. Cl. 2001) ("[I]t is not enough to show merely a lapse of time from the date a cause of action first accrued.").  Nevertheless, courts have typically found a period "unreasonable" only when it "substantially exceeded" the periods at issue here.  *See, e.g., Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1271 (Fed. Cir. 1990) (finding 11-year period to be unreasonable delay); *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1336–1337 (Fed. Cir. 1998) (finding more than six years to be unreasonable); s*ee also Studiengesellschaft Kohle mbH v. Dart Indus. Inc.*, 549 F. Supp. 716, 759 (D. Del. 1982) (no laches where a patentee delayed a "relatively short period" of three years and eight months).

Moreover, courts addressing similar periods of time have held that three or four years is "unreasonable only when that delay was accompanied by extraneous improper tactics or misleading conduct by the plaintiff.'"  *IXYS Corp. v. Advanced Power Tech., Inc.*, 321

F. Supp. 2d 1156, 1163 (N.D. Cal. 2004) (citing *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1572 (Fed. Cir. 1989)); *Mformation Techs., Inc. v. Research In Motion, Ltd.*, 830 F. Supp. 2d 815, 824-25 (N.D. Cal. 2011) (citing *IXYS*).  According to one treatise, "misleading conduct" relevant to laches in such a situation mirrors the conduct required for an estoppel defense:

> Thus, for delays less than six years to be unreasonable and invoke laches, the patentee must have engaged in conduct akin to that necessary to find an estoppel, *i.e.*, the patentee's conduct and delay must have reasonably misled the accused infringer into thinking the patentee had abandoned its claim or acquiesced.

ROBERT A. MATTHEWS, ANNOTATED PATENT DIGEST, §11:101.  Trend has not and cannot point to any misleading conduct.  Without that, any purported "delay" in this case cannot be unreasonable or inexcusable as a matter of law.  Because Trend lacks evidence to support the first element of its laches defense, the Court should grant summary judgment in IVI's favor.

    3.    <u>Trend Did Not Suffer Prejudice</u>

Even if IVI delayed in filing suit unreasonably and without excuse—which it did not—this affirmative defense fails because Trend cannot carry its burden of demonstrating that it suffered material prejudice as a result.  Such prejudice may be either "economic" or "evidentiary." *Aukerman*, 960 F.2d at 1033.  Trend's boilerplate response to Interrogatory No. 6 alleges both types of prejudice, but even if Trend proves its allegations, it still cannot meet its burden.

    a.  <u>Trend's Conduct Since Litigation Began Precludes a Finding of Economic Prejudice</u>

Showing economic prejudice requires Trend to demonstrate that it "suffer[ed] the loss of monetary investments or incur[ed] damages that likely would have been prevented by earlier suit." *Id.*  It requires more than "merely" those "damages or monetary losses ... attributable to a finding of liability for infringement." *Id.*; *see also Hearing Components, Inc. v. Shure, Inc.*, 600

F.3d 1357, 1376 (Fed. Cir. 2010) ("It is not economic prejudice to pay damages from infringing sales of products … over a longer period of time resulting from delay."). Otherwise, economic prejudice would arise in every suit. Instead, Courts "look for a change in the economic position of the alleged infringer during the period of delay." *Aukerman*, 960 F.2d at 1033.

Trend points to no such change. Trend's answer to Interrogatory No. 6 lists two types of economic prejudice:

> [T]he loss of opportunities to investigate alternative possible designs prior to the start of allegedly infringing activity, such as the launch of Trend Micro's Smart Protection Network in 2008, *see, e.g.*, TMIVA0038481,[3] and . . .

> [T]he loss of investment sunk costs from developing and marketing the Accused Products.

Exhibit 4 at 12. These bald allegations do not suffice. Trend has not presented evidence of any efforts it would have undertaken to reevaluate its business plans had it been aware of IV1's intentions. More important, the Federal Circuit has made clear that even tens of millions of dollars in increased expenditures, including research and development costs, marketing costs, and costs associated with expanded manufacturing, are not relevant to the consideration of laches because they do not have an "explicitly proven nexus" to the delay. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992). In *Hemstreet*, the Federal Circuit cautioned:

> It is not enough that the alleged infringer changed his position–i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity.

*Id.*; *see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 526 (D. Del. 2010) (relying on *Hemstreet*).

---

[3] Here again, Trend contradicts itself about when it believes infringement began. According to this interrogatory response, it did not begin infringing the '050 and '610 patents until 2008. If so, then IV's purported delay was less than three years for both patents.

In *State Contracting & Engineering Corp. v. Condotee America Inc.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003), the Federal Circuit rejected a claim that the accused infringers had suffered economic prejudice when they continued to incorporate the patented invention into their products after learning of the patent. In that case, the court found that given the infringers' decision to keep incorporating the patented invention into accused products despite learning of the patent, the infringers could not demonstrate that "an earlier filing would have led them to alter their behavior or avoid incurring certain expenditures." *Id.* at 1066-67. The court also found the accused infringers had failed to show how they "changed their economic position during the period of delay by making the types of expenditures that are recognized as giving rise to material prejudice." *Id.* at 1066. Instead, the accused infringers merely complained that their prejudice was the amount of their infringement liability, which is not sufficient to support a laches defense. *Id.* (citing *Aukerman*, 960 F.2d at 1033).

In this case, as in *State Contracting*, Trend cannot show "a nexus" between any purported filing delays and Trend's expenditures and investments in the accused products. In other words, an earlier suit by IV1 would have had no impact on Trend's conduct. Trend's behavior since receiving the Complaint confirms this. Since IV1 initiated this suit: (1) Trend continued and continues to sell and offer for sale the accused products and services, (2) Trend continued and continues to tout the accused features' benefits to customers, and (3) Trend has vigorously contested validity and infringement of both patents. These facts weigh heavily against a finding of economic prejudice. *See, e.g., Humanscale Corp. v. CompX Int'l Inc.*, 3:09-CV-86, 2010 WL 3222411, at *13 (E.D. Va. Aug. 16, 2010) (holding that infringer failed to prove economic prejudice where it "continued producing and selling the accused produced based on its own legal and business judgment" not due to any delay); *i4i Ltd. P'Ship. v. Microsoft Corp.*, 670

F. Supp. 2d 568, 605 (E.D. Tex. 2009) (finding "no evidence" that infringer's actions would have changed when infringer intended to continue incorporating the accused feature after receiving notice).

There is simply no basis on which the Court might conclude that earlier notice of infringement claims would have caused Trend to behave any differently than it actually did. Therefore, Trend cannot meet its burden to show economic prejudice.

        b.    <u>Trend Cannot Show Evidentiary Prejudice</u>

Evidentiary prejudice may arise where the "ability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events" undermines the Court's ability to judge facts. *Aukerman*, 960 F.2d at 1033.

Trend fails to mention any evidentiary prejudice for the '610 patent in its response to Interrogatory No. 6. As to the '050 patent, Trend complains that it has been prejudiced by the "disappearance" of a single CD:

> Trend Micro has been materially prejudiced, including by: 1) the loss and/or destruction of evidence by the Plaintiff, which evidence could have demonstrated that the alleged claimed inventions of the '050 patent had been publicly disclosed to others and/or used by others in the United States prior to the critical date of the '050 patent; *see, e.g.*, Talley Depo. Tr. at 61-113; Pace Depo. Tr. at 96-97; 284-289 . . . 3) the death of Mr. Harlan Dybdahl, the broker who negotiated the transaction in which a shell company controlled by Intellectual Ventures acquired the '050 patent, and who could have confirmed the transfer of a database (now lost or destroyed) from Messrs. Pace and Talley to Mr. Nagy and Intellectual Ventures, see, e.g., IV-SEC-00115117 to 134; Tr.; Talley Depo Tr. at 61-113; IV-SEC-00019902; Merino Tr.; Pace Tr.

Exhibit 4 at 12. In other words, Trend says it needs the CD because (1) the CD could potentially support a public use defense and (2) Trend could have deposed Mr. Dybdahl to see if he knew whether the CD was ever sent to IV's agents.[4] Both of those arguments fail as a matter of law.

---

[4] Trend's allegation that IV1 "destroyed" the CD is absurd, as Trend's own interrogatory response demonstrates. In one breath, Trend says that IV1 "destroyed" the CD, and then in the

First, Trend cannot demonstrate public use even if the CD existed and could be located.

The Federal Circuit has described the public use inquiry as follows:

> Whether a patent is invalid for public use is a question of law based on underlying facts. The test for whether an invention is ineligible for a patent due to the section 102(b) public use bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited. Consideration of public use includes analysis of, *inter alia,* the nature of and public access to activities involving the invention; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. An invention is in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality. However, use of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded as such a use.

*Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008). There can be no

public use in this case because the contents of the CD constitute part of a system the inventors

assembled to test their idea. '050 Patent inventor Mark Pace repeatedly characterized the

database on the CD as part of the test system:



next, *Trend admits that it does not know if IV1 ever even had the CD.* As discussed in detail in its Response to Defendants' Motion for Sanctions (D.I. 465), IV1 performed an exhaustive search for the CD and has no record that it or its agents ever received it. Even if it had, the notion that IV1's duty to preserve documents arose before the accused products were even created is unsupportable.



Exhibit 5, 09/18/2012 Pace Dep. Tr, at 122:12–19, 122:25–123:3, 124:5–8; *see also id.* at 96:16–97:10; 215:9–11.  Defendants themselves similarly recognized that the contents of the CD were part of the inventors' experimental prototype.  *See, e.g.*, D.I. 455 at 3 ("Pace and Talley built a prototype of their invention as they worked.").

Moreover, Defendants have not alleged that the CD constitutes commercial exploitation of the '050 patent's technology.  Indeed, Defendants, including Trend, have alleged that commercialization came much later.  D.I. 455 at 15 ("Similarly, in November or December 1998, Talley might have shown the prototype invention to Luke Miller, who Pace and Talley later brought in to help commercialize their work and whose declaration regarding commercialization was sent with the database to IV.").

The experimental nature of the database is fatal to Trend's attempt to show public use because "an inventor who seeks to perfect his discovery may conduct extensive testing without losing his right to obtain a patent for his invention—<u>even if such testing occurs in the public eye</u>.  The law has long recognized the distinction between inventions put to experimental use and products sold commercially."  *EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1352 (Fed. Cir. 2002) (emphasis added).  Trend cannot have suffered prejudice to its attempt to prove prior public use when the database was, in its own words, an experimental <u>prototype</u>.

Defendants probed both inventors of the '050 patent to uncover any other non-experimental use and came up empty.  Mr. Talley, one of the co-inventors, testified that he does not recall public users of the prototype, and it "seems very unlikely" and that "it's not the kind of thing I would have done."  Exhibit 6, 11/09/2012 Talley Dep. Tr., at 110:22–111:13; Exhibit 5, 09/18/2012 Pace Dep. Tr., at 97:24–25 ("█████████████████████████████████

███████████

Second, no reasonable fact finder could conclude that Trend could have obtained information—much less admissible evidence—from Mr. Harlan Dybdahl.  Trend bears the burden of showing that its evidentiary prejudice occurred during the period of delay.  *See Humanscale*, 2010 WL 3222411 at *12.  According to Trend, the laches clock should not start until February 14, 2007, when Trend claims that the first '050 accused product was released.  But Mr. Dybdahl—the witness Trend now wants to depose—died less than a week later.[5]

Even if IV1 filed suit on February 14, 2007 – the day that Trend contends it infringement began – no fact finder could conclude that within the next six days, Trend would have been aware of the CD and of Mr. Dybdahl's potential knowledge of the CD, and been able to locate and depose Mr. Dybdahl before his passing.  Similarly, if the laches period for the '050 patent began in September 2006—the date when IV1 asserts Trend began infringing—there is no evidentiary basis to conclude that Trend would have been able to locate and depose Mr. Dybdahl within the six months before his passing.  Trend's "evidentiary prejudice" here is pure pretext.

Trend cannot meet its burden to show evidentiary prejudice as a result of the delay, and as demonstrated above, Trend cannot meet its burden to show economic prejudice.

---

[5] Mr. Dybdahl passed away on February 20, 2007.  Exhibit 7, Harlan Dybdahl, 68, PLAINSMAN (Feb. 28, 2007), *available at* http://www.plainsman.com/V2_news_articles.php?heading= 0&story_id=467&page=72).

Accordingly, because Trend cannot satisfy either prong of the laches requirement, much less both, IV1 asks that the Court enter judgment against Trend on its laches defense as to the '050 and '610 patents.

B.  **Trend's Equitable Estoppel Defense Fails as a Matter of Law**

Trend has no evidence to support its equitable estoppel affirmative defense.  Equitable estoppel differs from laches in that it does not offer a presumption based on the length of delay in filing suit.  Trend must establish three elements in order to prevail:

> 1) The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer.  "Conduct" includes specific statements, action, inaction or silence where there was an obligation to speak;
>
> 2) The alleged infringer relies on that conduct; and
>
> 3) Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*See Aukerman*, 960 F.2d at 1028 (emphasis added).  Trend cannot prove any of these three elements as to any of the patents-in-suit.

1.  Trend Cannot Show Misleading Conduct

First, Trend cannot establish that IV1 (or any of the previous assignees) engaged in misleading conduct that led Trend to infer reasonably that it would not face a patent infringement suit.  In its response to Interrogatory No. 6, Trend describes its factual and legal support for its equitable estoppel defense only as delay and not misleading conduct:

> IV and its predecessors-in-interest with respect to the Asserted Patents have unreasonably and inexcusably delayed filing suit and the delay has resulted in material prejudice to Trend Micro.

Exhibit 4 at 11.  Delay cannot support an equitable estoppel defense.  *See Aukerman*, 960 F.2d at 1043 (stating that silence by the patentee in insufficient to give rise to estoppel (citing *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573 (Fed. Cir. 1987)).

To show "misleading conduct," Trend must proffer evidence that it was at least aware of the patents-in-suit or the patentees and that it was lulled into a false assumption that an infringement claim would not be brought. *See Aukerman*, 960 F.2d at 1028. But Trend's position is precisely the opposite. Trend's designated corporate representative on knowledge of the patents-in-suit, in-house attorney John Chen, testified that Trend *was **not** aware* of the patents-in-suit before this lawsuit:



Exhibit 8, 10/23/2012 Chen Dep. Tr., at 175:12–17. Trend's interrogatory response confirms this:

> IV did not provide any notice to Trend Micro of alleged infringement of IV's Asserted Patents prior to the filing of this suit.

Exhibit 4 at 14. There can be no misleading conduct when the accused infringer is not aware of the patents. *Aukerman*, 960 F.2d at 1042 ("It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent.").

Trend's lack of knowledge about the patents-in-suit kills its equitable estoppel defense. But even if Mr. Chen was wrong about Trend's knowledge, Trend has adduced no evidence that IV1 (or previous assignees) misled Trend to think that it would not be sued on the patents. Not a single document or line of testimony even hints that IV1 or any previous assignees lead Trend to believe that patent rights would not be enforced.

To the extent that Trend argues that it was misled by silence or inaction—an argument it has not yet made—Trend must prove "other facts respecting the relationship or contacts between

14

the parties to give rise to the necessary inference that the claim against [it] is abandoned." *Id.*; *see also id.* at 1043–1044 ("[S]ilence alone will not create an estoppel unless there was a clear duty to speak or somehow the patentee's continued silence reinforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested.") (internal citations omitted). Trend has not presented any such facts.

No evidence exists that IV1 or a previous assignee engaged in misleading conduct about any of the patents-in-suit, and summary judgment is appropriate. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997) (reversing estoppel finding based on a lack of evidence that the patentee communicated anything to the two accused infringers regarding the specific accused product); *Netscape Communications Corp. v. Valueclick, Inc.*, 2010 WL 374396, at \*21 (E.D. Va. 2010) (granting patentee summary judgment on defense of equitable estoppel when accused infringer failed to show any evidence that the patentee had a commercial relationship with the accused infringer that required the patentee to disclose the patent to the accused infringer).

2.     Trend Cannot Show Reliance

Trend likewise cannot establish the second element of its estoppel defense as to any of the patents-in-suit. The second element, reliance, "is essential to equitable estoppel." *Aukerman*, 960 F.2d at 1042. The Federal Circuit described this element in the following way:

> The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action. Reliance is not the same as prejudice or harm, although frequently confused. An infringer can build a plant being entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with building the plant.

*Id.* at 1042–1043.  In this case, Trend cannot show reliance—substantial or otherwise—as required for equitable estoppel.  As discussed, there is no misleading conduct on which to rely.  Trend offers no evidence to the contrary in its interrogatory response.  Indeed, no evidence exists that Trend even knew of the patents-in-suit.  To the extent Trend points to the purported "delay" in filing suit, Trend has offered no explanation how it relied on that "delay" other than to note "loss of opportunities to investigate alternative possible designs" and the "loss of investment sunk costs."  Exhibit 4 at 12.  Thus, Trend cannot establish this element, as a matter of law, as to any patent-in-suit.  *Netscape Commc'ns*, 2010 WL 374396, at *21 (granting summary judgment of no estoppel where accused infringer failed to show a relationship between it and the patentee).

      3.    <u>Trend Cannot Show Prejudice Based on Reliance</u>

To meet the third element of estoppel, "the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed."  *Aukerman*, 960 F.2d at 1043.  As with laches, this material prejudice can be economic or evidentiary.  *Id.*  As discussed above, Trend does not even allege prejudice as to the '610 and '142 patents.  Trend's claims of prejudice as to the '050 patent do not suffice as a matter of law for the reasons articulated in Section A.3 above.  Because Trend cannot demonstrate this or any other element of estoppel, summary judgment is appropriate.  *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1079-80 (C.D. Cal. 2010) (granting partial summary on equitable estoppel defense when infringer failed to show reliance and prejudice).

Thus, IV1 respectfully requests that the Court enter judgment against Trend on its equitable estoppel defense as to all three of the patents-in-suit.

C.    <u>Trend's "Waiver," "Standing," and "Patent Exhaustion" Defenses Fail as a Matter of Law</u>

Trend has no evidence to support its affirmative defenses of "waiver," "standing," or "patent exhaustion."  Trend pleaded these defenses in its Answer:

### FOURTH AFFIRMATIVE DEFENSE

49     Intellectual Ventures' claims are barred, in whole or in part, by the doctrine of laches, waiver, or unclean hands.  Intellectual Ventures' unclean hands are due at least to its spoliation of evidence.

### SEVENTH AFFIRMATIVE DEFENSE

52.     On information and belief, Intellectual Ventures' claims are barred, in whole or in part, because Intellectual Ventures does not possess all rights in the patents-in-suit and, therefore, Intellectual Ventures lacks standing to bring suit.

### SIXTEENTH AFFIRMATIVE DEFENSE

61.     Intellectual Ventures' claims are barred in whole or in part by the doctrine of patent exhaustion.

D.I. 28 at 9–11.  Trend's response to Interrogatory No. 6 does not address the "waiver," "standing," or "patent exhaustion" defenses.  *See generally* Exhibit 4.  Trend has no evidence to support these affirmative defenses, so they must be struck on summary judgment.  *See F.D.I.C. v. Giammettei*, 34 F.3d 51, 54-55 (2d Cir. 1994) (stating that where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff "may satisfy its Rule 56 burden by showing 'that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.")  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (brackets in original); *see also Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, SA CV 03-110GLTANX, 2005 WL 5239257, at *13 (C.D. Cal. Apr. 11, 2005) (finding movant satisfied its summary judgment burden to show the absence of support for non-movant's affirmative defenses by pointing to non-movant's failure to identify facts supporting those defenses in its interrogatory responses).

Accordingly, the Court should enter summary judgment in IV1's favor on these three defenses as to all three of the patents-in-suit.

D.    Trend's Affirmative Defense that IV1 "Failed to Join Owners of the Patents-in-Suit"
      Fails as a Matter of Law.

Trend has no evidence to support its sixth affirmative defense that IV1's "claims are barred, in whole or in part, because Intellectual Ventures failed to join the owner or owners of one or more of the patents-in-suit." D.I. 28 at 9.  In its response to Interrogatory No. 6, Trend stated that it bases its affirmative defense on IV1's counsel statements during a hearing on August 31, 2012:

> IV has conceded that Intellectual Ventures Management, LLC ("IVM"), which serves as the general partner to Intellectual Ventures Investment Fund I, L.P., the indirect owner of the named plaintiff, is a real party in interest to this lawsuit. See August 31, 2012 Tr. of Teleconference Hearing at 5-16.

Exhibit 4 at 14.  Trend mischaracterizes IV1's counsel's statements during the hearing.  A copy of the pages cited by Trend in its interrogatory answer are found at Exhibit 9.  At the hearing, former defendant McAfee, Inc. sought to compel deposition testimony from both IV1 and IVM. Counsel for IV1 stated that, for purposes of document production and deposition and to ease Defendants' discovery efforts, IV1 would not distinguish between IV1 and IVM despite their separate legal organization.  At no point did IV1's counsel state that IVM is a "real party in interest to this lawsuit," which is likely why Trend did not quote a specific statement from the hearing that supports its defense and instead cites to *17 pages* of the hearing transcript. Moreover, the undisputed assignment history of the patents-in-suit confirms that IV1 – not IVM or anyone else – is the sole owner of the patents and real party in interest. *See* Exhibit 10.  Trend cannot cite a single document or line of deposition testimony to show otherwise.  Because Trend has no evidence to support this affirmative defense, IV1 asks that the Court grant summary judgment as to all three patents-in-suit. *Celotex Corp.,* 477 U.S. at 325.

E.    Trend's "Implied License" Affirmative Defense Fails as a Matter of Law.

Trend has no evidence to support its fifteenth affirmative defense that IV1's "claims are barred in whole or in part by the doctrine of implied license." D.I. 28 at 11. In its response to Interrogatory No. 6, Trend provided no facts supporting this defense:

> To the extent that third-party software is required for the practice of the asserted claims in this litigation and that third-party software is subject to a prior license to the patents-in-suit, Trend Micro intends to argue that Trend Micro would have an implied license and/or that IV's rights with respect to the patents are exhausted.

Exhibit 4 at 16. Trend cites no "third-party software" or "prior licenses" to the patents-in-suit. Instead, Trend relies on speculation and conjecture. Because Trend has no evidence to support its affirmative defense of "implied license," IV1 respectfully requests that the Court enter summary judgment in IV1's favor on this defense as to all patents-in-suit. *Celotex Corp.*, 477 U.S. at 325.

F.    Trend's "Intervening Rights" Defense Fails as a Matter of Law

Trend has no intervening rights, as a matter of law, for any of the patents-in-suit. First, neither the '610 patent nor the '142 patent are involved in any reexamination or reissue proceedings. Intervening rights cannot accrue in the absence of reexamination or reissue proceedings. *Marine Polymer Techs, Inc. v. Hemcon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012); *see also* 35 U.S.C. §§ 252, 307(b) & 316(b).

Second, the reexamination proceedings of the '050 patent, filed by co-defendant Symantec Corporation nearly two years after this suit began, remain years away from completion. More important, none of the asserted claims have been amended during reexamination. *See* Exhibit 11, 02/11/2013 Response to Office Action. Intervening rights do not arise without claim amendment:

[A]fter a patent emerges from reexamination, the statue makes available absolute and equitable intervening rights to the same extent provided in the reissue statute, but <u>only</u> with respect to "amended or new" claims in the reexamined patent.

Whether or not Marine Polymer's arguments to the examiner and cancellation of claims during reexamination may have affected the remaining claims' effective scope, they did not "amend" those claims for intervening rights purposes or make them "new," which is what the statutory language requires. Intervening rights are therefore unavailable under § 307(b) <u>as a matter of law</u>.

*Marine Polymer*, 672 F.3d at 1362–63 (emphasis added). Therefore, because IV1 has not amended the asserted claims of the '050 patent, intervening rights are unavailable as a matter of law, and the Court should grant summary judgment in IV1's favor on this affirmative defense as to all patents-in-suit.

### III.
### Conclusion

IV1 respectfully requests that the Court grant judgment in its favor on Trend's affirmative defenses of laches as to the '050 and '610 patents, and equitable estoppel, waiver, standing, patent exhaustion, "failure to join," implied license, and intervening rights as to all three patents-in-suit.

Dated: June 14, 2013                                   Respectfully submitted,

                                                       FARNAN LLP

                                                       /s/Brian E. Farnan
                                                       Brian E. Farnan (Bar No. 4089)
                                                       919 North Market Street, 12th Floor
                                                       Wilmington, DE 19801
                                                       (302) 777-0300
                                                       bfarnan@farnanlaw.com

                                                       Parker C. Folse III (admitted *pro hac vice*)
                                                       Brooke A.M. Taylor (admitted *pro hac vice*)
                                                       Lindsey N. Godfrey (admitted *pro hac vice*)
                                                       SUSMAN GODFREY L.L.P.
                                                       1201 Third Avenue, Suite 3800
                                                       Seattle, WA 98101-3000
                                                       Telephone:    (206) 516-3880

pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lgodfrey@susmangodfrey.com

Richard W. Hess (admitted *pro hac vice*)
Weston O'Black (admitted *pro hac vice*)
John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:     (713) 653-7859
rhess@susmangodfrey.com
woblack@susmangodfrey.com
jlahad@susmangodfrey.com

*Attorneys for Plaintiff*