IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | C.A. No. 12-cv-1581 (LPS) |
| | § | |
| TREND MICRO INCORPORATED, et al. | § | JURY TRIAL DEMAND |
| | § | |
| Defendants. | § | **FILED UNDER SEAL** |

**IV1'S ANSWERING BRIEF TO TREND MICRO'S MOTION TO EXCLUDE
OPINIONS OF IV1 DAMAGES EXPERT MICHAEL WAGNER**

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Parker C. Folse III *(admitted pro hac vice)*
Brooke A.M. Taylor *(admitted pro hac vice)*
Lindsey N. Godfrey *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:     (206) 516-3880
Facsimile:     (206) 516-3883

Richard W. Hess (admitted pro hac vice)
Weston O'Black *(admitted pro hac vice)*
John P. Lahad *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:     (713) 653-7859
Facsimile:     (713) 654-3386

Dated: July 12, 2013                    *Counsel for Plaintiff*

# TABLE OF CONTENTS

I. Nature and Stage of Proceedings, Argument Summary and Statement of Facts ........................1

    A.      Statement of the Nature and Stage of the Proceedings .............................1

    B.      Argument Summary.............................................................................................1

    C.      Statement of Facts.............................................................................................1

II. Argument..............................................................................................................................2

    A.      Wagner Properly Considered Trend's ████ Technology License.................2

          1.      Trend's ████ technology license embodies the '050 patent's technology. ....................................................................2

          2.      Trend argues for a comparability standard that would exclude its own expert opinions ...................................................6

          3.      Trend repeatedly withheld ████ discovery, and now seeks to rely on selective, late-produced and attorney-sponsored documents. ....................................................................7

          4.      IV1 had no opportunity to discover reasons behind ████ amendment and Trend never explained any. .............................10

          5.      Mr. Wagner's description of the changing malware environment does not undercut ████ ████ agreement's relevance. ....................................................................11

          6.      Trend's complaints regarding the return on investment for patents-in-suit are misleading and legally irrelevant. ................12

    B.      Wagner's Use of a Third Party Patent Valuation Is Reasonable. .........................13

    C.      Wagner Appropriately Used Three Trend Licenses to the Comparable ████ as His Baseline Agreement................................................15

    D.      Mr. Wagner Appropriately Used ████ ████ as a Reasonableness Check. ....................................................................17

III. Conclusion ......................................................................................................................19

# TABLE OF AUTHORITIES

Cases

ActiveVideo Networks Inc. v. Verizon Commc'ns, Inc.,
   694 F.3d 1312 (Fed. Cir. 2012)............................................................. 4

i4i Ltd. P'ship v. Microsoft Corp.,
   598 F.3d 831 (Fed. Cir. 2010)............................................................. 6

LaserDynamics, Inc. v. Quanta Computer, Inc.,
   694 F.3d 51 (Fed. Cir. 2012)................................................. 11, 13, 14

Lucent Technologies, Inc. v. Gateway, Inc.,
   580 F.3d 1301 (Fed. Cir. 2009)................................................. 14, 16

ResQNet.com v. Lansa Inc.,
   594 F.3d 860 (Fed. Cir. 2010)........................................................ passim

Versata Software v. SAP Am., Inc.,
   __ F. 3d __, 2012-1029, 2013 WL 1810957 (Fed. Cir. May 1, 2013)............................... 4

Rules

Federal Rule of Evidence 702(b) ............................................................. 19

Federal Rule of Evidence 703.................................................................. 19

# I.
## Nature and Stage of Proceedings,
## Argument Summary and Statement of Facts

**A.**  Statement of the Nature and Stage of the Proceedings

In this patent infringement lawsuit, discovery ended on November 21, 2012. The parties served opening expert reports on February 15, 2013, rebuttal reports on March 20, 2013 and reply reports on April 3, 2013. All designated testifying experts have been deposed. The deadline for filing all *Daubert* and case dispositive motions was June 14, 2013. (D.I. 501). This is IV1's Answering Brief to Trend's *Daubert* motion regarding IV1 damages expert Michael Wagner.

**B.**  Argument Summary

1. Mr. Wagner appropriately considered ████████████████████ as part of his reasonable royalty analysis for the '050 Patent. It maps precisely to a key infringing technology in Trend's accused products and is the most reliable agreement in the record for this patent.

2. For the '142 Patent, IV1's expert is entitled to rely on █████████████ ████████████████████████████████████ According to the unchallenged opinions provided by Dr. McDaniel, ████████████████████

3. Mr. Wagner has sufficiently supported his '610 Patent damages opinion by focusing on ██████████████████ ████████████████████ In fact, Trend cites it as prior art to the '610.

4. Trend cannot exclude any discussion of the ██████████████ on *Daubert* grounds, and Mr. Wagner correctly used ███████ to validate his damages opinions for the patents-in-suit.

**C.**  Statement of Facts

For clarity, this brief sets facts forth in the remaining sections as appropriate.

## II.

## Argument

Because Mr. Wagner has provided a careful, meticulously supported opinion that hews closely to controlling legal standards regarding patent infringement damages, the Court should deny Trend's motion.

A.    Wagner Properly Considered Trend's Blue Coat Technology License

Trend's principal challenge to Mr. Wagner's damages opinion relies on Trend's attempt to disassociate itself from its own ██████████████████████ Mr. Wagner uses the ████ ████████ as a baseline agreement, then adjusts it according to the *Georgia-Pacific* factors. That license carefully traces the footprint of the infringing technology that Trend employs in its antivirus products and is closely comparable both technically and economically to the baseline agreement in the hypothetical negotiation.

1.    Trend's ████████ technology license embodies the '050 patent's technology.

Trend's 2009 license of its ██████████████████ is by far the most relevant and probative agreement to the '050 Patent hypothetical negotiation. Because that agreement ties so closely to '050 Patent's technology, Trend relies on exaggeration to dissociate ██████████ ██████ rom its '050-infringing technology. *See* D.I. 74 at 1 ██████████ "has nothing to do with any of the patents-in-suit"); *id.* at 7 (██████████ "has no connection whatsoever to the hypothetical negotiation").[1]

---

[1] Trend also confusingly states that ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

Trend cannot divorce the ███████ agreement from Trend's infringing technology given the following inarguable facts:

- First, there is no dispute that Trend ████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████

  ██ ████████████████████████████████████████ ████████████████████████████

  ██ ███████████████████████████████████████ ██████████████████████

Nonetheless, Trend seeks to fit this case under the Federal Circuit's decision in *ResQNet.com v. Lansa Inc.*, 594 F.3d 860 (Fed. Cir. 2010) claiming the ███████████ should be excluded because it is not a patent license. But *ResQNet.com* doesn't rest on the *type* of license employed, and contains no bar on using technology licenses. Rather, *ResQNet.com* focuses on the comparability of license agreements to ensure that parties consider "the most reliable license in this record." The *ResQNet.com* majority did not exclude expert testimony for basing an opinion on software licenses *because they were software licenses*. Rather, the excluded expert erred by basing his opinion on software licenses that bore "no relation to the claimed invention." *See ResQNet.com*, 594 F.3d at 870.

In ████████████████████████████████████████████ ███ which, like Trend and Symantec, is an internet security provider. *See* Exh. B. ███





Because ████████████████████████████████ that also infringes the '050 Patent, the ████████████████ is the most reliable agreement in the record for analyzing patent damages. Trend points to no prohibition on an expert considering technology licenses as part of a hypothetical negotiation analysis, and Federal Circuit precedent allows consideration of such agreements. *See, e.g., Versata Software v. SAP Am., Inc.*, __ F. 3d __, 2012-1029, 2013 WL 1810957 (Fed. Cir. May 1, 2013) (affirming damages expert's opinion that used software product license as comparable for purpose of valuing hypothetical license); *ActiveVideo Networks Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1333 (Fed. Cir. 2012) (affirming damage expert's use of two agreements, one of which did not involve patents in suit or the technologies in the case, and the other which included both patents and software services).

In *ResQNet*, the plaintiff's damages expert, Dr. David, based his opinion on five "re-branding or re-bundling licenses" that, among other things, "furnished finished software products." *Id.* But, the majority noted, none of those five licenses "showed any discernible link to the claimed technology." *Id.* The Court repeatedly emphasized that a party offering a comparable agreement must link that agreement to the patent license in a hypothetical negotiation. But ResQNet.com's expert offered "little or no evidence of a link between the re-bundling licenses and the claimed invention," *id.* at 871, and the licenses he used "were absolutely silent on any relation to the patents in suit." *Id.*

This absence of any connection between the *ResQNet.com* licenses and ResQNet.com's claimed invention fundamentally distinguishes that case from this one.[2] ██████████████ ██████████████ covers the precise infringing technology embodied in the '050 Patent: ██████ ██████████████████████████ Trend products call this technology ██████ Per Dr. McDaniel, IV1's technical expert:

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████

*See* Exh. E, at 110.

Given the overlap between the ██████████ agreement and the technology identified in the '050 patent, this agreement is highly probative of a reasonable royalty. The connection between

---

[2] *ResQNet.com* is also distinguishable because the unrelated licenses in that case included licenses to "finished software products." *ResQNet.com*, 594 F.3d at 870. ██████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████

the ███████ license and the infringing technology appears on the face of the ███████ agreement. ████████████████████████████████████████

████████████████████████████████████████████████████████

███████ Trend's complaints plainly go to the weight that the jury should afford Mr. Wagner's testimony and not its admissibility. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 857–58 (Fed. Cir. 2010) (affirming trial court's admission of Mr. Wagner's damages opinions and finding that he grounded his baseline agreement on sufficient facts and evidence).

The ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ technology comparable to the '050 Patent, ██████████████

██████████████████████

2.  <u>Trend argues for a comparability standard that would exclude its own expert opinions</u>

Trend argues that its ██████████ technology license cannot be probative because Trend *received* payments under that license but would be *making* payments under the hypothetical agreement. Trend provides no case law or analysis for why it should matter if payor and payee are reversed. If Trend's argument were right (it is not), the Court would need to exclude the *defendants'* expert opinions related to the acquisition cost for the patents-in-suit. In those transactions, IV paid the purchase price; in the hypothetical negotiation with the defendants, IV would receive payments.

---

[3] Trend attempts to minimize ██████████ importance, calling it ████████████████████████████ ██████████████████████ Trend cites to two specific paragraphs of "Ex. 40," to support that claim, but no such support exists at the cited reference, which is Mr. Wagner's opening report.

3. Trend repeatedly withheld ██████ discovery, and now seeks to rely on selective, late-produced and attorney-sponsored documents.

Trend complains that Mr. Wagner has not based his ██████ opinion on "sufficient facts or data." (D.I. 74 at 10). And Symantec complains that it was denied the opportunity to discover details of the ██████ agreement during the fact discovery period. But Trend is solely responsible for any asserted lack of information regarding the ██████ agreement.

Both before and after the close of discovery, Trend repeatedly stonewalled and stalled IV1's effort to obtain information about the ██████ agreement. After IV1 served Mr. Wagner's damages report in February, three months after discovery closed, Trend "discovered" additional ██████ documents that Trend provided to its expert, and which Trend and Symantec are now seeking to use to discredit Mr. Wagner's opinion.

The ██████ saga began shortly before IV1's deposition of John Chen on October 23, Trend's 30(b)(6) witness on licensing agreements. On October 10 and October 15, IV1 asked Trend to confirm it had produced all of its reseller and OEM agreements (which indisputably covers the ██████ Agreement). *See* Exh. H, October 15, 2012 email from W. O'Black to S. Bartow (item 6); October 24, 2012 email from W. O'Black to S. Bartow (item 9). Trend did not respond, but on October 23, 2012, made its 30(b)(6) witness on licensing agreements available for deposition. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████ *See* Exh. I, Chen Tr. 138:13–19; 145:8–12. The day after Mr. Chen's deposition, IV1 asked Trend again to produce all of its reseller and OEM agreements that covered Trend's accused core engines. On November 8, 2012, Trend's counsel said it was "still

---

[4] The only reason Trend was caught withholding the ██████ agreement was because a 160-page document buried in Trend's production has a single sentence that ████████████████████ ███████████████████████████████████████████████.

checking" with Trend about these withheld licenses. *See* Exh. K, Nov. 19, 2012 email from W. O'Black.

On November 19, 2012, IV1 repeated its request for OEM agreements, specifically naming the ████████ agreement about which ████████████████ *See* Exh. K, Nov. 19, 2012 email from W. O'Black. Trend held on to the ████████ agreement until the last day of discovery, when Trend *mailed it* on November 21, 2012. *See* Exh. L, (production letter). IV received it after Thanksgiving. *See* Exh. M. ████████████████████████ ████████████████████████████████ Thus, Mr. Wagner prepared and submitted his expert report without the ability to consider the very documents that Trend now seeks to use to disqualify that report. Because Trend was sitting on them.

Trend also obstructed IV1's efforts to depose knowledgeable Trend employees about the ████████ agreement. Before receiving the ████████ agreement (and thus, before IV1 knew which Trend executive signed it) IV1 timely requested the deposition of Trend's John Maddison. *See* Exh. N, October 22, 2012 email from W. O'Black to S. Bartow. During a November 8, 2012 meet and confer call, Trend's counsel informed IV1 that Mr. Maddison was "probably" no longer an employee of Trend but suggested his deposition could go forward outside the discovery period. Exh. O, Nov. 8, 2012 email from W. O'Black.

On November 14, Trend's counsel confirmed that Mr. Maddison was no longer employed by Trend, but reversed course on a deposition, stating "we do not see the need for testimony from these individuals, as their testimony is likely to be cumulative to the testimony of other Trend witnesses." Exh. P, Nov. 14, 2012 email from S. Bartow to W. O'Black. The next two months consisted of what appeared to be Trend's attempts to evade having Trend's ████████



▮▮▮▮▮ agreement sit for a deposition.[5] Ultimately, IV1 deposed Mr. Maddison, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exh. G, Maddison Tr. 48:4–9; 51:4–52:18; 52:22–53:17.

Despite IV1's diligence in seeking additional information (and Trend's intransigence in providing it), Trend's opening *Daubert* brief repeatedly flogs Mr. Wagner for not considering documents *that Trend withheld*. For example, Trend criticizes Mr. Wagner for ignoring an ▮▮▮▮▮▮▮▮▮▮▮▮ license. But Trend omits that it did not produce the ▮▮▮▮ until March 12, 2013, a month after IV1's expert reports were timely served, and over three months after producing the original agreement. *See* Exh. L, (production letter).

Likewise, Trend asserts that Mr. Wagner "cannot justify" his extrapolation of royalty rates to millions of users when ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ which Trend produced in March 2013, well after Mr. Wagner's opening report had been served. *See* Exh. Q, (production letter); Exh. R, Mar. 14, 2013 Ltr. from S. Bartow to W. O'Black.

Trend's criticism has no merit for three reasons. First, the ▮▮▮ agreement ▮▮▮ ▮▮▮▮▮▮▮▮▮ Second, the ▮▮▮ agreement ▮▮▮▮▮▮▮▮▮. Last,

---

[5] *See* Exh. S, Jan. 9, 2013 email from W. O'Black to S. Bartow. On October 22, IV requested Trend produce Mr. Maddison for deposition. *Id.* Trend never provided a date, and instead, waited until November to tell IV1 that Mr. Maddison had left the company. *Id.* Trend then asked IV1 to wait to subpoena Mr. Maddison while it confirmed whether he would be represented by Trend counsel. *Id.* IV1 extended that courtesy and, on November 19, December 3, and December 18, 2012 asked if Trend's counsel represented him. *Id.* No response. *Id.* On December 19, IV1 informed Trend that it would subpoena Mr. Maddison. *Id.* Again, no response. *Id.* IV1 then scheduled Mr. Maddison's deposition for January 7, 2013 at his request, which Mr. Maddison later asked to reschedule to January 11. *Id.* On January 9, Trend announced that it now represented Mr. Maddison and canceled his oft-rescheduled January 11 deposition. *Id.*

Mr. Wagner used Trend's █████████████████████████████████████████████

███████████████████████████████████████████

In any event, Trend should not be able to profit from its discovery shenanigans. IV1 asks the Court to exclude the late-produced ██████████ discovery (the amendment and royalty summary and statements) and, if required, will move *in limine* to bar testimony and evidence of this late produced discovery.

4.  <u>IV1 had no opportunity to discover reasons behind ██████████ amendment and Trend never explained any.</u>

As noted, Trend attacks Mr. Wagner's opinion as inflated because he used █████████

████████████████████████████████ (produced November 21, 2012) instead of a ███████████████████████████████████████████████ (produced March 2013). (D.I. 74 at 11–12). As shown in the previous section, Trend is solely responsible for the extent (or dearth) of ██████████████ information in the record, and should not be allowed to game the discovery process and expert report deadlines in this way.

Even if the Court considers the late-produced information, the result is the same. Trend's complaint that Mr. Wagner ██████████████████████████████ deserves no consideration. ████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

Trend's criticism applies equally to Trend's expert who—despite ample access to Trend documents, decision makers and, presumably, counterparties—███████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████ Because Trend's complaints about Wagner apply equally to its own expert, the fact finder should decide which expert correctly analyzed the Blue Coat agreement.

     5.    <u>Mr. Wagner's description of the changing malware environment does not undercut ███████ agreement's relevance.</u>

Trend argues that the ████████████ agreement is too far in time from the ████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████

First, Trend's criticism of a ██████████████ is difficult to credit, because Trend simultaneously argues that ████████████████████████████████████ ████████████████████████████████████████████████████ █████████ ██████████ █████████ ██ ██ ████████ ██████ ███████ ████████ ███ ███████ ████████████████████████████████████████████████████ ██████████████

Trend cites *LaserDynamics* in support of its claim that an agreement that postdates the hypothetical negotiation by three years renders that agreement irrelevant. But *LaserDynamics* does not bar consideration of the ████████ agreement and is easily distinguishable. In Trend's quoted portion of the decision, the Federal Circuit criticized the district court's admission of a *settlement agreement* (████████████████████████████████ and listed numerous factors that rendered that particular settlement agreement less relevant than other agreements. *See LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 78–79 (Fed. Cir. 2012) (settlement agreement reached on eve of trial when defendant faced harsh sanctions; settlement amount is six times larger than next-highest license amount; 29 other licenses could have been used, most of which are not settlements). ███████████████████████████████████████████

In sum, the ██████ agreement is highly probative of a reasonable royalty for the '050 Patent because it licenses ███████████████████████████. Trend's complaints go strictly to the weight to be given and not the admissibility of Mr. Wagner's opinions. The Court should deny Trend's motion to exclude Mr. Wagner's '050 damages opinions.

6.      <u>Trend's complaints regarding the return on investment for patents-in-suit are misleading and legally irrelevant.</u>

Trend also regurgitates a criticism from its damages expert, Dr. Leonard, who opined that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ and thus should be excluded from Wagner's testimony.

Mr. Wagner fully addressed this misleading claim in his reply report. *See* Exh. D, at ¶¶ 71–78. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

Trend has no support for using ████████████████ as a comparable to a reasonable royalty: ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

Even so, Trend is able generate its exaggerated rate of return only by excluding from its calculation every dollar in costs that IV incurs after acquiring the asset. ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████. Those costs are significant, and to omit them is error. █████████████████████████████████████████████

Finally, Trend's complaints about a potentially high internal rate of return bear no relation to the outcome of a hypothetical negotiation. Under the *Georgia-Pacific* analysis, one must assume the infringer will willingly license the patent. Here, in fact, Trend has not been a willing licensor. IV has had to spend millions of dollars in litigation, and none of those costs have been included in the defendants' contrived IRR calculations. Thus one cannot compare this real-life fact (Trend's refusal to license the patents-in-suit) with what the parties must assume in the hypothetical negotiation (Trend willingly licenses the patents-in-suit).

B.    <u>Wagner's Use of a Third Party Patent Valuation Is Reasonable.</u>

Trend also criticizes Mr. Wagner's damages opinion on the '142 Patent. ███████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████

To determine the ████████ royalty rate, Mr. Wagner ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████

         ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████

██████████████████████████████████████████████████

██████ *See* Exh. E, at 111–112.; Exh. X, McDaniel Symantec Report, at 115–116. ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████ the two cases

Trend cites as requiring exclusion do not apply. In *LaserDynamics, Inc. v. Quanta Computer,* 694 F.3d 51 (Fed. Cir. 2012), the Court granted a new damages trial in a patent case involving a method for optical disc drives to identify types of optical disks. The Court agreed that a damages expert erred in relying on two "DVD-related patent licensing programs and the 1997 Licensing Executives Survey." *Id.* at 80. The connection between the DVD-related licensing programs and the hypothetical negotiation was "absent," and the licensing survey was "even further removed from the patented technology because it was not even limited to any particular industry." *Id.*

In Trend's other cited case, *Wordtech,* the jury awarded a lump-sum royalty after the plaintiff's president (not an expert) testified regarding 13 different licenses, only two of which were lump-sum. Neither the lump-sum licenses nor the 11 reasonable royalty settlement agreements were sufficiently connected to the patented technology. Comparing the situation to that reversed in *Lucent Technologies, Inc. v. Gateway, Inc*., 580 F.3d 1301, 1337 (Fed. Cir. 2009), the *Wordtech* court found that "the licenses offered the jury little more than a recitation of royalty numbers."

In contrast, the ██████ valuation ██████████████ is closely tied to the facts and circumstances of this case. The ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ Indeed,

Symantec's accused products in this case include ██████████████████

██████████████████████████ *See* Exh. Y, Mar. 20, 2013 Bakewell Report, ¶ 87. For

the '142 Patent, Symantec's infringement began ████████████████████████ Mr.

Wagner properly relied on the ████████ valuation and its royalty estimate.

C.   <u>Wagner Appropriately Used Three Trend Licenses to the Comparable ████████ as His
     Baseline Agreement.</u>

For the '610 Patent, Trend criticizes Mr. Wagner's use of ██████████████████

████████████ as his baseline agreement. █████████████████████████████████

But all three of the ████████ licenses considered by Mr. Wagner as his baseline agreements

apply ███████████████████████████████████████████.[6]

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████ The parties addressed the

████ Patent during claim construction, (D.I. 240 at 30), and a continuation-in-part of that patent

is asserted as prior art against three patents-in-suit, including the ████ Patent. *See* Exh. E, at

¶¶ 216–217. Indeed, the '610 Patent lists the ████████ as a cited references. Exh. A, at ¶ 341.

Trend produced several licenses to the ████████, including to ████████████████

███████████████████████ analyzed by Mr. Wagner:

- ██████ ████ ██████ ██████ ████████ █ ████ ████ ██████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████

---

[6] Mr. Wagner applied ████████████████████████████████████████████████

████████████████████████████████████

████



The three foregoing bullets distill some elements of the three comparable agreements,



*See* Exh. A at ¶¶ 342–388.

Trend *Daubert* motion complains of Mr. Wagner's use of the first two agreements ███████████████ and never mentions the third (███████████████). According to Trend, Mr. Wagner improperly used the ████████ and ████████ agreements, principally because those agreements ████████████████ (D.I. 74 at 15).

No bright line prohibits consideration of settlement agreements. Even Trend's cited cases recognize that. In fact, one of those cases notes that the most reliable agreement in the case was a settlement agreement, which the excluded expert should have considered instead of the agreements he did use. *See ResQNet.com Inc. v. Lansa*, 594 F.3d 860, 872 (Fed. Cir. 2010)

Trend's litigation position barring consideration of litigation settlement agreements is especially odd given that its own damages expert uses litigation settlement licenses in his rebuttal. Dr. Leonard evaluated ████████████████████████

but added a third, █████████████████████████████████████████████. *See* Exh. U, Mar. 20, 2013 Leonard Report at ¶¶ 130–135. While Trend's lawyers insist that the '600 Patent licenses "shed no light whatsoever" on a reasonable royalty, Trend's own damages expert concludes █████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████" Exh. U, Mar. 20, 2013 Leonard Report ¶ 135.

In this case, the three █████████ licenses (████████████████████████ ██████████████████████████) ████████████████████████████████████ Even if Trend could exclude the two █████████████ licenses, it has no answer for the █████████ license. █████████████████████████ █████████████████████████████████████. Trend is free to disagree—with IV1 and with Trend's own hired expert. But this dispute concerns Mr. Wagner's conclusions, not his methodology.

D.    Mr. Wagner Appropriately Used ██████████████████████ as a Reasonableness Check.

Finally, Trend provides a series of desultory arguments as to why the Court should exclude any mention of the ████████████████████.[7] But as shown, there is no *per se* prohibition on using █████████ agreements in a reasonable royalty analysis. Even if there were, Mr. Wagner did not use the ████████████████ as a baseline agreement for his reasonable royalty analysis. Mr. Wagner limited his use of the ███████████████ as a check to determine whether or not the damages he has calculated without reference to that ████████ agreement are reasonable. ████████████████████████

---

[7] Indeed, this is not a proper *Daubert* challenge at all, but a motion *in limine* disguised as an attack on Mr. Wagner's methodology. This Court specifically limits the number and pages of *in limine* motions and briefing, and would be justified in denying Trend motion on those grounds alone.

Trend's brief also misstates two facts that, once corrected, undermine Trend's position.

██████ ██ ████ ████ ███ ████ ██ ██ ████ ███ ████ ██ ██ ██

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

Trend also erroneously accuses ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████ ■

███████████████████████████████████████████████████████

████████████████████████████

Importantly, and as thoroughly explained in Mr. Wagner's report, *see* Exh. A, ¶¶ 671–73,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

The Federal Circuit does not automatically exclude any considerations of settlement agreements from reasonable royalty analyses. One need look no farther than *ResQNet.com*, 594 F.3d at 872, where the Court excluded consideration of numerous *non*-litigation settlement agreements because "[t]his Court observes as well that the most reliable license in this record arose out of litigation." *Id.*

---

[8] Of course, the ███████████████████████████████████████

███████████████████████████████████████████████

In this case, and for each of the Trend-infringed patents, ████████████████ ██████████████████████████████████████████ Trend's expert, on the other hand, eschewed such an analysis. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Having abandoned the field of comparable agreements to IV1, Trend cannot beat something with nothing.

Finally, Trend attempts to string together three evidentiary rules to suggest that the ██████████████████ should be excluded. But Trend offers conclusions only. It provides no particular analysis as to why consideration of the ██████████████ violates Federal Rule of Evidence 702(b)'s "sufficient facts or data" requirement. (D.I. 74 at 18). Similarly, there can be no violation of Federal Rule of Evidence 703 merely because an expert relies on a settlement agreement. As shown by *ResQNet.com*, the Federal Circuit has not barred consideration of any settlement agreements; in some cases where a settlement agreement is the most reliable, it *requires* such consideration.

Trend complains that the prejudicial impact of letting a jury learn that ██████████ █████████████████████ outweighs the probative value of such testimony. But the cure for any such prejudice is vigorous cross examination and, if needed, limiting instructions from the Court.

### III.
### Conclusion

The Court should deny Trend's motion to exclude the testimony of Mr. Wagner.

---

[9] For the '610 Patent, two of the three licenses arose out of litigation, but the third, non-litigation license confirmed the reliability of the royalty rate.

Dated: July 12, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Parker C. Folse III (admitted *pro hac vice*)
Brooke A.M. Taylor (admitted *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:     (206) 516-3880
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lgodfrey@susmangodfrey.com

Richard W. Hess (admitted *pro hac vice*)
Weston O'Black (admitted *pro hac vice*)
John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:     (713) 653-7859
rhess@susmangodfrey.com
woblack@susmangodfrey.com
jlahad@susmangodfrey.com

*Attorneys for Plaintiff*