IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TREND MICRO INCORPORATED, and ) <br> TREND MICRO, INC. (USA), ) <br> ) <br> Defendants. ) | C.A. No. 12-1581 (LPS) <br><br> **REDACTED – <br> PUBLIC VERSION** |

**TREND MICRO'S REPLY BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION
TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S
DAMAGES EXPERT**

OF COUNSEL:

Yar R. Chaikovsky
D. Stuart Bartow
Daniel K. Greene
MCDERMOTT, WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
(650) 815-7400

David M. Beckwith
MCDERMOTT, WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
(949) 851-0633

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs Louden (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
klouden@mnat.com
mflynn@mnat.com

*Attorneys for Trend Micro Incorporated and
Trend Micro, Inc. (USA)*

Original Filing Date: August 2, 2013
Redacted Filing Date: August 9, 2013

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A. Mr. Wagner's '050 Patent Damages Opinions Are Inadmissible .......................... 1

        1. IV's Attorney Argument Contradicts Mr. Wagner's Own Testimony ..................................................................................... 1

        2. *ResQNet* Is Directly On Point And Compels Exclusion ............................ 3

            (a) *ResQNet* Is Factually Directly On Point ........................................ 3

            (b) IV Mischaracterizes *ResQNet* ......................................................... 5

        3. Mr. Wagner Fully Considered The Blue Coat Discovery .......................... 5

        4. The Timing Of BCBA Further Renders It Irrelevant ................................. 7

        5. Mr. Wagner's Analysis Is Not Tied To The Hypothetical Negotiation ................................................................................................ 8

    B. Mr. Wagner's '142 And '610 Patent Damages Opinions Are Inadmissible .......... 9

    C. Mr. Wagner's "Reasonableness Check" Opinion Is Inadmissible ........................ 9

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Ankele v. Hambrick*,
  286 F. Supp. 485 (E.D. Pa. 2003) ...................................................................................3

*Arendt v. Vetta Sports, Inc.*,
  99 F.3d 231 (7th Cir. 1996) ..............................................................................................3

*Coastal Outdoor Advertising Grp., LLC v. Township of Union, N.J.*,
  676 F. Supp. 2d 337 (D.N.J. 2009) ..................................................................................3

*Daubert v. Merrell Dow Pharms*,
  509 U.S. 579 (1993)......................................................................................................1, 5

*Fromson v. Western Litho Plate and Supply Co.*,
  853 F.2d 1586 (Fed. Cir. 1988).........................................................................................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)..........................................................................................7, 8

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).........................................................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013).....................................................................................4, 5

*ResQNet.com v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)..................................................................................3, 4, 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011).....................................................................................8, 9

**RULES AND STATUTES**

Fed. R. Evid. 403 ...................................................................................................................9

Fed. R. Evid. 702 ...................................................................................................................9

Fed. R. Evid. 703 ...................................................................................................................5

**I.     INTRODUCTION**

The Court should grant Trend's *Daubert* motion and exclude the testimony of Mr. Wagner, IV's damages expert, in its entirety. In its opening brief, Trend addressed the salient facts and controlling case law, both of which compel exclusion. (D.I. 73 (motion), 74 (brief).) IV, in contrast, misstates the facts, mischaracterizes controlling case law, and altogether ignores many of the points Trend raised in its brief. None of this diminishes Trend's clear showing that Mr. Wagner's opinion is unreliable and therefore inadmissible. Accordingly, Trend's motion should be granted.

**II.    ARGUMENT**

    **A.     Mr. Wagner's '050 Patent Damages Opinions Are Inadmissible**

        **1.     IV's Attorney Argument Contradicts Mr. Wagner's Own Testimony**

As previously shown, the technology and services Trend provided pursuant to the Blue Coat Bundling Agreement ("BCBA") are not coextensive with the subject matter of a license to the '050 patent that Trend and IV hypothetically would have negotiated. D.I. 74 at 3-4, 8-10. The BCBA is not a patent license. It required Trend to provide fully developed software that Blue Coat integrated into its own product. *Id.* Trend was further required to provide product support and upgrades. *Id.* None of these or other aspects of the BCBA would be part of a hypothetical negotiation between Trend and IV for a license to the '050 patent.

Undeterred by Trend's showing that the BCBA is entirely different from a naked patent license to the '050 patent, IV takes the untenable position that the accused iCRC component is coextensive with what Trend licensed to Blue Coat. For example, IV contends that the BCBA "ties so closely to the '050 patent technology" that Trend has to use "exaggeration" to distinguish it from the '050 patent technology, (D.I. 98 at 2) and that "[t]he Blue Coat license itself is narrowly focused on the technology embodied in the '050 patent." *Id.* at 6. Not so.

The linchpin of IV's argument is its mischaracterization of iCRC as a "newly-developed antivirus engine" (as of ▇) that is totally different from VSAPI and contains only the accused functionality. D.I. 98 at 4. This unsupported assertion is simply wrong. As explained in Trend's

1

opening brief and confirmed by the record[1], the virus scanning engine, pattern files and other aspects of the unaccused VSAPI engine are the same as in the accused iCRC component; the primary difference is that all of the VSAPI pattern files are locally stored, but some of the pattern files for iCRC queries are stored "in the cloud."  D.I. 74 at 12 n. 4;



In fact, *Mr. Wagner's deposition testimony demonstrates he understands iCRC and VSAPI to be the same except for some cloud-based functionality added by iCRC*:



111:12-112:9 (testifying that features in VSAPI also exist in iCRC).

In sum, and contrary to IV's assertions, this *is* "a case where an agreement discusses numerous technologies only one of which is marginally related to the patented invention." *See* D.I. 98 at 6.  Indeed, the iCRC technology is covered by **Trend's own patents**, further demonstrating that the BCBA is not coextensive with only the '050 patent. *See* Ex. 88, Ex. B ¶ 98 (iCRC is covered by Trend's U.S. Patent No. ▮▮▮▮); Ex. 42 at TMIVA0045749

---

[1] All the evidence cited in this Motion was considered by Mr. Wagner except for Ex. 88 hereto, an excerpt from the expert report of Dr. Atul Prakash served February 15, 2013 – a report which, for reasons only known to IV and/or Mr. Wagner, he apparently did not consider in either of his *two* supplemental reports.

(BCBA required Blue Coat to mark documentation with Trend's U.S. Patent No. ▓▓▓▓); Ex. 44 (amendment entered into after ▓▓▓▓▓▓ did not change marking provision). And IV did not even address Trend's argument that the royalty rates contained in the BCBA for the noninfringing VSAPI engine and the accused iCRC add-on are exactly the same, and, in fact, the amendment to the BCBA, entered into after ▓▓▓▓▓▓, actually decreased the royalty rates. D.I. 74 at 3-4. In other words, the accused functionality is only a small part of what Trend licensed and was attributed *no incremental value* over VSAPI.[2]

### 2. *ResQNet* Is Directly On Point And Compels Exclusion

*ResQNet.com v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) is directly applicable: at issue is the admissibility of expert testimony which is based on bundling agreements that are not patent license agreements and contain many aspects totally irrelevant to the hypothetical negotiation analysis of '050 patent damages. D.I. 74 at 8-10. Unable to factually distinguish the instant case from the facts in *ResQNet*, IV instead mischaracterizes the holding.

#### (a) *ResQNet* Is Factually Directly On Point

In its opening brief Trend showed that the same reasons why the *ResQNet* court rejected the use of bundling agreements apply here as well: the BCBA does not grant any patent rights, (D.I. 98 at 3), like the excluded agreements in *ResQNet*, (*see* D.I. 74 at 8-9), and the BCBA required Trend to provide many services and software that are not accused, like the vast majority of subject matter in the ResQNet bundling agreements. *See id.*

IV ignores these obvious similarities and argues that the "absence of any connection between the *ResQNet.com* licenses and ResQNet.com's claimed invention fundamentally distinguishes that case from this one." D.I. 98 at 5. Not so. All the evidence shows that the BCBA is *not* coextensive with the claimed invention of the '050 patent, as explained above and in Trend's opening brief. As here, the Federal Circuit in *ResQNet* found fatal that there was no

---

[2] IV has never responded to this argument, and therefore has waived the right to oppose it. *See, e.g., Coastal Outdoor Advertising Grp., LLC v. Township of Union, N.J.*, 676 F. Supp. 2d 337, 340 (D.N.J. 2009); *Ankele v. Hambrick*, 286 F. Supp. 485, 496 (E.D. Pa. 2003); *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996).

proof that the bundling agreements actually covered the technology of the patents-in-suit. 594 F.3d at 870 n.1 ("Neither this court nor the district court had any way of knowing from Dr. David's report whether ResQNet's products practice, for example, the prior art described in the patents in suit or the actual claimed invention.").

That same fatal error exists here, as ***IV has no proof that Trend actually provided Blue Coat with the iCRC functionality***. Instead IV relies solely on invoices that post-date when Trend was to switch to iCRC. D.I. 98 at 3. But the BCBA itself provides that Trend was to supply iCRC after ▬▬▬▬▬ only "after testing and acceptance" by Blue Coat. Ex. 42 at TMIVA0045759.

IV has not even alleged – let alone advanced any evidence – that Blue Coat actually tested and accepted iCRC. Indeed, John Maddison, the Trend signatory to the BCBA, testified that he did not know whether Trend actually provided iCRC after ▬▬▬▬▬ or whether that was a hard date by which Trend would start providing iCRC, explaining it would depend on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 51 at 52:5-53:8. These reasons, in addition to the fact that VSAPI and iCRC are essentially the same, likely are why Mr. Maddison characterized the agreement as a "VSAPI," not an iCRC, agreement. *Id.*

This failure of proof is fatal, because it shows that Mr. Wagner's opinions are mere speculation. If bundling agreements that ResQNet entered into were found to have no link to its own patents-in-suit because it was unclear whether the bundling agreements included the subject matter of the asserted patents, (*ResQNet*, 594 F.3d at 869-71), it likewise is unclear how a Trend bundling agreement that post-dates IV's acquisition of the '050 patent could have any link to that patent, particularly where the agreement includes technology admittedly ***not*** covered by IV's patent (VSAPI and all functions iCRC has in common with VSAPI), and where there is no proof Trend actually provided the accused infringing functionality. Mr. Wagner's opinion to the contrary, with its "layered assumptions[,] lack[s] the hallmarks of genuinely useful expert testimony." *See Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir. 2013).

### (b) IV Mischaracterizes *ResQNet*

IV urges the Court to read *ResQNet* for the proposition that Mr. Wagner is entitled to use the BCBA because in his view there are no better licenses in the record. IV thus suggests the Federal Circuit would have permitted ResQNet's expert to use the bundling agreements, regardless of whether the BCBA itself is reliable, but for the fact that other, reliable agreements were in the record. For example, IV contends that "*ResQNet.com* focuses on the comparability of license agreements to ensure that parties consider 'the most reliable license in this record,'" (D.I. 98 at 3), and that "[b]ecause Blue Coat paid Trend for using technology that also infringes the '050 Patent, the Blue Coat agreement is the most reliable agreement in the record." *Id.* at 4.

IV is wrong. Rules 702 and 703 and binding case law all require that the evidence on which an expert's opinion is based be reliable, ***period***. Not "reliable" merely by comparison to other unreliable evidence. *See, e.g.*, *Daubert v. Merrell Dow Pharms*, 509 U.S. 579 (1993). Mr. Wagner's use of the BCBA fails to satisfy *Daubert*, and nothing in *ResQNet* or any other controlling case contains the caveat suggested by IV. "In the end, [the Court is] left with an expert opinion derived from unreliable data and built on speculation," and Mr. Wagner's opinions therefore must be excluded. *See Power Integrations,* 711 F.3d at 1374.

### 3. Mr. Wagner Fully Considered The Blue Coat Discovery

Unable to contest the unreliability of the BCBA, IV tries to shift the focus to alleged discovery "shenanigans" by Trend. (D.I. 98 at 7-11.) IV again is wrong.

*First*, Mr. Wagner fully considered all of the information the discovery of which IV contends Trend "obstructed." Mr. Wagner's reports[3] discuss in detail his (misguided) analysis of the BCBA, its amendment, and related documents Trend produced. *See, e.g.*, Ex. 40 at 61-65, Ex. 41 ¶ 104, 162). Mr. Wagner's deposition testimony confirms he considered, and then disregarded, these materials. *See, e.g.*, Ex. 87 at 116:17-120:12, 143:19-146:9.

---

[3] IV's statement that "Mr. Wagner prepared and submitted his expert report without the ability to consider the very documents Trend now seeks to use to disqualify that report" is incorrect and misleading. According to Mr. Wagner, he considered and disregarded this information in forming his opinion, which spans *three* expert reports – not one, as IV suggests.

*Second*, the pertinent facts show that Trend certainly did not "delay" or "withhold" production of the BCBA (which by agreement of the parties, it was under no obligation to produce in the first instance):

- August 2011: Defendants serve Interrogatory No. 1, seeking IV's infringement contentions. Ex. 89 at 6-7.

- January 2012: The parties agree that they will produce *only* patent licenses, and only for patents bearing certain PTO classification codes. Ex. 90 at 1.

- August 2012: IV represents to the Court that it "believed the scope of license production (for both sides) was resolved." D.I. 350 at 1 (Case No. 10-cv-1067). Trend propounds Interrogatories Nos. 7 and 8, asking what facts support IV's damages contentions. Ex. 91 at 5-6.

- October 22, 2012: IV refuses to substantively respond to Trend's Interrogatory Nos. 7 and 8. Ex. 90 at 2.

- October 23-24, 2012: IV deposes Trend's 30(b)(6) witness on licensing, John Chen. Trend objects to deposition topic number 47 (license agreements for "Accused Products or related technology"), indicating that Mr. Chen would testify only about Accused Products IV had charted in its latest contentions (which did not include iCRC). Ex. 92 at 49-50; Ex. 93 at 31-32 (discussing hashes but not identifying CRC hashes). IV does not contest the objection. On October 24, in an admittedly "new" request, IV asks Trend to produce the BCBA and other licenses. Ex. 90 at 1.

- November 21, 2012 (last day of discovery): Trend produces the BCBA (and 500 pages of other documents) on a DVD via Federal Express, just as it had done with virtually every other production. Hess Decl., Ex. L. IV never previously complained about this method. IV, for the very first time, identifies in connection with Defendants' Interrogatory No. 1 that it is accusing products utilizing CRC hashes. Ex. 83 at 37-40 (identifying CRC hashes for the first time). Also, IV *still* does not substantively respond to Trend's interrogatories seeking the factual bases for IV's damages contentions.

- January 2013: Mr. Wagner and his staff decide to use the BCBA in his damages report. Ex. 87 at 146:16-147:7. IV *still* does not supplement its responses to Trend's Interrogatories Nos. 7 and 8.

- February 2013: For the first time, with the service of Mr. Wagner's report, Trend learns that IV intends to rely on the BCBA in its damages case. Trend immediately searches for and produces additional materials relating to the BCBA.

- April 2013: Mr. Wagner serves his reply report wherein he discusses these additional Blue Coat-related materials. Ex. 41 at ¶¶ 103-104.

6

- May 2013: Mr. Wagner confirms during deposition that he considered and disregarded the additional materials produced by Trend. Ex. 87 at 116:17-120:12, 143:19-146:9.

In short, in the weeks just prior to the close of fact discovery – perhaps unhappy with the way its damages case was shaping up – IV began looking around for additional (non-patent) licensing information from Trend. The BCBA was of such *de minimis* value that even Mr. Chen, Trend's Chief Intellectual Property Counsel, was unaware of it. Ex. 95 at 145:8-12. Despite now suggesting that Trend must have known the alleged relevance of the BCBA all along, IV did not add the "iCRC" component mentioned in that agreement to its infringement contentions until November 21, 2012. All in all, IV's insinuation that Trend and its counsel would seek to actively conceal the BCBA is completely baseless.

### 4. The Timing Of BCBA Further Renders It Irrelevant

Trend explained in its opening brief that the BCBA also is irrelevant because it was entered into years before IV even purchased the '050 patent. In *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 78 (Fed. Cir. 2012), the Federal Circuit found a license agreement entered into after the hypothetical negotiation date are "in many ways not relevant to the hypothetical negotiation analysis" where the market for the accused technology was much different when the agreement was executed. D.I. 74 at 10 (quoting *LaserDynamics*).

Rather than explain why the BCBA is relevant to the damages analysis despite its timing (nearly 3 years after the hypothetical negotiation), IV instead contends that in *LaserDynamics* the Federal Circuit based its decision solely on the fact that the agreement was a settlement agreement. D.I. 98 at 11. Not so. The Federal Circuit stated that the changing market conditions – in addition to the fact that it was a settlement agreement – rendered the agreement irrelevant: "*Additionally*, in light of the changing technological and financial landscape in the market for ODDs, the BenQ settlement, entered into a full three years after the hypothetical

negotiation date, is in many ways not relevant to the hypothetical negotiation analysis." *Laserdynamics*, 694 F.3d at 79 (emphasis added; relevant portions quoted in D.I. 74 at 10).[4]

### 5. Mr. Wagner's Analysis Is Not Tied To The Hypothetical Negotiation

Trend pointed out in its opening brief that Mr. Wagner's exorbitant '050 patent damages opinion is unreliable because it ignores the real world facts of what the parties would have agreed to at a hypothetical negotiation as required. D.I. 74 at 11. Given the chance to correct this omission, IV remained silent. IV cited no contrary case law, facts, excerpts from Mr. Wagner's 300 pages of expert reports, or deposition testimony to rebut Trend's point. These omissions alone suffice to exclude Mr. Wagner's '050 patent damages opinion. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F3d 1292, 1315 (Fed. Cir. 2011) (patentee "must sufficiently [tie the expert testimony on damages] to the facts of the case") (insertion in original).

Instead, IV makes two unsupported factual arguments that the Court should reject. *First*, IV argues that Mr. Wagner's astronomical rate of return is moderated by annualizing the internal rate of return IV would earn on its investment in the '050 patent, reducing the rate from ▇ to a "much lower" ▇. D.I. 98 at 12. But this is just playing games with numbers. Both figures evidence the exact same return, just calculated over different time periods. Both are astronomical and illogical.[5]

*Second*, IV conflates reality (where parties contest infringement and validity) with the hypothetical negotiation (where they do not) in order to artificially understate this astronomical

---

[4] IV also argues that "Trend's criticism of [Mr. Wagner's use] of a ▇ [BCBA] is difficult to credit, because Trend simultaneously argues that Mr. Wagner should have used an even later document – the previously withheld ▇ amendment to the agreement." (D.I. 98 at 11.) To be clear, Trend does not advocate that the ▇ amendment is supportive of a reasonable royalty. Rather, Trend cites to the amendment to further illustrate why Mr. Wagner's use of the BCBA is unreliable, particularly because the amendment further confirms that the parties attributed no incremental value to the accused functionality. D.I. 74 at 11-13.

[5] By example, at a ▇ annualized rate of return, a house in Wilmington purchased for ▇ in ▇ would be worth **over $2 billion** ($2,903,566,085) by 2020, thirteen years later (which coincides with the time over which IV's alleged damages would be computed). Such is the return Mr. Wagner believes constitutes a "reasonable" royalty for IV.

8

rate of return. *See Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1586, 1575-76 (Fed. Cir. 1988). IV argues that the rates of return Trend relies on omit "significant" costs IV would incur after acquiring the asset, such that those rates of return are "exaggerated" and irrelevant. D.I. 98 at 12-13. IV erroneously includes the alleged "millions of dollars" of litigation costs (*id.*), which are irrelevant because the hypothetical negotiators assume away those costs. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324-25 (Fed. Cir. 2009).

**B.  Mr. Wagner's '142 And '610 Patent Damages Opinions Are Inadmissible**

In its opening brief Trend showed that Mr. Wagner failed to connect the data on which relied to the hypothetical negotiation between Trend and Park City Group (for the '142 patent) or Trend and IV (for the '050 patent). D.I. 74 at 13-15. The Federal Circuit has been clear: a patentee must "sufficiently tie the expert testimony on damages to the facts of the case." *Uniloc*, 632 F3d at 1315. IV has failed to do so, because none of the data on which Mr. Wagner relies concerns Trend, IV, Park City Group, or the economic demand for the patents-in-suit.

**C.  Mr. Wagner's "Reasonableness Check" Opinion Is Inadmissible**

In its opening brief, Trend showed why Mr. Wagner's "reasonableness check" opinion is unreliable and massively prejudicial. The only document on which Mr. Wagner bases this opinion – the ▮▮▮ Agreement where ▮▮ licensed ▮▮▮ patents for ▮▮▮▮ – is inadmissible. Trend then showed that this is not the type of evidence on which an expert would reasonably rely in performing a "reasonableness check." D.I. 74 at 15-19. And because the ▮▮▮▮▮▮ is the only data Mr. Wagner uses to "check" his other damages calculations, Mr. Wagner does not have "sufficient facts or data" on which to base his opinion, as required by Rule 702. *Id.* Trend also showed that even if the Court were to find the ▮▮▮▮▮▮ admissible (and IV has never argued that it is), then Mr. Wagner's opinions based on it are inadmissible based on Rules 403 and 702. *Id*.

IV's only counterargument – that Trend misstated facts material to the analysis, (D.I. 98 at 17-19) – also fails because the facts on which Trend relies are accurate. IV contends that Trend "erroneously argues that Mr. Wagner attributed the 'entire' value of the [▮▮▮▮▮]

9

to the four patents-in-suit." D.I. 98 at 18. IV is arguing for a distinction without a difference: Mr. Wagner says he does not "attribute" all ▮ to the four patents-in-suit, but also unequivocally says he "used the ▮ figure in [his] analysis." Ex. 41 ¶ 89 (quoted in D.I. 74 at 16 n.5). In other words, IV argues Mr. Wagner did not "attribute" all ▮ to the four patents-in-suit, even though that is, in fact, the figure he used as the check on his damages calculation for three of the four patents-in-suit. Because Mr. Wagner has not stated how much of the ▮ he attributes to the four (much less three of the four asserted against Trend) patents-in-suit, and made no effort to apportion among the various patents included in that agreement, the jury will understand that he has attributed all ▮ to the four patents.[6]

IV also contends that "Trend also erroneously accuses Mr. Wagner of making up the fact that ▮ specifically requested licenses to the four patents-in-suit." D.I. 98 at 18. This is also incorrect. Trend pointed out that Mr. Wagner speculated that ▮ "requested a license to ***just*** the four-patents-in-suit, suggesting that the ▮ patents ▮ licensed in addition to the patents-in-suit are essentially useless and were just thrown in by IV," D.I. 74 at 16 (emphasis added), and quoted Mr. Wagner directly. *Id.* (*quoting* Ex. 40 ¶ 218).

## III. CONCLUSION

In its opening brief, Trend demonstrated that the facts and case law require Mr. Wagner's damages opinions to be excluded. For the reasons set forth therein, and elaborated in this Reply, Trend respectfully requests that the Court exclude Mr. Wagner's damages opinions as to Trend.

---

[6] As noted in Trend's opening brief, Check Point licensed all four patents-in-suit for a ***total*** of ▮.

10

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Michael J. Flynn* |
|  | Karen Jacobs Louden (#2881)<br>Michael J. Flynn (#5333)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>klouden@mnat.com<br>mflynn@mnat.com |
| OF COUNSEL: | *Attorneys for Trend Micro Incorporated and Trend Micro, Inc. (USA)* |

OF COUNSEL:

Yar R. Chaikovsky
D. Stuart Bartow
Daniel K. Greene
MCDERMOTT, WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

David M. Beckwith
MCDERMOTT, WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA  92614-2559
(949) 851-0633

August 2, 2013

7418903

# CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on August 9, 2013, upon the following individuals in the manner indicated:

| | |
|---|---|
| Joseph J. Farnan, III<br>Brian E. Farnan<br>FARNAN LLP<br>919 N. Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Parker C. Folse III<br>Brooke A.M. Taylor<br>Lindsey N. Godfrey<br>SUSMAN GODFREY L.L.P.<br>1201 Third Avenue, Suite 3800<br>Seattle, WA  98101-3000<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| John P. Lahad<br>Weston O'Black<br>Richard W. Hess<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston, TX  77002<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Karen Jacobs Louden*
_____
Karen Jacobs Louden (#2881)