IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC,

              Plaintiff,

v.

TREND MICRO INCORPORATED and
TREND MICRO, INC. (USA),

              Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 12-1581-LPS

JURY TRIAL DEMANDED

**FILED UNDER SEAL**

## IV1'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON EIGHT TREND MICRO AFFIRMATIVE DEFENSES

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Parker C. Folse III *(admitted pro hac vice)*
Brooke A.M. Taylor *(admitted pro hac vice)*
Lindsey N. Godfrey *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:    (206) 516-3880
Facsimile:    (206) 516-3883

Richard W. Hess (admitted pro hac vice)
Weston O'Black *(admitted pro hac vice)*
John P. Lahad *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:    (713) 653-7859
Facsimile:    (713) 654-3386

Date: August 2, 2013              Attorneys for Plaintiff

## Table of Contents

I.    Trend Concedes That Summary Judgment is Appropriate ................................................... 1

II.   Trend Cannot Prove Laches as to the '050 Patent as a Matter of Law .............................. 1

    A.    No Presumption of Laches Arises Because All Time Periods Are Less
than Six Years ..................................................................................................... 2

        1.    Trend's Attempt at Constructive Notice Fails ......................................... 3

        2.    Even if Constructive Notice Applies, No Presumption Arises ................ 5

    B.    No Evidence of Unreasonable and Inexcusable Delay .......................................... 6

    C.    No Evidentiary Prejudice ..................................................................................... 8

III.  Trend Has Not Challenged IV1's Standing ..................................................................... 10

IV.   Trend Has No Patent Exhaustion or Implied License Defenses ....................................... 11

    A.    Trend's Disclosure is Untimely ......................................................................... 12

    B.    Trend Provides No Evidence of Patent Exhaustion or Implied License .............. 12

        1.    No Patent Exhaustion ........................................................................... 13

        2.    No Implied License ............................................................................... 15

    C.    SMEX and SMLD Alone Infringe the '142 Patent ............................................ 16

V.    Trend Has No Intervening Rights to Assert .................................................................... 17

VI.   Conclusion ..................................................................................................................... 17

## Table of Authorities

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992). ............................................................................1, 6

*Adrain v. Vigilant Video, Inc.*,
    2013 WL 1984369 (E.D. Tex. May 13, 2013)..................................................17

*Am. Seating Co. v. USSC Group, Inc.*,
    514 F.3d 1262 (Fed. Cir. 2008) ..........................................................................9

*Aquayo v. Universal Instruments Corp.*,
    356 F. Supp. 2d 699 (S.D. Tex. 2005) ................................................................5

*Avante Int'l Tech. Corp. v. Premier Election Solutions, Inc.*,
    2008 WL 2783237 (E.D. Mo. July 16, 2008) .....................................................9

*Boehringer Ingelheim Int'l GMBH v, Barr Labs. Inc.*,
    2008 WL 2756127 (D. Del. July 15, 2008) ......................................................12

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
    72 F.3d 872 (Fed. Cir. 1995) ...........................................................................15

*Cordis Corp. v. Boston Scientific Corp.*,
    561 F. 3d 1319 (Fed. Cir. 2009) .........................................................................9

*IXYS Corp. v. Advanced Power Tech., Inc.*,
    321 F. Supp. 2d 1156 (N.D. Cal. 2004)..............................................................7

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) .......................................................................17

*McKesson Automation, Inc. v. Swisslog Italia S.P.A.*,
    712 F. Supp. 2d 283 (D. Del. 2010)...........................................................10, 11

*Meyers v. Asics Corp.*,
    974 F.2d 1304 (Fed. Cir. 1992) ..........................................................................6

*Mformation Techs., Inc. v. Research In Motion, Ltd.*,
    830 F. Supp. 2d 815 (N.D. Cal. 2011)................................................................6

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
    553 U.S. 617 (2008)...................................................................................13, 14

*Rosemount, Inc. v. Beckman Instruments*,
    727 F.2d 1540 (Fed. Cir. 1984) ..........................................................................7

*Sicom Sys., Ltd. v. Agilent Techs. Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ..................................................................................11

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000) ...............................................................................11

*St. Clair Intellectual Prop. Consultants, Inc. v. Acer, Inc.*,
   2013 WL 3367319 (D. Del. July 2, 2013) ...................................................................3

*Wafer Shave, Inc. v. Gillette Co.*,
   857 F. Supp. 112 (D. Mass. 1993) ..............................................................................7

*Wanlass v. General Elec. Co.*,
   148 F.3d 1334 (Fed. Cir. 1998) .............................................................................3, 5

*Winbond Electronics Corp. v. Int'l Trade Comm'n*,
   262 F.3d 1363 (Fed. Cir. 2001) ...............................................................................15

**Rules**

FED. R. CIV. P. 26(e) ............................................................................................................13

FED. R. CIV. P. 37(c)(2) ......................................................................................................13

## I.  Trend Concedes That Summary Judgment is Appropriate

Trend Micro does not dispute that summary judgment is appropriate on its claims for (1) laches as to the '610 Patent, (2) equitable estoppel as to all patents-in-suit, and (3) waiver as to all patents-in-suit.  D.I. 92 at n.1.  Trend likewise abandons its defenses of (1) patent exhaustion and no implied license as to the '050 and '610 Patents, and (2) intervening rights as to the '610 and '142 Patents.  Thus, the Court should grant summary judgment as to these defenses.

Rather than concede the fatal evidentiary and legal shortcomings of its remaining defenses (as co-defendant Symantec did, Case No. 10-1067, D.I. 535), Trend mischaracterizes the relevant facts and misstates the law that should be applied.  As IV1 demonstrated in its opening brief, summary dismissal is proper as to laches and intervening rights for the '050 Patent, standing and failure to join as to all patents-in-suit, and patent exhaustion and implied license for the '142 Patent.

## II.  Trend Cannot Prove Laches as to the '050 Patent as a Matter of Law

Even if all reasonable inferences are drawn in its favor, Trend cannot show laches as to the '050 Patent.  In particular, Trend cannot show that (1) IV1 delayed filing suit for an unreasonable and inexcusable length of time from when it knew or reasonably should have known of Trend's infringing activity and (2) Trend suffered material prejudice as a result of the delay.  *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032–1033 (Fed. Cir. 1992).  Trend's failure to raise a fact issue as to either element is independently dispositive.

As IV1 proved in its Motion, no presumption of laches arises.  Trend argues "equity suggests no reason to ignore the patentees' stated desire in the 2004-2006 time frame to license and potentially enforce the '050 patent against 'anybody in the anti-spam business.'"  D.I. 92 at 7.  But equity requires evidence, and the record contains no evidence that the inventors or IV1 knew or reasonably should have known of Trend's infringing activity "in the 2004-2006 time

1

frame" or before, as Trend suggests. Trend takes inventor testimony, combines it with unrelated marketing pitches, and hopes that supposition will hold everything in place. But even if Trend's allegations are credited, no presumption arises because the documents cited by Trend are dated less than six years before this suit was filed.

Because no presumption of laches arises, the burden remains squarely with Trend to prove both unreasonable and inexcusable delay and material prejudice. As to the first element, no evidence even hints that IV1 unreasonably and inexcusably delayed filing suit. For a period of "delay" less than six years to be considered unreasonable, the defendant must show misleading and improper conduct during that time. Here, no evidence exists that the inventors, their agents, or IV1 contacted Trend about the '050 Patent (or any patent-in-suit) before suit. ██████████████████████████ and Trend's withdrawal of its equitable estoppel defense further confirms that there was no pre-suit contact. Without <u>contact</u>, there can be no misleading <u>conduct</u>. Without misleading conduct, a period of less than six years cannot be unreasonable or inexcusable.

As to the second element of laches, Trend raises no genuine fact issue as to prejudice. Trend concedes that the so-called "lost CD" was part of the inventors' experimental prototype. Accordingly, the public use defense that Trend hypothesizes is purely illusory, and a lack of prejudice provides a second independent ground to find that Trend has no laches defense.

A.     <u>No Presumption of Laches Arises Because All Time Periods Are Less than Six Years</u>

Trend does not dispute that the accused products were not released until 2006 at the earliest—four years before IV1 filed suit. Yet, nonsensically, Trend argues that the relevant laches period started <u>before</u> it released the accused products ████████████████████ ██████████████████████████████████████ In other words,

2

Trend attempts to charge the inventors, their agent, and IVI with constructive notice. But even if it is viewed in a light most favorable to Trend, Trend cannot establish constructive notice. Moreover, even if Trend's evidence is credited and constructive notice applies, the periods at issue remain less than six years, so no presumption arises.

### 1.   Trend's Attempt at Constructive Notice Fails

Trend's constructive notice theory rests on ████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████ Trend cites *no* case law that supports its argument that an attempt to license or sell patents initiates a laches period with respect to a defendant whose accused products have not been released at that time.[1] Federal Circuit authority allows knowledge to be imputed to the patentee if sales, marketing, publication, public use, or other conspicuous activities of potential infringement "are sufficiently present in the inventor's field of endeavor." *Wanless v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998). Here, there could not have been any sales, marketing, publication, public use, or other conspicuous activities of potential infringement in 2005, because the first accused products were not released until September 2006—approximately four years before IVI filed suit. Put another way, Trend cannot impute knowledge of infringing activities when there are no infringing activities.

---

[1] Trend cites *St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.*, 2013 WL 3367319, at *3–4 (D. Del. July 2, 2013) for the notion that the date of first infringement need not provide the trigger for starting the laches period. In the *St. Clair* case, the Court found that the plaintiff was "aware of the existence of products embodying technology similar to that for which the patentee holds a patent and which uses that similar technology to accomplish a similar objective" in 2002, seven years before it filed suit. In this case, by contrast, the universe of accused products "embodying technology similar" to the '050 Patent did not exist until September 2006 at the earliest. Thus, the inventors, their agent, and IV could not have been aware of products embodying the accused technology before then. *St. Clair* is inapplicable.

Further, no evidence exists that Mr. Pace, Mr. Brooks, or Mr. Dybdahl understood that Trend was "in the anti-spam business." And there is certainly no evidence that any of these men suspected Trend of infringing the claims of the '050 Patent in 2005.

Rather than cite actual evidence, Trend relies on vague speculation about what an inventor might have considered doing in the past, but did not do. The most compelling evidence Trend can muster



[REDACTED]

Finally, Trend argues that IV documents [REDACTED]

[REDACTED]

[REDACTED] Symantec has withdrawn its laches claim in the face of the very same evidence cited by Trend. Case No. 10-1067, D.I. 535 ("By this Response, Symantec states that it does not intend to pursue those defenses and therefore does not oppose the granting of partial summary judgment as requested in the Motion."). Moreover, the fact that IV saw an [REDACTED] the '050 Patent to Symantec does not mean that IV must have suspected Symantec of infringement, which is presumably why Trend cites no cases supporting that position.

What's more, when an accused infringer relies on a patentee's constructive knowledge, the infringer must demonstrate a duty to inquire into the potential infringement. *Aquayo v. Universal Instruments Corp.*, 356 F. Supp. 2d 699, 752 (S.D. Tex. 2005) (citing *Wanlass*, 148 F.3d at 1338). Trend has not presented any evidence that even tends to show that the inventors, their agent, or IV1 had a duty to inquire or breached that duty.

      2.    Even if Constructive Notice Applies, No Presumption Arises

Trend contends that the patentees had a "stated desire" to enforce the '050 Patent in 2004 to 2006. D.I. 92 at 7. As discussed in the previous section, Trend's evidence does not support its claims. But even if it did, the earliest evidence Trend cites is from some time in 2005—not 2004 as it argued. [REDACTED]

[REDACTED] But even if they charged him with this task on New

5

Year's Day in 2005—highly unlikely—that period of "delay" is still less than six years before IVI filed suit in December 2010. So, Trend's earliest evidence, if believed, cannot raise a presumption of laches, which requires a six year period. *See Aukerman*, 960 F.2d at 1032.

### B.   No Evidence of Unreasonable and Inexcusable Delay

Because no presumption arises, the burden remains with Trend to demonstrate that IVI unreasonably and inexcusably delayed in bringing suit. *Aukerman*, 960 F.2d at 1037–38. Trend fails to raise a fact issue or otherwise try to meet this burden.

Trend argues "shorter periods of time have been found to constitute laches depending on the facts and circumstances." D.I. 92 at 7. That is the end of Trend's argument. Trend cites no "facts and circumstances" to support its position. Moreover, Trend's vague mention of "facts and circumstances" ignores that no Federal Circuit or district court case has found a period of less than six years inexcusable or unreasonable delay absent improper or misleading conduct. Indeed, the *Rosemount* case Trend cites held that shorter periods of delay have been held unreasonable only when accompanied by improper or misleading conduct by the plaintiff. *See* D.I. 81 at 5–6 (citing *Mformation Techs., Inc. v. Research In Motion, Ltd.*, 830 F. Supp. 2d 815, 824-25 (N.D. Cal. 2011)); *see also Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed. Cir. 1992) (reversing district court's conclusion regarding unreasonable delay because the patentee "did not take an express position and then attempt to alter that position at a later time" and "did not expressly threaten litigation and then delay bringing suit for several years").

In *Rosemount*, the accused infringer informed the plaintiff of a potentially infringing product shortly after the complaint had been filed and long before trial. The plaintiff said nothing and waited three years after receiving notice to accuse that product. The district court denied damages for the infringement that occurred during the plaintiff's silence. The Federal Circuit, in a decision by Chief Judge Markey, affirmed. In particular, the court held:

6

> Though it is true that Beckman had begun selling the 960B some two months
> before notifying Rosemount, that fact does not militate against the district court's
> recognition that Beckman was prejudiced in continuing the sale of that model for
> almost three years with Rosemount's acquiescence as evidenced by its silence. It
> is not necessary, as Beckman does, to attribute to Rosemount an ulterior trial
> strategy. Rosemount's long silence, unexplained before the district court and this
> court, can hardly rebut Beckman's showing of unreasonableness of the delay.

*Rosemount, Inc. v. Beckman Instruments*, 727 F.2d 1540, 1550 (Fed. Cir. 1984) (emphasis

added); *see also Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112, 127–129 (D. Mass. 1993)

(finding that a three-year delay was sufficient to support a laches defense where the patentee

"threatened suit and the patentee's subsequent conduct and silence lulled Gillette into reasonably

believing that the threat had been abandoned"); *IXYS Corp. v. Advanced Power Tech., Inc.*, 321

F. Supp. 2d 1156, 1163 (N.D. Cal. 2004) ("The Circuit has pronounced a three or four year-delay

unreasonable only when that delay was accompanied by extraneous improper tactics or

misleading conduct by the plaintiff.").

    In this case, no evidence of any pre-suit contact exists, let alone evidence of misleading

or improper conduct. As mentioned in IV1's Motion, the misleading conduct required when the

period at issue is less than six years mirrors that which is required for an equitable estoppel

defense. D.I. 81 at 6. But Trend's corporate representative confirmed that it was unaware of the

'050 Patent until IV1 filed suit in December 2010. *Id.* at 7. In other words, Trend's corporate

representative confirmed that it had no contact with anyone regarding the '050 Patent before this

litigation. Without contact, there is no conduct, misleading or otherwise, and Trend certainly

cannot show that the inventors, their agent, or IV led Trend to believe that patent rights would

not be asserted. Indeed, Trend's surrender of its equitable estoppel defense underscores the

complete absence of any evidence of misleading conduct. Thus, the time from the accused

products' release to IV1's filing of suit cannot be unreasonable and inexcusable as a matter of

law.

In sum, even if the evidence is viewed in a light most favorable to Trend, Trend cannot raise a fact issue regarding the unreasonably delay element of laches, which means the entire defense fails as a matter of law.

### C.   No Evidentiary Prejudice

The absence of unreasonable and inexcusable delay precludes laches, but Trend similarly fails to raise a fact issue as to the prejudice element of laches. Trend does not dispute that Trend cannot show that it suffered economic prejudice. And IV1's motion established that Trend cannot show evidentiary prejudice. D.I. 81 at 9–12. Nevertheless, Trend focuses exclusively on an allegedly missing CD and argues that (1) the CD could support a public use bar and (2) it must have disappeared during the period of delay. D.I. 92 at 8. Neither of these arguments avoids summary judgment because even if the CD were available, testimony confirms that information it would have contained was obtained during inventor testing, which does not support a public use defense; and if Trend's allegations are believed, the CD was lost (if it ever existed) in May 2006, before the accused products were released.

As to the public use bar, Trend cites no evidence to undermine IV1's argument that the contents of the CD, a database, were part of an experimental prototype created to test the inventors' idea. D.I. 81 at 10–12. Trend labels this as "just after-the-fact attorney argument" and considers it speculative in light of the testimony that individuals other than the inventors used the database. D.I. 92 at 8.

Trend ignores the inventor testimony

8

████████████████████████████████████

████████████████████████████████████

████████████████████ For example, Trend does not argue that the inventors commercially exploited the database. Trend's <u>only</u> argument is that other people—inventors' acquaintances—may have used the database without confidentiality restrictions. This argument fails. ████████████████

████████████████████████████████████

████████████████ Thus, it matters not that these individuals had access to the prototype because "use of an invention by the inventor himself, <u>or of any other person under his direction,</u> by way of experiment, and in order to bring the invention to perfection, has never been regarded as [public use]." *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008) (emphasis added); *see also Avante Int'l Tech. Corp. v. Premier Election Solutions, Inc.*, 2008 WL 2783237, at *15 (E.D. Mo. July 16, 2008) ("[R]evealing a prototype to a select group of individuals without a written confidentiality agreement is not dispositive of the question of public use. Under certain circumstances, such an agreement can be implied."); *Cordis Corp. v. Boston Scientific Corp.*, 561 F. 3d 1319, 1334 n.11 (Fed. Cir. 2009) ("In the public use context of 102(b), we have similarly noted that a lack of an express promise of confidentiality is not determinative of public use . . . .").

Trend also argues that "contemporaneous evidence shows that the database was received in May 2006 and must have disappeared sometime thereafter." D.I. 92 at 8. This is more speculation from Trend. There is no evidence that IV or any of its agents actually received the CD (assuming it existed). D.I. 465 at 7–8.

Trend also argues that "this date of receipt is well within what the finder of fact could reasonably determine to be the period of delay." D.I. 92 at 8–9.  Contrary to Trend's argument, it could not have been prejudiced from the alleged "loss" of the CD in May 2006 because the first accused products were not released until four or five months later.  Trend makes no effort to explain how it can be prejudiced months before the first accused products were released in September 2006.

Trend needs to raise a fact issue regarding both elements of laches to avoid summary judgment, and as discussed above, Trend cannot raise a fact issue as to either element.

III.    Trend Has Not Challenged IV1's Standing

In its Interrogatory No. 6, IV1 asked Trend to state the basis for its affirmative defense of standing and failure to join.  In response to that interrogatory, Trend said nothing about standing and took the preposterous position that counsel for IV1 "conceded" during a telephonic hearing that another IV entity is "a real party in interest to this lawsuit."  D.I. 81 at 18 (citing Trend's December 21, 2012 Corrected Supplemental Interrogatory Responses).  Recognizing the lack of any evidence to support its position, Trend sounds a hasty retreat from that absurd argument and now submits the following:

> The issue of standing to sue may be raised at any time.  And it is IV1's burden—not Trend's—to establish that standing exists.  As such, IV is not entitled to summary determination that standing has been satisfied, or that there is not an indispensable party that must be joined.

D.I. 92 at 9 (internal citations omitted).[2]

Trend is correct in one respect: IV1 does bear the burden of establishing that it has standing to bring an action for patent infringement.  *McKesson Automation, Inc. v. Swisslog Italia S.P.A.*, 712 F. Supp. 2d 283, 294 (D. Del. 2010) (citing *Sicom Sys., Ltd. v. Agilent Techs.*

---

[2] It is curious that Trend even asserted "standing" as an affirmative defense, since the patentee bears the burden of establishing standing.

*Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)). But IV1 conclusively established it has standing and that no other parties are necessary in this action. "To substantiate a claim of patent ownership, a putative patentee 'must produce a written instrument documenting the transfer of [ownership].'" *Id.* (quoting *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000)). During discovery, IV1 produced the assignment history of the patents-in-suit as well as the documents reflecting the chain of title and the transfer of ownership from the original inventors and assignees to IV1, the plaintiff in this case. Even now, Trend does not challenge the legality or completeness of these assignments. As the case stands, there are no genuine issues of material fact for the Court to decide, and the Court should find that Trend has not raised a standing defense as a matter of law. Fed. R. Civ. P. 56.

IV.     <u>Trend Has No Patent Exhaustion or Implied License Defenses</u>

For the first time years into this case, Trend lists specific products that it thinks *might* be subject to an implied license or the defense of patent exhaustion. In particular, Trend contends that two products accused of infringing the '142 Patent, ScanMail for Microsoft Exchange and ScanMail for Lotus Domino ("SMEX" and "SMLD," respectively), *may* be subject to exhaustion or a ███████████ Microsoft Exchange or Lotus Domino products are the instrumentalities which perform the accused functions . . . ." D.I. 92 at 9–10 (emphasis added).

This disclosure is untimely, and more important, Trend's response fails to provide sufficient evidence of patent exhaustion or implied license. Trend mentions—but does not attach—two licenses and then points to a single claim limitation. But there is more to the defenses of patent exhaustion and implied license than this. Trend's response does not address, much less cite evidence of, the remaining elements of each defense, which sinks both of them as a matter of law.

Finally, in addition to being late and significantly deficient, Trend's argument mischaracterizes IV1's infringement position as to SMEX and SMLD. Infringement of the '142 Patent by SMEX and SMLD is not dependent on Microsoft Exchange and Lotus Domino. This makes Trend's patent exhaustion and implied license defenses inapposite.[3]

A.    Trend's Disclosure is Untimely

IV1 posed an interrogatory seeking the basis for Trend's affirmative defenses, and Trend's response says nothing about patent exhaustion or an implied license for SMEX and SMLD. *See* Exhibit 4 to IV1's Motion. Under Rule 26(e), Trend had a duty timely to amend its response to Interrogatory No. 6 or otherwise make known its legal contentions supporting these defenses and their corresponding evidentiary bases. FED. R. CIV. P. 26(e); *see also Boehringer Ingelheim Int'l GMBH v, Barr Labs. Inc.*, 2008 WL 2756127, at *2 (D. Del. July 15, 2008). Trend did neither, and cannot do so now. *See* FED. R. CIV. P. 37(c)(2) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

B.    Trend Provides No Evidence of Patent Exhaustion or Implied License

Even if the Court permits Trend's untimely argument, the doctrines of patent exhaustion and implied license are different doctrines. But in arguing that a fact issue exists as to one <u>or</u> the other, Trend conflates the two and hopes that the Court will relieve Trend of its obligation to

---

[3] Trend does not dispute that (1) it has no patent exhaustion or implied license defense to any other product accused of infringing the '142 Patent, and (2) it has no patent exhaustion or implied license defense as to any other patent-in-suit. Accordingly, Trend does not oppose summary judgment as to its defenses of implied license and patent exhaustion for the '610 Patent and the '050 Patent. Trend does not oppose summary judgment for these defenses for all '142-accused products except SMEX and SMLD.

provide evidence in support of its argument.   Trend cannot show the existence of a factual dispute by using "and/or" and omitting facts in support.

I.      No Patent Exhaustion

The doctrine of patent exhaustion holds that an initial authorized and unconditional sale of a patented article terminates all patent rights to that article, thereby limiting a patentee's exclusionary power in the underlying patent.  *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 625 (2008).  Patent exhaustion is inapplicable in the instance relied on by Trend for two main reasons.  First, under *Quanta*, "the authorized sale of an article which is capable of use <u>only</u> in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold." *Quanta*, 553 U.S. at 631 (emphasis added).  In other words, for an authorized sale to exhaust patent rights, the "only reasonable and intended use" of the product sold must be to practice the patent.  *Id*.  That is not the case with Microsoft Exchange or Lotus Domino.  IV1 does not allege that Microsoft Exchange or Lotus Domino practice the '142 patent, and IV1 certainly does not allege that their "only reasonable and intended use" is to practice the '142 Patent.  Trend's response says nothing about this requirement of patent exhaustion, so it has not met its burden to raise a material fact issue to support the defense.

Second, patent exhaustion also requires that the product sold "constitute a material part of the patented invention and all but completely practice the patent."  *Id*. at 633.  Trend meekly argues that "[i]t *appears* that most or all of the functionality IV accused is provided by the Microsoft Exchange and Lotus Domino products sold by Microsoft Corporation ('Microsoft'), and IBM, respectively."  D.I. 92 at 9 (emphasis added).  Trend points only to evidence that Microsoft Exchange performs the "receiving, storing, and redistributing" functions for SMEX.  *Id*. at 9–10.  But "receiving, storing, and redistributing" are requirements of the claimed "post

13

office," and do not address the remaining claim limitations.[4]  To put "post office" in context, claim 1 of the '142 Patent follows:

> 1. A post office for receiving and redistributing e-mail messages on a computer network, the post office comprising:
>
> a receipt mechanism that receives an e-mail message from a sender, the e-mail message having at least one specified recipient;
>
> a database of business rules, each business rule specifying an action for controlling the delivery of an e-mail message as a function of an attribute of the e-mail message;
>
> a rule engine coupled to receive an e-mail message from the receipt mechanism and coupled to the database to selectively apply the business rules to the e-mail message to determine from selected ones of the business rules a set of actions to be applied to the e-mail message; and
>
> a distribution mechanism coupled to receive the set of actions from the rule engine and apply at least one action thereof to the e-mail message to control delivery of the e-mail message and which in response to the rule engine applying an action of deferring delivery of the e-mail message, the distribution engine automatically combines the e-mail message with a new distribution list specifying at least one destination post office for receiving the e-mail message for review by an administrator associated with the destination post office, and a rule history specifying the business rules that were determined to be applicable to the e-mail message by at least one rule engine, and automatically delivers the e-mail message to a first destination post office on the distribution list instead of a specified recipient of the e-mail message.

Trend does not explain how Microsoft Exchange meets the remaining claim elements, such as "a database of business rules," "a rule engine," or "a distribution mechanism." Under *Quanta*, Trend must show that "the only step necessary to practice the patent is the application of common processes or the addition of standard parts." *Quanta*, 553 U.S. at 633. Trend does not even attempt to make such a showing because doing so would ignore the infringing functionality of Trend's products.   Trend's failure to provide evidence of how Microsoft Exchange

---

[4] The parties agreed that the term "post office" should mean "an agent for receiving, storing, and distributing email messages or data objects."

"constitute[s] a material part of the patented invention and all but completely practice[s] the patent" dooms its patent exhaustion defense.[5]

### 2. No Implied License

An implied license signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling, or offering for sale the patented invention. *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001). Implied licenses may arise through equitable estoppel, legal estoppel, acquiescence, and conduct. *Id.* The burden of establishing an implied license rests with the accused infringer. *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995).

The court in *Winbond* articulated the standard for implied license by equitable estoppel:

> An implied license by equitable estoppel requires proof that: (1) the patentee, through statements or conduct, gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer; (2) the alleged infringer relied on that statement or conduct; and (3) the alleged infringer would, therefore, be materially prejudiced if the patentee is allowed to proceed with its claim.

*Winbond*, 262 F.3d at 1374. Trend cannot seriously allege it has an implied license through equitable estoppel, just ten pages after it withdraws its equitable estoppel defense. To the extent it does, IV1 unequivocally demonstrated the lack of misleading conduct and reliance in its Motion. D.I. 81 at 13–16. Likewise, there is no evidence that Trend is entitled to an implied license as a result of IV1's conduct or acquiescence. *Id.*; *see also Winbond*, 262 F.3d at 1375 (finding no implied license through acquiescence or conduct when patentee "did not give an affirmative grant of consent or permission to make, use, or sell the claimed invention).

---

[5] Despite initially arguing that both SMEX and SMLD may be subject to patent exhaustion or an implied license, Trend only cites evidence regarding SMEX. D.I. 91 at 9. SMEX and SMLD are separate products. Dr. McDaniel treated them separately in his infringement analysis and cited distinct evidence for each in support of his infringement opinion. Accordingly, because Trend fails to come forward with any evidence regarding patent exhaustion or implied license for SMLD, there is no dispute that summary judgment is appropriate as to SMLD.

To be licensed implicitly through legal estoppel, a patentee must have "licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *Winbond*, 262 F.3d at 1375. Trend does not raise a fact issue as to any of these elements of legal estoppel. ███████████████████████████████████████████████ but Trend does not cite a specific license or make it part of the summary judgment record. If Trend's implied license defense were credible, it would be able to point to a specific provision in a specific license as evidence. It does not. Neither the Court nor IV1 should be required to guess which right has been purportedly assigned, to whom, and for how much. Accordingly, summary judgment as to Trend's implied license defense is appropriate.

C.     SMEX and SMLD Alone Infringe the '142 Patent

Trend's new arguments about implied license and patent exhaustion are also wrong based on the factual record. Contrary to Trend's argument, the accused products—not Microsoft Exchange or Lotus Domino—perform the accused functions. Trend's argument boils down to whether SMEX and SMLD are "post offices," as required by the claims. *See supra* IV.B.1; *see also* D.I. 72 at 33–34. ███████████████████████████

███████████████████████████████████████████████████

Trend's argument to the contrary mischaracterizes the evidence, and contradicts the opinions of its own invalidity expert, which was described in IV's Response to Trend's MPSJ. *See* D.I. 96 at 32.

---

[6] Here again, Trend first mentions both SMLD and SMEX but only cites support for SMEX. *See supra* note 5.

V.     Trend Has No Intervening Rights to Assert

In response to IV1's motion, Trend argues that IV1 has submitted new claims and intervening rights *could* arise. D.I. 92 at 11 (emphasis added).  Trend's argument proves IV1's position: Trend has no intervening rights.  "Under § 307(b), the first question when assessing whether intervening rights arose from a reexamination is whether the asserted claim is 'amended or new'; if the answer is no, that ends the inquiry."  *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012) (internal quotations omitted); *see also Adrain v. Vigilant Video, Inc.*, 2013 WL 1984369, at *3 (E.D. Tex. May 13, 2013) ("[C]laim 6 still exists as originally issued.  As such, the doctrine of intervening rights does not apply to claim 6 because it is neither amended nor new").  In this case, none of the asserted claims of the '050 Patent has been amended or is new.  *See* Exhibit 11 to IV1's Motion.  That is the end of the inquiry, and Trend has no intervening rights as a matter of law.  Trend's argument essentially is that it wishes to reserve its right to assert intervening rights.  This argument makes no sense.  Unless and until IV1 asserts new or substantially amended claims—which it has not done— Trend has no rights to reserve.

VI.     Conclusion

The Court should grant IV1's Motion for Partial Summary Judgment on Eight Trend Micro Affirmative Defenses.

Dated: August 2, 2013                          Respectfully submitted,

                                               FARNAN LLP

                                               /s/ Brian E. Farnan
                                               Joseph J. Farnan, III (Bar No. 3945)
                                               Brian E. Farnan (Bar No. 4089)
                                               919 North Market Street, 12th Floor
                                               Wilmington, DE 19801
                                               (302) 777-0300
                                               bfarnan@farnanlaw.com

Parker C. Folse III (admitted *pro hac vice*)
Brooke A.M. Taylor (admitted *pro hac vice*)
Lindsey N. Godfrey (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:     (206) 516-3880
pfolse@susmangodfrey.com
btaylor@susmangodfrey.com
lgodfrey@susmangodfrey.com

Richard W. Hess (admitted *pro hac vice*)
Weston O'Black (admitted *pro hac vice*)
John P. Lahad (admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:     (713) 653-7859
rhess@susmangodfrey.com
woblack@susmangodfrey.com
jlahad@susmangodfrey.com

*Attorneys for Plaintiff*