IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1581 (LPS) |
| | ) | |
| TREND MICRO INCORPORATED and | ) | REDACTED - PUBLIC VERSION |
| TREND MICRO, INC. (USA), | ) | |
| | ) | |
| Defendants. | ) | |

**TREND MICRO INCORPORATED AND TREND MICRO, INC. (USA)'S
OPENING BRIEF IN SUPPORT OF MOTION FOR CLARIFICATION
OF CERTAIN CLAIM CONSTRUCTIONS OF THE '050 PATENT
IN LIGHT OF PLAINTIFF'S UNTIMELY CHANGE OF OPINION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Trend Micro Incorporated and Trend
Micro, Inc. (USA)*

OF COUNSEL:

Yar R. Chaikovsky
D. Stuart Bartow
David L. Larson
MCDERMOTT, WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

Christopher D. Bright
MCDERMOTT, WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA  92614-2559
(949) 851-0633

Originally Filed:  March 3, 2015
Redacted Version Filed:  March 12, 2015

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... II

NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF
ARGUMENT ........................................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 3

    A.    IV's Position During Claim Construction (May – December 2012):
        Bulk Email Is A "Characteristic" Under Claim 9 .................................................... 3

    B.    Dr. McDaniel's Position During Expert Discovery (March – June
        2013):  Bulk Email Is A "Characteristic" Under Claim 9 ..................................... 6

    C.    IV's Position During Summary Judgment (June – August 2013):
        Bulk Email Is A "Characteristic" Under Claim 9 .................................................. 8

    D.    IV And Dr. McDaniel At Trial Against Symantec (January –
        February 2015):  Suddenly, Bulk Email Is Not A "Characteristic"
        Under Claim 9 ........................................................................................................ 9

APPLICABLE LAW ............................................................................................................. 11

ARGUMENT ........................................................................................................................ 12

    A.    IV's Flip-Flop Creates A Fundamental Claim Construction Dispute ................... 12

    B.    Resolution of This Claim Construction Dispute Is Necessary to
        Avoid Jury Confusion .......................................................................................... 14

    C.    Bulk Email Is A "Characteristic" Under All Asserted Claims Of
        The '050 Patent .................................................................................................... 15

    D.    Frequency Is Another "Characteristic" Expressly Mentioned In
        The '050 Patent .................................................................................................... 18

CONCLUSION ..................................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*,
   No. 6:11-cv-011, 2012 WL 2872121(E.D. Tex. July 12, 2012) ............................................18

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*,
   2009 U.S. Dist. LEXIS 130989 (E.D. Tex. Dec. 18, 2009) ....................................................12

*Am. Patent Dev. Corp., LLC v. Movielink, LLC*,
   637 F. Supp. 2d 224 (D. Del. 2009) ...................................................................................11-12

*Augme Techs., Inc. v. Pandora Media, Inc.*,
   C.A. No. 11-379-LPS, 2012 WL 6055010  (D. Del. Dec. 5, 2012)........................................15

*Guttman v. Kopykake Enters., Inc.*,
   302 F.3d 1352 (Fed. Cir. 2002)..............................................................................................11

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*
   381 F.3d 1111 (Fed. Cir. 2004)..............................................................................................16

*Markman v. Westview Instruments, Inc.*,
   116 S.Ct. 1384 (1996) ............................................................................................................14

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ................................5, 11

*NuVasive v. Globus Med., Inc.*,
   C.A. No. 10-849-LPS, 2013 WL 3705731 (D. Del. July 12, 2013)........................................14

*O2 Micro Int'l v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)...........................................................................................2, 11

*OPTi Inc. v. Silicon Integrated Sys. Corp.*,
   No. 2:10-cv-279-JRG, 2012 WL 6684691 (E.D. Tex. Dec. 21, 2012) ..................................18

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*,
   599 F.3d 1308 (Fed. Cir. 2010)..............................................................................................11

*Tesco Corp. v. Weatherford Int'l*,
   722 F. Supp. 2d 737 (S. D. Tex. 2010)......................................................................................6

*White v. Dunbar*,
   119 U.S. 47 (1886) ..................................................................................................................12

## <u>NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT</u>

This patent case was originally filed on December 8, 2010.  Defendants Trend Micro Incorporated and Trend Micro, Inc. (USA) (collectively, "Trend Micro") were severed into the present action on November 21, 2012.  Expert discovery closed nearly two years ago, on April 24, 2012.  D.I. 442.  Trial is set to begin May 11, 2015.

On January 28, 2015, during Intellectual Ventures' ("IV's") recent trial against Symantec Corporation ("Symantec"), IV's technical expert, Patrick McDaniel, made a stunning admission on cross-examination:  in preparing for trial with IV's lawyers, he changed his interpretation of the Court's construction for at least one key claim term in the '050 patent.  Whereas during expert discovery he interpreted the Court's constructions of the terms "indication of a characteristic" (claim 9), "identify the existence or absence of said characteristic" (claim 16), and "indicating the presence or absence of a characteristic" (claim 22) consistently to all ***include*** "bulk email" as a "characteristic" of a file, his cross-examination revealed that he had flipped his interpretation of at least claim 9 to ***exclude*** bulk email as a "characteristic."

At no time between his deposition and the Symantec trial did IV or Dr. McDaniel disclose this change of interpretation, which contradicts the interpretation IV urged to the Court during claim construction, that Dr. McDaniel applied in his expert reports and his deposition, and that IV presented to the U.S. Patent and Trademark Office (PTO) during the pending reexamination of the '050 patent.  This change appears to have been a gambit to avoid an invalidity finding over U.S. Patent No. 6,829,635 ("Townshend")—a prior art reference asserted against the '050 patent.

Trend Micro reserves its rights to seek *in limine* exclusion of Dr. McDaniel's new opinion pursuant to Fed. R. Cir. P. 37.  But in light of Dr. McDaniel's about-face on the witness stand, there is a fundamental dispute between the parties as to the scope of the claims of the '050

patent.   The risk of jury confusion is high.   In the interest of ameliorating potential jury confusion during the upcoming trial, but without waiving any arguments on appeal with respect to the Court's claim constructions, Trend Micro respectfully moves the Court to clarify its existing constructions pursuant to the Federal Circuit's holding in *O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008).[1]

Specifically, Trend Micro requests that at a minimum—consistent with IV's arguments to this Court during claim construction—the Court clarify that bulk email is a "characteristic" within the scope of claim 9 of the '050 patent.   For completeness, Trend Micro additionally (and/or alternatively) requests that the Court clarify the constructions for the terms listed above as follows, so that the exemplary parentheticals in the constructions for claims 9, 16, and 22 are consistent in including bulk email, junk email, and frequency, and are therefore congruent with the examples of "characteristics" provided in the '050 patent specification:

| Term | Existing Construction | Clarified Construction |
|---|---|---|
| "indication of a characteristic" (claim 9) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted, <u>bulk email, frequency</u>)" |
| "identify the existence or absence of said characteristic" (claim 16) | "identify whether or not the message is of a certain type or classification" | "identify whether or not the message is of a certain type or classification <u>(e.g., spam, virus, junk email, copyrighted, bulk email, frequency)</u>" |
| "indicating the presence or absence of a characteristic" (claim 22) | "indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)" | "indicating the presence or absence of a characteristic (e.g., spam, virus, <u>junk email</u>, copyright<u>ed</u>, bulk email, <u>frequency</u>)" |

---

[1]   Symantec made a similar motion orally at trial, which the Court denied. Ex. 5 at 2170:17 – 2172:18.  However, there the Court did not have the benefit of full briefing on the issue.

<u>STATEMENT OF FACTS</u>

A.     **IV's Position During Claim Construction (May – December 2012):  Bulk Email Is A "Characteristic" Under Claim 9**

IV submitted its claim construction tutorial to the Court on June 12, 2012.  In that tutorial, which was supposed to "focus on the technology" and provide a neutral explanation of the issues (D.I. 119 at ¶ 9), IV made no effort to distinguish what the word "characteristic" meant between claims 9, 16, and 22 of the '050 patent.  As shown below, IV informed the Court that a "characteristic" as described and claimed in the '050 patent "is an attribute of the document such as whether it contains a virus or is SPAM *or bulk email* or includes copyrighted content."



Flynn Decl., Ex. 1 (IV's Technology Tutorial) at 38 (emphasis added).

IV's tutorial went on to describe the "reply" from the second-tier system to the first tier in the '050 patent as "indicat[ing] the likelihood that the email or document *is of a certain type or classification, such as* spam, virus, copyrighted, *or bulk*." *Id.* at 43.   As an example, IV explained that "if 2,000 instances of the same or similar content ID is detected in a one-day period, *this is indicative of bulk email or spam*." *Id.* at 43.



The content IDs are then transmitted, over a network, to a "classifier system" on a different server.  This "second-tier" classifier system will receive file content identifiers for each received email (or other types of documents) from a number of client servers.  In this case, each post office acts as a client agent of the classification system.

The classifier system will check an internal database of known identifiers to see if the identifier is known to have a particular characteristic.  For example, if a specific email message is known to be SPAM or virus, its content identifier will be marked as such at the classification server.  The classifier system can also correlate unclassified content IDs to detect patterns and classify documents on that basis. For example, if 2,000 instances of the same or similar content ID is detected in a one-day period, this is indicative of bulk email or spam.

Lastly, the descriptive result of the check against the database of known identifiers is returned to the requesting agent or agents.  The reply indicates the likelihood that the email or document is of a certain type or classification, such as spam, virus, copyrighted, or bulk.

*Id.* (IV's Technology Tutorial) at 43 (emphasis added).  Throughout the tutorial, IV drew no distinction between the claims with respect to what types of "characteristics" of a file those claims would cover—all covered bulk email as far as IV was concerned.

In its claim construction briefing, IV continued to press for an interpretation of "characteristic" that was consistent between claims 9, 16, and 22.  As one example, in its responsive claim construction brief filed on June 26, 2012, IV again recognized the '050 patent's use of "frequency of appearance" (for example, if 2,000 instances of the same email had been seen in a day) to determine a "characteristic" such as whether an email was spam *or bulk*:

> As discussed in Plaintiff's Opening Brief, ***the '050 patent identifies bulk or spam email*** by determining whether multiple instances of the same or similar message have been received by different users.  The patent refers to this as the ***'frequency of appearance' of [sic] the 'frequency of the collection.'***

D.I. 240, C.A. No. 10-1067 (IV's Responsive Claim Construction Br.) at 14.

Then, during the claim construction hearing on August 9, 2012, counsel for IV addressed what he called the "indicating" terms from claims 9, 16, and 22 as a group, and discussed what types of "characteristics" those terms included:

> Lastly, if I can go back to the true/false test issue.  Those are the ***claim terms in slide 17, indicating the characteristic***. * * * It is not strictly a true/false test even in the sense of determining what it is.  ***It might be bulk email.  It might be spam.  It might be something with a virus in it.  It might be something that includes copyrighted material.***  And there is no understanding in advance about what it might consist of, or it might not have any unwanted characteristics at all.

C.A. No. 10-1067, D.I. 340 (*Markman* Hr'g Tr.) at 63:8-23.

Throughout the entire claim construction process, IV consistently referred to bulk email as a "characteristic" according to each of claims 9, 16, and 22.  The Court issued its Claim Construction Order on December 12, 2012, adopting IV's proposed constructions for the

"indicating" terms.  C.A. No. 10-1067, D.I. 426.  Shortly thereafter, even IV's patent prosecution counsel told the PTO in ongoing reexamination proceedings that the Court's construction of claim 9 included "bulk email."  C.A. No. 10-1067, D.I. 584-1, Ex. F at 24.[2]

**B.      Dr. McDaniel's Position During Expert Discovery (March – June 2013): Bulk Email Is A "Characteristic" Under Claim 9**

IV served five reports by Dr. Patrick McDaniel between February 2013 and May 2013, concerning both infringement and validity, including two supplemental reports.  Dr. McDaniel did not opine in any of his five reports that bulk was not a "characteristic" under each of claims 9, 16 and 22.  To the contrary, he consistently interpreted those claims to include bulk email.



Dr. McDaniel was deposed on April 15, 2013.  In his testimony, he confirmed that he had made no distinction between claims 9, 16 and 22 with respect to what "characteristics" each included.  *All* included bulk email:

> Q.      Another *example of a characteristic given in the Court's claim construction is bulk email*?
>
> A.      *That is correct.*

---

[2]  Courts have held that statements in reexamination proceedings are part of the file history of the   patent, and may be relevant in construing the claims.  *See, e.g., Tesco Corp. v. Weatherford Int'l*, 722 F. Supp. 2d 737 (S. D. Tex. 2010).

> Q.    So as you've interpreted these **claims 9, 16, and 22**, and
>       you've interpreted the word "characteristic," **you have
>       understood the word characteristic to include**, as
>       examples, spam, virus**, junk email**, copyright, **and bulk
>       email, correct?**
>
> A.    **That is correct.**

Ex. 3 (McDaniel 4/15/2013 Dep. Tr.), at 29:19-30:5 (emphasis added).

To be clear, IV did not argue merely that claims 9, 16, and 22 **collectively** included bulk

email as a "characteristic"—such that, for example, claims 16 and 22 might include bulk email,

but claim 9 might not.  Dr. McDaniel testified with respect to the "determining" step of claim 9:

> Q.    Okay.  So getting back to the issue of how you've been
>       interpreting phrases in these claims, you see **claim 9**
>       contains the phrase "whether each content identifier
>       matches a characteristic of other identifiers?
>
> A.    Right.
>
> * * *
>
> Q.    What does it mean that that processing system is
>       determining whether received content identifiers match a
>       characteristic of other identifiers?
>
> A.    The Court's construed this.  [Reads claim construction for claim 9]
>
> * * *
>
> Q.    So the word "characteristic" in that construction you just
>       read to me, **does that characteristic have to be something
>       like spam, virus, junk email, copyright, bulk email**?
>
> A.    **Yes.**  It's as the Court construed the term "characteristic."

*Id.* at 51:17-52:19 (emphasis added).

Dr. McDaniel's affirmative response demonstrates that he had interpreted claim 9 to

include bulk email.  He would later confirm at trial that this was, in fact, the interpretation he had

applied throughout expert discovery.  *See* Ex. 3 (McDaniel 4/15/2013 Dep. Tr.), at 29:19-30:5,

51:17-52:19. Despite serving a supplemental report and being deposed again on April 16, 2013,

April 22, 2013, and June 4, 2013, Dr. McDaniel never disclosed any change to his interpretation of the Court's claim constructions prior to trial.

### C.   IV's Position During Summary Judgment (June – August 2013):  Bulk Email Is A "Characteristic" Under Claim 9

The parties briefed and argued summary judgment motions between June and August, 2013.  In opposing Trend Micro's motion for summary judgment of invalidity, IV made several arguments as to why the Townshend reference did not anticipate the '050 patent, including— contrary to what IV argued during claim construction—that a count of matching signatures "does not 'indicate' that [a] message is bulk."  *See* D.I. 96 at pp. 9-11.  However, IV *never* argued that bulk email was not a "characteristic" under claim 9.

During the August 29, 2013 hearing, IV's counsel displayed the following slide, which included the constructions of the "indicating" terms from claims 9, 16, and 22 as a group:



**First Embodiment, Second Claimed Step**

| 6. | "an indication of the characteristic"/"identify the existence or absence of said characteristic"/"indicating the presence or absence of a characteristic" |
| --- | --- |

| **Plaintiff's Proposed Construction** | |
| --- | --- |
| "an indication of the characteristic" (claim 9) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" |
| "identify the existence or absence of said characteristic" (claim 16) | "identify whether or not the message is of a certain type or classification" |
| "indicating the presence or absence of a characteristic" (claim 22) | "indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)" |
| **Defendants' Proposed Construction** | |
| "an indication of the characteristic" (claim 9) | "the result of a true/false test for a property of the content" |
| "identify the existence or absence of said characteristic" (claim 16) | "providing the result of a true/false test for the existence or absence of the property of the content" |
| "indicating the presence or absence of a characteristic" (claim 22) | "providing the result of a true/false test for the presence or absence of a property of the content" |
| **Court's Construction** | |
| "an indication of the characteristic" (claim 9) | "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)" |
| "identify the existence or absence of said characteristic" (claim 16) | "identify whether or not the message is of a certain type or classification" |
| "indicating the presence or absence of a characteristic" (claim 22) | "indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)" |

Ex. 4.  With the three constructions projected together on the video screen, IV's counsel argued, "the characteristic under the Court's constructions are things like spam, virus, junk, copyright, **bulk.**"   D.I. 131 (MSJ Hr'g Tr.) at 29:8-10.   Again, counsel made no effort to distinguish between what a characteristic would be under claim 9 as compared with claim 16 or claim 22.

After summary judgment proceedings, IV did not serve any supplemental reports from Dr. McDaniel, or any other disclosure prior to the Symantec trial that revealed an intent to reinterpret the Court's claim constructions.

### D.     IV And Dr. McDaniel At Trial Against Symantec (January – February 2015):   Suddenly, Bulk Email Is Not A "Characteristic" Under Claim 9

On January 28, 2015, on cross-examination during the third day of the Symantec trial, Dr. McDaniel surprisingly applied a new interpretation of claim 9, now taking the position that "bulk email" was not a characteristic according to the Court's construction of "indication of a characteristic."  As Dr. McDaniel testified before the jury, on cross examination:

> Q.     The meaning was **bulk**.
>
> A.     Right.
>
> Q.     *That's one form of a characteristic; right?*
>
> A.     *Not under claim 9*.

Ex. 5 (Symantec Trial Tr.) at 641:17 – 643:25.

Dr. McDaniel subsequently admitted that he had changed his opinion regarding the scope of claim 9 since his deposition, and that he had done so after preparing for trial with Intellectual Ventures' attorneys:

> Q.     And it's true though, isn't it, that while you prepared your reports and up until the time you were deposed in the case, *you interpreted claims 9, 16 and 22 all to have a characteristic that included* spam, virus, junk e-mail, copyright and *bulk e-mail?*

> A. *At that time, yes.*
>
> Q. Okay. *And you changed it after you were deposed in this case by Symantec when it had an opportunity to learn your opinions and the bases and reasons for them?*
>
> A. *Yes.*
>
> Q. And you changed that opinion after you've had a chance to prepare for trial working with Intellectual Ventures' lawyers?
>
> A. *Yes.*

*Id.* at 675:9-24 (emphasis added).

In IV's rebuttal case regarding validity, Dr. McDaniel relied on his new interpretation of claim 9 to distinguish around the Townshend prior art reference:

> Q. Townshend Figure 1 shows the output as the claim requires from the central server to be a count, right?
>
> A. Yes, that's correct.
>
> Q. And you can use a frequency to determine whether something is bulk, right?
>
> A. Yes.
>
> Q. You can use a frequency to determine whether something is spam?
>
> A. *Not – not under – not under claim 9.*
>
> Q. *This goes back to discussion we had the last time where the Court has an example that does not say bulk in claim 9, but does say bulk in claim 22, right?*
>
> A. *Right.* Bulk is not a descriptor of the content.

*Id.* at 2082:12 – 2083:1 (emphasis added).

Finally, IV's counsel argued during closing argument—contrary to his argument at the *Markman* hearing—that "characteristic" in claim 9 meant something *different* than a "characteristic" under claims 16 and 22:

- 10 -

> ***The Court has interpreted the third limitation of claims 9, 16 and 22 of the '050 patent in slightly different ways.*** * * * What the '050 patent does, in every instance, is determine and return information about the characteristic of the file. ***In claim 9, it's defined as a descriptor of the content of the file. With respect to claims 16 and 22, it refers to a characteristic. Now, you can say that something has the characteristic of bulk e-mail by counting how many times it has been seen.*** It doesn't tell you anything about the content, as I explained before, it doesn't even tell you that it is spam or unwanted, but you don't know what it is.

*Id.* at 2405:18 – 2406:12 (emphasis added).

Again, from the time of Dr. McDaniel's deposition up until the Symantec trial, neither IV nor Dr. McDaniel served a supplemental report or provided any other disclosure that they would show up at trial with a new, inconsistent interpretation of the Court's claim constructions.

## APPLICABLE LAW

Claim construction is a matter of law, to be determined exclusively by the Court, not the jury. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Thus, "[wh]en the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro*, 521 F.3d at 1362.

Moreover, "[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Guttman v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). Indeed, "a trial judge may learn more about the technology during the trial that necessitates some clarification of claim terms before the jury deliberates." *Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*, 599 F.3d 1308, 1315 (Fed. Cir. 2010).

To the extent that "latent" claim construction disputes exist prior to or at trial, such disputes must be resolved by the Court, not the jury. *Am. Patent Dev. Corp., LLC v. Movielink, LLC*, 637 F. Supp. 2d 224, 231 (D. Del. 2009) ("However, in the wake of the Court's claim

construction opinion, it is clear that the parties' dispute over the meaning of 'data establishing a limit' has sharpened.  * * *  Accordingly, the Court is compelled to resolve the parties' latent claim construction dispute."); *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 2009 U.S. Dist. LEXIS 130989, at *38 (E.D. Tex. Dec. 18, 2009) ("[T]he court concluded that construing the phrase now will prevent a potential *O2 Micro* dispute from arising during trial.").

## ARGUMENT

As the Supreme Court held nearly 130 years ago, the claims of a patent may not, like a "nose of wax," be twisted one way for purposes of infringement, and then another for purposes of validity.  *See White v. Dunbar*, 119 U.S. 47, 51 (1886).  Yet that is exactly what IV and its expert, Dr. McDaniel, attempted to do in Symantec's trial.

Despite having interpreted claims 9, 16, and 22 throughout claim construction, expert discovery and summary judgment to *all* include bulk email as a "characteristic," IV and Dr. McDaniel suddenly took the position during the Symantec trial (undoubtedly for purposes of trying to avoid invalidity) that "bulk email" is not a "characteristic" under claim 9.  This undisclosed, tactical change in interpretation of the claims by IV and Dr. McDaniel raises a dispute between the parties regarding the constructions of claims 9, 16, and 22, and demonstrates the need further claim construction in order to avoid jury confusion and to have the scope of the claims decided by the Court, not the jury.

### A.     IV's Flip-Flop Creates A Fundamental Claim Construction Dispute

As described above, IV took the position during claim construction, expert discovery, and up until the Symantec trial that the claim terms "indication of a characteristic" (claim 9), "identify the existence or absence of said characteristic" (claim 16), and "indicating the presence or absence of a characteristic" (claim 22) *all* included bulk email as a "characteristic" of a file. Unsurprisingly, IV's expert, Patrick McDaniel, took the same position.  Trend Micro's experts

offered opinions consistent with this interpretation.   In front of the Symantec jury, IV and Dr. McDaniel suddenly took a 180-degree turn with respect to the interpretation of claim 9, belatedly advancing the position that "bulk email" is not a "characteristic."

This striking change in opinion appears to be driven by Dr. McDaniel's unavoidable admissions regarding the disclosure of the Townshend prior art reference, which Trend Micro, Symantec, and the Central Reexamination Unit of the U.S. Patent and Trademark Office all contend invalidates the asserted claims of the '050 patent.[3]

For example, Dr. McDaniel testified in his deposition concerning the Townshend patent:

> Q.    So the Townshend patent says that the count indicates which signatures represent bulk email, right?
>
> A.    ***Yes.***
>
> Q.    ***And bulk email, that's a characteristic, right?***
>
> A.    ***The bulk email is a characteristic.***
>
> Q.    So Townshend says that its counts indicate a characteristic?
>
> A.    Well, what Townshend says, this was written, again, without the benefit of the Court's claim construction.
>
> Q.    So Townshend says that its counts ***indicate the presence of something that the Court says is a characteristic, right?***
>
> A.    ***Yes.***

Ex. 3 (McDaniel 4/15/2013 Dep. Tr.) at 105:12-106:3 (emphasis added).

In any event, the claim construction dispute is clear:  under IV's claim interpretation prior to trial, the "indication of a characteristic" term of claim 9 ***included*** bulk email.  Dr. McDaniel's

---

[3]    All asserted claims stand finally rejected in the reexamination, and prosecution has been closed.  *See* D.I. 584-1, Ex. A (Action Closing Prosecution).  IV recently has taken an appeal to the Patent Trial and Appeal Board (PTAB).  If the current rejections are ultimately affirmed (as is statistically highly probable, *see* D.I. 583 at 4), all asserted claims of the '050 patent will be subject to cancellation.

interpretation was consistent, as were the interpretations of Symantec, Trend Micro, and the PTO.  At trial, IV and Dr. McDaniel flipped to exactly the opposite position.  IV cannot have it both ways.  Bulk email either is within the scope of the claim 9 (as Trend Micro contends), or it is not.  This dispute is potentially material to the outcome of this case and the Court, not the jury, must resolve it.

> **B.     Resolution of This Claim Construction Dispute Is Necessary to Avoid Jury Confusion**

At present, there is a fundamental dispute between the parties concerning the scope of "characteristic" and "type or classification" in claims 9, 16, and 22 of the '050 patent.  Whereas IV and Dr. McDaniel previously took the position that "characteristic" should be interpreted consistently claims 9, 16, and 22, they now take the opposite position.  This creates a dispute that should be resolved by the Court, not a jury.  As the Supreme Court observed nearly twenty years ago when it placed the responsibility for claim construction exclusively in the hands of judges, not juries:

> The construction of written instruments is one of those things that judges often do and are likely to do better than jurors unburdened by training in exegesis.  Patent construction in particular is a special occupation, requiring, like all others, special training and practice.  The judge…is more likely to give a proper interpretation to such instruments than a jury; and he is, therefore, more likely to be right, in performing such a duty, than a jury can be expected to be. * * * *The decisionmaker vested with the task of construing the patent is in the better position to ascertain whether an expert's proposed definition fully comports with the specification and claims and so will preserve the patent's internal coherence.*

*Markman v. Westview Instr., Inc.*, 116 S.Ct. 1384, 1395-96 (1996) (internal citations omitted; emphasis added).  *See also NuVasive v. Globus Med., Inc.*, C.A. No. 10-849-LPS, 2013 WL 3705731, at *5 (D. Del. July 12, 2013) ("The parties have a dispute as to the proper construction of 'handle assembly' and that dispute appears to be material to the issues in this case.

Accordingly, the Court concludes it has an obligation to resolve this claim construction dispute."); *Augme Techs., Inc. v. Pandora Media, Inc.*, C.A. No. 11-379-LPS, 2012 WL 6055010, at *4 (D. Del. Dec. 5, 2012) ("While district courts are not required to engage in an exercise of redundancy, nor to construe every limitation in a claim, when the parties do present a fundamental dispute regarding the scope of a claim term, ***it is the court's duty to resolve it.***") (internal quotations omitted; emphasis added).

Presenting competing interpretations of claim scope to a jury invites errors that the claim construction process set forth in *Markman* was intended to avoid. To mitigate the risk of jury confusion and consequent error, the constructions of the so-called "indicating" terms should be clarified and conformed so that each of claims 9, 16, and 22 are interpreted consistently with respect to the word "characteristic."

### C.   Bulk Email Is A "Characteristic" Under All Asserted Claims Of The '050 Patent

For the term "indicating the presence or absence of a characteristic" (claim 22), IV proposed during *Markman* proceedings that "bulk email" be included as an example of a characteristic:  "(e.g. spam, virus, copyright, bulk email)."  For a term with nearly identical language, "indication of a characteristic" (claim 9), IV proposed that "junk email" be included as an example of a "characteristic":  "(e.g. spam, virus, junk email, copyrighted)."

There is absolutely nothing in the language of claims 9 and 22 (or 16, for that matter) that suggests those claims should be interpreted differently with respect to what a "characteristic" of a file might be.  IV's proposals for claims 9 and 22 were adopted by the Court on IV's representations, detailed above, that those parentheticals had essentially the same meaning, and were not intended to be exhaustive.

Nor is there anything in the specification that suggests a difference in meaning.  The '050 patent does not explicitly define the term "characteristic" as recited in claims 9, 16 and 22.  It does, however, provide several examples of "characteristics" of data files.  Whether or not a file is spam email is one example.  Ex. 6 ('050 patent), col. 1:17-20.  Whether a file is junk email is another.  *Id.* at col. 8:10.  For identifying both spam and junk email, the '050 patent teaches the same procedure:  determine the frequency of appearance of the email's digital ID.  *Id.* at col. 6:2-10; col. 7:65-67; col. 8:9-12; col. 8:38-40.[4]

IV has not articulated any reason why "characteristic" should mean something different in claim 9 than it does in the other claims.  And there is no reason why it should, because unless otherwise compelled, when different claims of a patent use the same language, the construing court gives the language the same effect in each claim.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*  381 F.3d 1111, 1119 (Fed. Cir. 2004).  Bulk email should therefore be included in each of claims 9, 16, and 22.

In opposition, IV may repeat its recent argument that a "descriptor of the content" in the Court's construction of claim 9 (which adopted IV's proposal) requires a description of the *internal* content of a file, as opposed to, say, the number of times the file's digital ID has been seen over a certain period of time.  But this argument lacks merit for two reasons.  First, this argument is refuted by IV's inclusion of "junk email" and "spam" in the exemplary parenthetical for claim 9.  Junk email, according to the only place in the '050 patent where the term is used

---

[4]    In fact, this is the only procedure disclosed in the patent—while the specification also states that other characteristics include whether contains a virus or contains materials subject to copyright, (*id.* at col. 3:19-20), the specification does not disclose any means for determining whether either of those characteristics exists.

(claim 8), is "defined by a frequency of appearance of a file content ID."[5]  That is, whether or not an email is "junk" is defined by how many times it has been seen over a certain time period. Similarly, the only embodiment for identifying spam in the '050 patent is based on the same thing:  determining how many times the digital ID for the email has been "received within a particular time frame."  Id. at col. 6:2-8.  Thus, IV's new interpretation of "descriptor of the content" is inconsistent with the claims and specification of the '050 patent.  Second, as detailed above, IV and Dr. McDaniel previously took the position that bulk email *was* a descriptor of the content according to claim 9.  Only recently have they switched positions to advocate a new claim construction position.  This belated change of tactics should be rejected.

Furthermore, the patent specification never mentions a "descriptor" anywhere nor does it suggest that the reply from the second tier must "describe" the content of a file.  And the only appearance of "content" in the claims is in the context of "content identifiers," which are sent from the first tier to the second tier, not from the second tier to the first tier.  IV's proposal, it is now clear, was merely a strategic attempt to create an (arguably) narrower interpretation of claim 9 in hopes of avoiding the Townshend prior art reference.   During claim construction, IV indicated to the Court that its proposal for claim 9 was consistent with those for claims 16 and 22.  Now IV says otherwise.

IV's constructions, such as for "an indication of a characteristic (e.g. spam, virus, junk email, copyrighted)" (claim 9) also risk confusing the jury by providing inconsistent lists of examples.  Such inconsistent lists leave the jury to speculate about the scope of each claim, and about what additional examples might or might not be covered by the construction.  *See, e.g.*,

---

[5]   IV has never articulated any distinction between bulk email and junk email.  And when asked during his deposition, Dr. McDaniel was unable to articulate any meaningful difference.  *See* Ex. 3 at 57:3-23.

*Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*, No. 6:11-cv-011, 2012 WL 2872121, at *11 (E.D. Tex. July 12, 2012) (stating "[a]s an initial matter, there is no need to complicate the construction by adding the parenthetical 'such as plastic' in the construction.  In fact, the additional language may confuse rather than aid the jury."); *OPTi Inc. v. Silicon Integrated Sys. Corp.*, No. 2:10-cv-279-JRG, 2012 WL 6684691, at *9 (E.D. Tex. Dec. 21, 2012) (stating "even if Plaintiff's proposal were modified to replace 'i.e.' with 'such as,' the listed examples are unnecessary and redundant and would risk being improperly perceived as limiting.").

**D.   Frequency Is Another "Characteristic" Expressly Mentioned In The '050 Patent**

IV's new interpretation of the Court's claim construction must be incorrect for an additional reason.  The frequency of appearance of a file is explicitly identified in the '050 patent as an example of a "characteristic" of the file.  *Id.* at col. 7:28-32 ("the algorithm for processing digital identifiers and the data store…can be adjusted to look for ***other characteristics of the message or data*** which is being tested ***besides frequency.***").

As invalidity expert Dr. Aviel Rubin testified:

> Q.   Thank you.  My last question is, ***what does the '050 patent discuss or give as an example of the characteristic?***
>
> A.   ***So in the '050 patent, there is a characteristic described over and over, which is frequency.***  * * * And then we see here another discussion of frequency on column 7, lines 28 to 31.  And I should point out that, you know, there is clearly an indication in the '050 that frequency is a characteristic because of this text.  ***Other characteristics of the message or data which is being tested besides, frequency, so frequency is one characteristic, this is saying there are other characteristics as well.***

Ex. 5 (Symantec Trial Tr.) at 1661:14 – 1663:22 (emphasis added).

Dr. Rubin's statement comports with IV's observation during claim construction that the '050 patent identifies bulk or spam email by determining the "frequency of appearance"—that is, the characteristic of how many instances of the same or similar message have been received by different users over some period of time.  *See* Exs. 1, 2.  As discussed above, frequency of appearance is what determines whether a file is considered bulk or spam email in the '050 patent, as Dr. McDaniel admitted.  Ex. 5 (Symantec Trial Tr.) at 2081:11-15 (Q.  So it's describing counting frequency to determine the characteristic of spam?  A.  In – in bulk, yes.  Pardon me.  Bulk.  Q.  It says spam, doesn't it, sir?  A.  Fair enough.").  The '050 patent also states that junk email is actually ***defined by*** its frequency of appearance.  Ex. 6 at col. 8:9-12 ("…wherein said characteristic comprises junk email and said characteristic is defined by a frequency of appearance….").

Not only does the specification of the '050 patent clearly demonstrate that spam email, virus, copyright, junk email, bulk email and frequency are all characteristics of a file, inventor testimony confirms that the prototype of the invention allegedly embodying the '050 patent looked for the particular "characteristic" of frequency in order to detect spam.  Ex. 5 (Symantec Trial Tr.) at 745:24—746:11 (Talley video designations) (Q.  ***What characteristic*** did the prototype look for?  Answer:  It looked for ***high frequency***.");  *id.* at 1187:8-12 (Pace video designations) (Q.  And was the only thing you were looking at then frequency?  A.  I believe ***we were looking at frequency*** and the amount of time that that frequency of information came in over.").  Dr. McDaniel, who readily credited the testimony of the inventors in arguing for an earlier priority date for the '050 patent, appears to have ignored this testimony.

Thus, to avoid juror confusion, Trend Micro respectfully requests that the Court clarify that "characteristic" in claim 9 includes bulk email, and conform the parentheticals to state that

bulk email, junk email and frequency are types of "characteristics" of a file—as the parties previously agreed and as the '050 patent itself shows.[6]

## **CONCLUSION**

For the foregoing reasons, Trend Micro requests that the Court clarify the above-referenced constructions for the '050 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Trend Micro Incorporated and*
*Trend Micro, Inc. (USA)*

OF COUNSEL:

Yar R. Chaikovsky
D. Stuart Bartow
David L. Larson
MCDERMOTT, WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

Christopher D. Bright
MCDERMOTT, WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA  92614-2559
(949) 851-0633

March 3, 2015

---

[6]   As noted above, Trend Micro reserves the right to otherwise appeal the Court's construction of these (and any other) terms, including the use of exemplary parentheticals.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on March 12, 2015, upon the following individuals in the manner indicated:

Joseph J. Farnan, III                                    *VIA ELECTRONIC MAIL*
Brian E. Farnan
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Parker C. Folse III                                      *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor
Lindsey N. Godfrey
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
*Attorneys for Plaintiff*

John P. Lahad                                            *VIA ELECTRONIC MAIL*
Weston O'Black
Richard W. Hess
Max L. Tribble
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
*Attorneys for Plaintiff*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)