IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1581 (LPS) |
| | ) | |
| TREND MICRO INCORPORATED | ) | |
| AND TREND MICRO, INC. (USA) | ) | |
| | ) | |
| Defendants. | ) | |

**TREND MICRO INCORPORATED AND TREND MICRO, INC. (USA)'S
OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DECLARE THIS CASE
<u>EXCEPTIONAL AND AWARD FEES UNDER 35 U.S.C. § 285</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
*Attorneys for Trend Micro Incorporated
and Trend Micro, Inc. (USA)*

OF COUNSEL:

Yar R. Chaikovsky
D. Stuart Bartow
Bruce Yen
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA  94304
(650) 320-1800

Donald L. Morrow
PAUL HASTINGS LLP
695 Town Center Drive, 17th Floor
Costa Mesa, CA  92626
(714) 668-6200

Blair M. Jacobs
Allan M. Soobert
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1700
February 2, 2017

## TABLE OF CONTENTS

Page

I.     SUMMARY OF ARGUMENT ...................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................2

III.   STATEMENT OF FACTS ......................................................................................3

       A.   IV's Position During Claim Construction (May – December 2012): Bulk
            Email Is A "Characteristic" Under Claim 9 ........................................................3

       B.   Dr. McDaniel's Position During Expert Discovery (March – June 2013):
            Bulk Email Is A "Characteristic" Under Claim 9 ................................................7

       C.   IV's Position During Summary Judgment (June – August 2013): Bulk
            Email Is A "Characteristic" Under Claim 9 ........................................................9

       D.   IV And Dr. McDaniel At Trial Against Symantec (January – February
            2015): Suddenly, Bulk Email Is Not A "Characteristic" Under Claim 9.............10

       E.   This Court Grants Trend Micro's Motion For Clarification of the Claim
            Construction To Include Bulk Email Expressly ................................................12

IV.    LEGAL STANDARD ..........................................................................................14

V.     ARGUMENT ....................................................................................................15

       A.   This Case is Exceptional, At Least in Part, Due to IV's Rule 26 Violation ........15

            1.   IV's Expert, Dr. McDaniel, Changed His Opinion at Trial....................16

            2.   Trend Micro Was Prejudiced by IV's Rule Violation............................17

       B.   Trend Micro is the Prevailing Party.................................................................18

       C.   Fee-Shifting is Also Appropriate Under the Court's Inherent Powers ...............18

       D.   Fair Estimate of Attorneys' Fees ....................................................................18

VI.    CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005), *abrogated on other grounds* ........................................ 15, 18

*Eon-Net, L.P. v. Flagstar Bancorp, Inc.*,
No. C05-2129RSM, 2010 WL 9034651 (W.D. Wa. Jan. 4, 2010), *aff'd*, 653
F.3d 1314 (Fed. Cir. 2011) ................................................................................................ 16

*Joao Bock Transaction Sys. LLC v. Jack Henry and Assocs., Inc.*,
Civ. No. 12-1138-SLR, 2016 WL 1267159 (D. Del. Mar. 31, 2016) .................................... 16

*NOVA Chems. Corp. v. Dow Chem. Co.*,
Case No. C.A. 13-1601, 2015 WL 5766257, at *7 (D.Del. Sept. 30, 2015) .......................... 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) .................................................................................................. 14, 15

*Parallel Iron LLC v. NetApp Inc.*,
70 F.Supp.3d 585, 590-92 (D. Del. 2014) ....................................................................... 2, 18

*Parallel Iron LLC v. NetApp Inc.*,
84 F.Supp.3d 352 (D. Del. 2015) ........................................................................................ 18

*Shum v. Intel Corp.*,
629 F.3d 1360 (Fed. Cir. 2010)..................................................................................... 15, 18

*Tesco Corp. v. Weatherford Int'l*,
722 F. Supp. 2d 737 (S. D. Tex. 2010)................................................................................... 7

*In re Unified Messaging Solutions, LLC Multidistrict Litigation*,
MDL No. 2371, No. 12 C 6286, 2015 WL 6153662 (N.D. Ill. Oct. 19, 2015) ............... 15, 16

*Vehicle Operation Techs. LLC v. Ford Motor Co.*,
C.A. No. 13-539-RGA, 2015 WL 4036171, at *4 (D. Del. July 1, 2015) ............................. 19

**Statutes**

35 U.S.C. § 101..................................................................................................................... 3

35 U.S.C. § 285.......................................................................................................... 2, 14, 19

**Other Authorities**

Fed. R. Civ. P. 26(e)(2) ....................................................................................................... 16

Fed. R. Civ. P. 19(a)................................................................................................................16

Fed. R. Civ. P.  19......................................................................................................................15

Fed. R. Civ. P.  26..............................................................................................................*passim*

Fed. R. Civ. P.  54(d) ................................................................................................................18

## I.    <u>SUMMARY OF ARGUMENT</u>

This case should be found exceptional, at least in part, based on IV's clear Rule 26 violation in providing an untimely expert opinion that directly conflicted with a previously-disclosed opinion on the same issue.   This violation led to significant additional (and otherwise unnecessary) expense for Trend Micro in seeking and obtaining relief from the Court.  Trend Micro seeks a partial award of its attorneys' fees to compensate for that additional expense.

On January 28, 2015, during IV's trial against Symantec Corporation ("Symantec"), IV's technical expert, Patrick McDaniel, made a stunning admission on cross-examination: in preparing for trial with IV's lawyers, he changed his interpretation of the Court's construction for at least one key claim term in the '050 patent.  Whereas during expert discovery he interpreted the Court's constructions of the terms "indication of a characteristic" (claim 9), "identify the existence or absence of said characteristic" (claim 16), and "indicating the presence or absence of a characteristic" (claim 22) consistently to all include "bulk email" as a "characteristic" of a file, his cross-examination revealed that he had flipped his interpretation of at least claim 9 at trial to *exclude* bulk email as a "characteristic."[1]

At no time between his deposition and the Symantec trial did IV or Dr. McDaniel disclose this change of interpretation, which contradicts the interpretation IV urged to the Court during claim construction, that Dr. McDaniel applied in his expert reports and at his deposition, and that IV presented to the U.S. Patent and Trademark Office (PTO) during the pending re-examination of the '050 patent.  This last-second change of opinion appears to have been a gambit by IV to avoid an invalidity finding over U.S. Patent No. 6,829,635 ("Townshend")—a

---

[1]    The history of IV's flip-flop during the Symantec trial was previously documented in Trend Micro's Motion for Clarification of Certain Claim Constructions in Light of Plaintiff's Untimely Change of Opinion ("Motion for Clarification") (D.I. 168), which is incorporated herein by reference, and which the Court granted on April 10, 2015.  (Bartow Decl., Ex. 1 at 195:1-15).  This motion relies, in significant part, on the same events.

prior art reference that the PTO found to anticipate the '050 patent.  In the wake of the McDaniel flip-flop, Trend Micro was suddenly drawn into a late claim construction dispute, and was forced to file several papers to foreclose similar tactics by IV during the then-upcoming Trend Micro trial.  With only a few months left before the scheduled trial, this untimely change created not only a major distraction from trial preparation, but also a significant expense.

Dr. McDaniel's calculated about-face on the witness stand during trial makes at least this portion of the case stand out because it was a blatant violation of Rule 26.  IV—and other litigants—should be deterred from this type of "trial by ambush" strategy.  Accordingly, Trend Micro seeks a determination that IV's conduct renders a portion of the case (or, alternatively, the entire case) exceptional under 35 U.S.C. § 285.  Trend Micro further requests that the Court award Trend Micro a portion of its attorneys' fees sufficient to compensate for the additional expense it incurred as a result of IV's conduct.[2]  As an alternative to § 285, Trend Micro requests that the Court award fees pursuant to its inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process."  *Parallel Iron LLC v. NetApp Inc.*, 70 F.Supp.3d 585, 590-92 (D. Del. 2014) (awarding fees for litigation misconduct under inherent powers).

## II.   NATURE AND STAGE OF THE PROCEEDINGS

This patent case was originally filed on December 8, 2010.  Defendants Trend Micro Incorporated and Trend Micro, Inc. (USA) (collectively, "Trend Micro") were severed into the present action on November 21, 2012.  Expert discovery closed on April 24, 2012.  C.A. No. 10-1067, D.I. 442.  Trial was set to begin May 11, 2015.

On March 3, 2015, Trend Micro filed its Motion for Clarification.  D.I. 168.  The motion was heard on April 10, 2015, and this Court granted the motion in part during the hearing.  D.I.

---

[2]   To be clear, Trend Micro is not seeking its attorneys' fees for the entire case, but only for work related to addressing IV's untimely change of position.

206.  The Court also ordered certain follow-on letter briefing on a related claim construction issue.  On April 22, 2015, the Court granted Trend Micro's co-pending motion for judgment based on patent ineligibility, finding the '050 and '142 patents, the only remaining patents asserted against Trend Micro, ineligible under 35 U.S.C. § 101.  D.I. 215.

IV filed a Notice of Appeal to the Federal Circuit on May 20, 2015.  D.I. 235.  On September 30, 2016, the Federal Circuit affirmed this Court's decision holding the '050 and '142 patents ineligible.  D.I. 239.  IV's request for *en banc* rehearing was denied.  The Federal Circuit's mandate issued on January 19, 2017.  D.I. 240.

## III.  STATEMENT OF FACTS

The facts here establish a deliberate attempt by IV to avoid prior statements and admissions regarding the '050 patent by providing a new, previously-undisclosed expert opinion during the Symantec trial.  As the following discussion shows, IV (and Dr. McDaniel) pressed one interpretation of the '050 patent claims through claim construction, contentions, expert reports, and summary judgment, and then, having presented its infringement case to the jury, switched to a directly contrary position at trial in an effort to avoid prior art.

### A.   IV's Position During Claim Construction (May – December 2012): Bulk Email Is A "Characteristic" Under Claim 9

IV submitted its claim construction tutorial to the Court on June 12, 2012.  In that tutorial, which was supposed to "focus on the technology" and provide a neutral explanation of the issues (D.I. 119 at ¶ 9), IV made no effort to distinguish what the word "characteristic" meant between claims 9, 16, and 22 of the '050 patent.  As shown below, IV informed the Court that a "characteristic" as described and claimed in the '050 patent "is an attribute of the document such as whether it contains a virus or is SPAM *or bulk email* or includes copyrighted content.



D.I. 169 (Flynn Decl.), Ex. 1 (IV's Technology Tutorial) at 38 (emphasis added to the quoted

material unless otherwise noted).  IV's tutorial went on to describe the "reply" from the second-

tier system to the first tier in the '050 patent as "indicat[ing] the likelihood that the email or

document *is of a certain type or classification, such as* spam, virus, copyrighted, *or bulk*."  *Id.*

at 43.  As an example, IV explained that "if 2,000 instances of the same or similar content ID is

detected in a one-day period, *this is indicative of bulk email or spam*."  *Id.* at 43.



The content IDs are then transmitted, over a network, to a "classifier system" on a different server. This "second-tier" classifier system will receive file content identifiers for each received email (or other types of documents) from a number of client servers. In this case, each post office acts as a client agent of the classification system.

The classifier system will check an internal database of known identifiers to see if the identifier is known to have a particular characteristic. For example, if a specific email message is known to be SPAM or virus, its content identifier will be marked as such at the classification server. The classifier system can also correlate unclassified content IDs to detect patterns and classify documents on that basis. For example, if 2,000 instances of the same or similar content ID is detected in a one-day period, this is indicative of bulk email or spam.

Lastly, the descriptive result of the check against the database of known identifiers is returned to the requesting agent or agents. The reply indicates the likelihood that the email or document is of a certain type or classification, such as spam, virus, copyrighted, or bulk.

Throughout the tutorial, IV drew no distinction between the claims with respect to what types of "characteristics" of a file those claims would cover—all covered bulk email as far as IV was concerned.

5

In its claim construction briefing, IV continued to press for an interpretation of "characteristic" that was consistent between claims 9, 16, and 22.  As one example, in its responsive claim construction brief filed on June 26, 2012, IV again recognized the '050 patent's use of "frequency of appearance" (for example, if 2,000 instances of the same email had been seen in a day) to determine a "characteristic" such as whether an email was spam or bulk:

> As discussed in Plaintiff's Opening Brief, *the '050 patent identifies bulk or spam email* by determining whether multiple instances of the same or similar message have been received by different users.  The patent refers to this as the *'frequency of appearance' of [sic] the 'frequency of the collection.'*

C.A. No. 10-1067, D.I. 240 (IV's Responsive Claim Construction Br.) at 14.

Then, during the claim construction hearing on August 9, 2012, counsel for IV addressed what he called the "indicating" terms from claims 9, 16, and 22 as a group, and discussed what types of "characteristics" those terms included:

> Lastly, if I can go back to the true/false test issue.  Those are the *claim terms in slide 17, indicating the characteristic*.  * * * It is not strictly a true/false test even in the sense of determining what it is.  *It might be bulk email.  It might be spam. It might be something with a virus in it.  It might be something that includes copyrighted material.*  And there is no understanding in advance about what it might consist of, or it might not have any unwanted characteristics at all.

C.A. No. 10-1067, D.I. 340 (Markman Hr'g Tr.) at 63:8-23.

Throughout the entire claim construction process, IV consistently referred to bulk email as a "characteristic" according to each of claims 9, 16, and 22.  The Court issued its Claim Construction Order on December 12, 2012, adopting IV's proposed constructions for the "indicating" terms.  C.A. No. 10-1067, D.I. 426.  Shortly thereafter, even IV's patent prosecution

counsel told the PTO in ongoing reexamination proceedings that the Court's construction of claim 9 included "bulk email." C.A. No. 10-1067, D.I. 584-1, Ex. F at 24.[3]

### B. Dr. McDaniel's Position During Expert Discovery (March – June 2013): Bulk Email Is A "Characteristic" Under Claim 9

IV served five reports by Dr. Patrick McDaniel between February 2013 and May 2013, concerning both infringement and validity, including two supplemental reports. Dr. McDaniel did not opine in any of his five reports that bulk was not a "characteristic" under each of claims 9, 16 and 22. To the contrary, he consistently interpreted those claims to include bulk email. As Dr. McDaniel's opening report on infringement stated with respect to the "indicating" terms:

> I understand the Court construed the terms to mean "a descriptor of the content (e.g., spam, virus, junk email, copyrighted)"/"identify whether or not the message is of a certain type of [sic] classification"/"indicating the presence or absence of a characteristic (e.g., spam, virus, copyright, bulk email)." Thus, it is clear that *the characteristics contemplated by the '050 Patent can, for example, be the likelihood that an email message is spam or bulk mail*, that a file is more or less likely to contain malicious content, like a virus, or that the message may contain illicit content or copyrighted material.

D.I. 169 (Flynn Decl.), Ex. 2 (McDaniel Opening Report on Infringement), ¶ 178.

Dr. McDaniel was deposed on April 15, 2013. In his testimony, he confirmed that he had made no distinction between claims 9, 16 and 22 with respect to what "characteristics" each included. All included bulk email:

> Q. Another *example of a characteristic given in the Court's claim construction is bulk email*?
>
> A. *That is correct.*

---

[3] Courts have held that statements in reexamination proceedings are part of the file history of the patent, and may be relevant in construing the claims. *See, e.g., Tesco Corp. v. Weatherford Int'l*, 722 F. Supp. 2d 737 (S. D. Tex. 2010).

> Q. So as you've interpreted these **claims 9, 16, and 22**, and you've
> interpreted the word "characteristic," **you have understood the
> word characteristic to include**, as examples, spam, virus, **junk
> email**, copyright, and **bulk email, correct**?
>
> A. **That is correct**.

D.I. 169 (Flynn Decl.), Ex. 3 (McDaniel 4/15/2013 Dep. Tr.) at 29:19-30:5.

To be clear, IV did not argue merely that claims 9, 16, and 22 **collectively** included bulk

email as a "characteristic"—such that, for example, claims 16 and 22 might include bulk email,

but claim 9 might not.  Dr. McDaniel testified with respect to the "determining" step of claim 9:

> Q. Okay. So getting back to the issue of how you've been
> interpreting phrases in these claims, you see **claim 9** contains
> the phrase "whether each content identifier matches a
> characteristic of other identifiers?
>
> A. Right.
>
> * * *
>
> Q. What does it mean that that processing system is determining
> whether received content identifiers match a characteristic of
> other identifiers?
>
> A. The Court's construed this. [Reads claim construction for claim
> 9]
>
> * * *
>
> Q. So the word "characteristic" in that construction you just read
> to me, **does that characteristic have to be something like
> spam, virus, junk email, copyright, bulk email**?
>
> A. **Yes.** It's as the Court construed the term "characteristic."

*Id.* at 51:17-52:19.

Dr. McDaniel's affirmative response demonstrates that he had interpreted claim 9 to

include bulk email.  He would later confirm at trial that this was, in fact, the interpretation he had

applied throughout expert discovery.  *See* D.I. 169 (Flynn Decl.), Ex. 3 (McDaniel 4/15/2013

Dep. Tr.) at 29:19-30:5, 51:17-52:19.  Despite serving a supplemental report and being deposed

again on April 16, 2013, April 22, 2013, and June 4, 2013, Dr. McDaniel never disclosed any

change to his interpretation of the Court's claim constructions prior to trial.

**C.     IV's Position During Summary Judgment (June – August 2013): Bulk Email Is A "Characteristic" Under Claim 9**

The parties briefed and argued summary judgment motions between June and August,

2013.  In opposing Trend Micro's motion for summary judgment of invalidity, IV made several

arguments as to why the Townshend reference did not anticipate the '050 patent, including—

contrary to what IV argued during claim construction—that a count of matching signatures "does

not 'indicate' that [a] message is bulk."  *See* D.I. 96 at pp. 9-11.  However, IV ***never*** argued that

bulk email was not a "characteristic" under claim 9.

During the August 29, 2013 hearing, IV's counsel displayed the following slide, which

included the constructions of the "indicating" terms from claims 9, 16, and 22 as a group:



First Embodiment, Second Claimed Step

D.I. 169 (Flynn Decl.), Ex. 4.  With the three constructions projected together on the video

screen, IV's counsel argued, "the characteristic under the Court's constructions are things like

spam, virus, junk, copyright, *bulk*."  D.I. 131 (MSJ Hr'g Tr.) at 29:8-10.  Again, counsel made

no effort to distinguish between what a characteristic would be under claim 9 as compared with

claim 16 or claim 22.

      After summary judgment proceedings, IV did not serve any supplemental reports from

Dr. McDaniel, or any other disclosure prior to the Symantec trial that revealed an intent to

reinterpret the Court's claim constructions.

### D.    IV And Dr. McDaniel At Trial Against Symantec (January – February 2015): Suddenly, Bulk Email Is Not A "Characteristic" Under Claim 9

      On January 28, 2015, on cross-examination during the third day of the Symantec trial, Dr.

McDaniel surprisingly applied a new interpretation of claim 9, now taking the position that "bulk

email" was not a characteristic according to the Court's construction of "indication of a

characteristic." As Dr. McDaniel testified before the jury, on cross examination:

    Q.  The meaning was *bulk*.

    A.  Right

    Q.  *That's one form of a characteristic, right?*

    A.  *Not under claim 9*.

D.I. 169 (Flynn Decl.), Ex. 5 (Symantec Trial Tr.) at 641:17 – 643:25.

      Dr. McDaniel subsequently admitted that he had changed his opinion regarding the scope

of claim 9 since his deposition, and that he had done so after preparing for trial with Intellectual

Ventures' attorneys:

    Q.  And it's true though, isn't it, that while you prepared your
        reports and up until the time you were deposed in the case, *you*
        *interpreted claims 9, 16 and 22 all to have a characteristic*

> *that included* spam, virus, junk e-mail, copyright and ***bulk e-mail?***
>
> A.  ***At that time, yes.***
>
> Q.  Okay.  ***And you changed it after you were deposed in this case by Symantec when it had an opportunity to learn your opinions and the bases and reasons for them?***
>
> A.  ***Yes***.
>
> Q.  And you changed that opinion after you've had a chance to prepare for trial working with Intellectual Ventures' lawyers?
>
> A.  ***Yes***.

*Id.* at 675:9-24 (emphasis added).

In IV's rebuttal case regarding validity, Dr. McDaniel relied on his new interpretation of claim 9 to distinguish around the Townshend prior art reference:

> Q.  Townshend Figure 1 shows the output as the claim requires from the central server to be a count, right?
>
> A.  Yes, that's correct.
>
> Q.  And you can use a frequency to determine whether something is bulk, right?
>
> A.  Yes.
>
> Q.  You can use a frequency to determine whether something is spam?
>
> A.  ***Not – not under – not under claim 9***.
>
> Q.  ***This goes back to discussion we had the last time where the Court has an example that does not say bulk in claim 9, but does say bulk in claim 22, right?***
>
> A.  ***Right.***  Bulk is not a descriptor of the content.

*Id.* at 2082:12 – 2083:1 (emphasis added).

Finally, IV's counsel argued during closing argument—contrary to his argument at the *Markman* hearing—that "characteristic" in claim 9 meant something ***different*** than a "characteristic" under claims 16 and 22:

> ***The Court has interpreted the third limitation of claims 9, 16 and 22 of the '050 patent in slightly different ways.*** * * * What the '050 patent does, in every instance, is determine and return information about the characteristic of the file. ***In claim 9, it's defined as a descriptor of the content of the file. With respect to claims 16 and 22, it refers to a characteristic. Now, you can say that something has the characteristic of bulk e-mail by counting how many times it has been seen.*** It doesn't tell you anything about the content, as I explained before, it doesn't even tell you that it is spam or unwanted, but you don't know what it is.

*Id.* at 2405:18 – 2406:12 (emphasis added).

Again, from the time of Dr. McDaniel's deposition up until the Symantec trial, neither IV nor Dr. McDaniel served a supplemental report or provided any other disclosure that they would show up at trial with a new, inconsistent interpretation of the Court's claim constructions.

### E. This Court Grants Trend Micro's Motion For Clarification of the Claim Construction To Include Bulk Email Expressly

Within a few weeks after IV's trial against Symantec, Trend Micro filed its Motion for Clarification, in which Trend Micro requested that the Court clarify the claim construction to include "bulk email" in all three of the disputed claims. D.I. 168. During the hearing on April 10, 2015, IV's counsel argued, despite Dr. McDaniel's clear admission to the contrary, that there had been no change of opinion:

> **COURT:** But [Trend Micro's counsel] is right, isn't he? ***There has to be some kind of relief here, doesn't there?*** If not the one they're asking for today, something in connection with trial?
>
> **IV:** No, there certainly doesn't. Because as I walk through the history of claim construction and the history of trial, ***I think you will see that Dr. McDaniel's opinions and IV's opinions were consistent all along.*** And this is –

12

> **COURT:** *Until trial.*

Bartow Decl., Ex. 1 (Hr'g Transcript) at 146:4-13 (emphasis added). And:

> **COURT:** Isn't Dr. McDaniel there saying: Q. So as you've interpreted these claims 9, 16, and 22, and you've interpreted the word "characteristic," you have understood the word characteristic to include, as examples, spam, virus, junk e-mail, copyright, and *bulk e-mail*, correct? A. That is correct.
>
> **IV:** So, Your Honor, when they asked a question about all three claims and one of those claims has bulk e-mail in your claim construction, he was supposed to say? I mean I guess the more perfect answer would have been not claim 9, since claim 9 doesn't do that.
>
>       * * *
>
> **COURT:** So I think that is the point, though. I think that cuts against you because, sure, maybe he didn't have to do it on that question, maybe he didn't have to do it in Expert Report No. 1, maybe he didn't have to do it in Expert Report No. 2, *but to wait until cross-examination of trial years later, isn't that just too late*?
>
> **IV:** Your Honor. I mean I guess *what I won't do is say he changed his opinion because it's just not true.* He didn't wait. He did it in his Expert Report No. 1, he did it in his Expert Report No. 2, he did it in his deposition, in each of those places.
>
> **COURT:** If I believe your expert that he changed his opinion, don't I have to give some relief to Trend Micro?

*Id.* at 162:8-163:15 (emphasis added).

When pressed to explain Dr. McDaniel's admission that he changed his opinion just before trial, IV's counsel characterized the admission as a "mistake" that the Court should simply disregard:

> **COURT:** *It seems striking in your briefing that you never come out and say that Dr. McDaniel did what he did at trial which is admit that he changed his opinion.* First of all, did Dr. McDaniel admit that he changed his opinion?

> **IV:**  *He said on the stand that he changed his opinion.*  I will tell you we probably should have stated in the brief and ***I will tell you in open court he made a mistake in that one answer***.  Okay?  And you can see that in the rest of the record.
>
>       * * *
>
> **COURT:**  *So you are asking me to deny that relief by rejecting the statement that your own expert made in front of me, in front of a jury in which he changed his opinion.  I should not believe him when he said that.*

*Id.* at 146:18-147:16 (emphasis added).

The Court eventually rejected IV's arguments that Dr. McDaniel did not change his opinion during trial and granted the portion of Trend Micro's Motion for Clarification seeking the express addition of bulk email to the Court's claim constructions.  *Id.* at 195:1-15.  The Court also ordered follow-on letter briefing regarding whether "frequency" should also be added to the construction.  *Id.* at 199:21-200:2.  The letter briefing was completed, but the issue was not decided due to the Court's judgment that the claims of the '050 were ineligible under § 101.

## IV.  <u>LEGAL STANDARD</u>

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.

The Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Under the holistic, less rigid standard announced in *Octane*, courts may consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 1756 n.6 (internal quotation marks omitted).  No independently

14

sanctionable conduct or bad faith is required.  *Octane Fitness*, 134 S. Ct. at 1757-58.  A movant

seeking an exceptionality finding must establish its entitlement to attorneys' fees under § 285 by

a preponderance of the evidence.  *Id.* at 1758.

To be deemed a prevailing party, "the party [must] have received at least some relief on

the merits," and "[t]hat relief must materially alter the legal relationship between the parties by

modifying one party's behavior in a way that directly benefits the opposing party."  *Shum v. Intel

Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010).  A summary judgment victory provides sufficient

grounds for acquiring prevailing party status.  *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l,

Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), *abrogated on other grounds* by *Octane Fitness*, 134

S. Ct. 1749 (2014).

## V.   **ARGUMENT**

### A.  **This Case is Exceptional, At Least in Part, Due to IV's Rule 26 Violation**

This case stands out from others at least because IV blatantly violated Rule 26 when it

deliberately engineered a reversal of its expert's opinion during the Symantec trial.  This

violation directly caused Trend Micro to incur significant expense to prevent IV from attempting

a similar tactic in the then-upcoming Trend Micro trial.

Other courts have found cases exceptional where a party exhibits a disregard for the

Federal Rules of Civil Procedure.  *See, e.g., In re Unified Messaging Solutions, LLC Multidistrict

Litigation*, MDL No. 2371, No. 12 C 6286, 2015 WL 6153662 (N.D. Ill. Oct. 19, 2015).  In

*Unified Messaging Solutions*, the Court found the case exceptional-in-part because the plaintiffs

misled the defendants and the court regarding ownership of the patents-in-suit and the necessity

of joinder under Rule 19.  There, the court awarded partial fees, reasoning that, but for

plaintiffs' improper conduct, several rounds of briefing on the issues of ownership and standing

could have been avoided.  *Id.* at *6.  As the court wrote:

> Even if excused from not joining [co-plaintiff] AMT in the first instance,
> [plaintiff] UMS should have been aware that Federal Rule of Civil
> Procedure 19(a) would require AMT to be joined.  Had AMT been joined
> from the start, litigation of the motion for judgment on the pleadings and
> for sanctions could have been avoided.  But UMS did not even offer that
> option in response to the motions, requiring the court to discern this for
> itself.  The court can only infer that the litigation strategy set out above
> motivated UMS's lack of candor and transparency.

*Id.*

Providing new opinions for the first time during trial (in violation of Rule 26) is also analogous to behavior other courts have found to constitute litigation misconduct supporting an award of attorneys' fees.  *See Eon-Net, L.P. v. Flagstar Bancorp, Inc.*, No. C05-2129RSM, 2010 WL 9034651, at *13-15 (W.D. Wa. Jan. 4, 2010), *aff'd*, 653 F.3d 1314 (Fed. Cir. 2011) (finding that litigation misconduct, including in the submission of inconsistent declarations by the same declarants, supported an award of attorneys' fees); *Joao Bock Transaction Sys. LLC v. Jack Henry and Assocs., Inc.*, Civ. No. 12-1138-SLR, 2016 WL 1267159, at *3 (D. Del. Mar. 31, 2016) (finding case exceptional where "plaintiff's ever changing litigation strategies [including claim construction positions] created a tortuous path to resolution.").  And district courts have the authority to award partial fees to compensate for additional resources expended by the aggrieved party directly as a result of litigation misconduct.  *See Unified Messaging Solutions*, 2015 WL 6153662 at *6.

Here, the case should be found exceptional, at least in part, and Trend Micro should be awarded attorneys' fees for the added work that resulted from IV's rule violation.

### 1.    IV's Expert, Dr. McDaniel, Changed His Opinion at Trial

It is well-established that all expert opinions must be disclosed in advance of trial.  Fed. R. Civ. P. 26(e)(2).  IV must have known that any change in Dr. McDaniel's opinion during trial would constitute a violation of Rule 26.  *See Unified Messaging Solutions*, 2015 WL 6153662 at

*6. Here, not only did Dr. McDaniel change his opinion for the first time during trial, he admitted that the change was the direct result of discussions with IV's counsel while preparing for trial. There is no other explanation for the sudden change in opinion.

At the hearing on Trend Micro's Motion to Clarification, IV was unable to provide any reasonable explanation for Dr. McDaniel's trial testimony, arguing that there was no inconsistency (despite overwhelming evidence to the contrary, such as Dr. McDaniel's *admission* under oath that he had changed his opinion). The Court concluded that Dr. McDaniel changed his opinion, and emphasized that "making that clear only once he was on cross-examination at trial in front of the jury is too late." Bartow Decl., Ex. 1 (Hr'g Transcript) at 197:23-198:8. IV's clear violation of Rule 26 supports a finding that at least a part of this case is exceptional.

## 2. Trend Micro Was Prejudiced by IV's Rule Violation

Dr. McDaniel's deliberate change of opinion thrust Trend Micro into an unanticipated claim construction dispute shortly before the scheduled trial. With trial quickly approaching, Trend Micro was forced to divert significant resources to prevent in the Trend Micro case what IV had done against Symantec.

Trend Micro was forced to file the Motion for Clarification to settle the claim construction dispute and to avoid potential jury confusion at trial. The Court granted in part Trend Micro's motion to add bulk email to the claim construction. The Court ordered additional letter briefing regarding whether "frequency" should be added as well.[4] Finally, Trend Micro's counsel and technical experts were forced to analyze Dr. McDaniel's new positions and to prepare responses. Compensation should be awarded for all this additional work.

---

[4]   That letter briefing was eventually rendered moot by the Court's ineligibility ruling for the '050 patent.

### B.  Trend Micro is the Prevailing Party

There can be no doubt that Trend Micro is the prevailing party here.  The Court granted

Trend Micro's § 101 motion and held the remaining two patents asserted against Trend Micro

ineligible.  The Court entered final judgment in favor of Trend Micro and against IV shortly

thereafter.  D.I. 215, 234.  The Federal Circuit subsequently affirmed the decision on appeal.

D.I. 239.  Thus, Trend Micro has prevailed on all issues and IV has prevailed on none, making

Trend Micro the prevailing party.  *See Shum*, 629 F.3d at 1367; *Brooks Furniture Mfg., Inc.*, 393

F.3d at 1381 (Fed. Cir. 2005).

### C.  Fee-Shifting is Also Appropriate Under the Court's Inherent Powers

As an alternative to awarding fees under § 285, an award of fees is warranted  under the

Court's inherent power "to fashion an appropriate sanction for conduct which abuses the judicial

process."  *Parallel Iron LLC v. NetApp Inc.*, 70 F.Supp.3d 585, 590-92 (D. Del. 2014).

### D.  Fair Estimate of Attorneys' Fees

Rule 54 requires at least a "fair estimate" of fees sought, for the purpose of putting the

opposing party on notice.  Trend Micro's current fair estimate of attorneys' fees to be recovered

by this motion is $198,000.[5]   Bartow Decl., at ¶ 3-5.

Trend Micro respectfully suggests that in the event of a positive liability determination,

Trend Micro would submit additional documentation for *in camera* review regarding fees,

including the fees expended in preparing this motion, should the Court so require.  This

---

[5] Consistent with the procedures set forth in the Federal Rules of Civil Procedure, Trend Micro will submit any additional supporting evidence the Court requests in order to calculate a precise dollar amount.  *See* Fed. R. Civ. P.  54(d), 1993 Advisory Committee Notes.  "The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees.  This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case.  What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)."

procedure has been followed in certain other Delaware cases.  *See, e.g., NOVA Chems. Corp. v.*

*Dow Chem. Co.*, Case No. C.A. 13-1601, 2015 WL 5766257, at *7 (D.Del. Sept. 30, 2015); *see*

*also Parallel Iron LLC v. NetApp, Inc.*, 84 F.Supp.3d 352 (D. Del. 2015); *Vehicle Operation*

*Techs., LLC v. Ford Motor Co.*, No. 13-539-RGA, 2015 WL 4036171, at *4 (D. Del. Jul. 1,

2015).

## VI.    **CONCLUSION**

This case stands out, at least in part, from normal cases because IV clearly violated Rule

26 when its expert, Dr. McDaniel, abruptly changed his opinion during the Symantec trial,

forcing Trend Micro to divert significant resources to addressing this violation shortly before the

scheduled trial, and driving up the cost of litigation.  For those reasons, and in light of the totality

of the circumstances explained above, this Court should exercise its discretion to find this case

exceptional (or at least partially exceptional) and to award Trend Micro its reasonable attorneys'

fees under 35 U.S.C. § 285 for the additional work incurred as a result of IV's litigation

misconduct.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
    *Attorneys for Trend Micro Incorporated*
    *and Trend Micro, Inc. (USA)*

OF COUNSEL:

Yar R. Chaikovsky
D. Stuart Bartow
Bruce Yen
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA  94304
(650) 320-1800

Donald L. Morrow
PAUL HASTINGS LLP
695 Town Center Drive, 17th Floor
Costa Mesa, CA  92626
(714) 668-6200

Blair M. Jacobs
Allan M. Soobert
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1700


February 2, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 2, 2017, upon the following in the manner indicated:

Joseph J. Farnan, III, Esquire                              *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Parker C. Folse, III, Esquire                               *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
*Attorneys for Plaintiff*

John P. Lahad, Esquire                                      *VIA ELECTRONIC MAIL*
Weston O'Black, Esquire
Richard W. Hess, Esquire
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 1500
Houston, TX 77002
*Attorneys for Plaintiff*

Yar R. Chaikovsky, Esquire                                  *VIA ELECTRONIC MAIL*
D. Stuart Bartow, Esquire
PAUL HASTINGS, LLP
1117 S. California Ave.
Palo Alto, CA 94304
(650) 320-1800
*Attorneys for Trend Micro Incorporated*
*and Trend Micro, Inc. (USA)*

*/s/ Karen Jacobs*

_____

Karen Jacobs (#2881)