# EXHIBIT 1

1

09:39:24 1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4    INTELLECTUAL VENTURES I, LLC,            :
                                             :   CIVIL ACTION
5                   Plaintiff,               :
     v                                        :
6                                             :
     TREND MICRO INCORPORATED, and           :
7    TREND MICRO INC. (USA),                 :
                                             :   NO. 12-1581-LPS
8                   Defendants.
                               - - -
9
                          Wilmington, Delaware
10                        Thursday, August 31, 2017
                          *Oral Argument Hearing*
11
                               - - -
12
     BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge
13
                               - - -
14   APPEARANCES:

15

                 FARNAN, LLP
16               BY:  BRIAN E. FARNAN, ESQ.

17                   and

18               SUSMAN GODFREY L.L.P.
                 BY:  PARKER FOLSE, ESQ.
19                   (Seattle, Washington)

20                   Counsel for Plaintiff

21

                 MORRIS NICHOLS ARSHT & TAYLOR, LLP
22               BY:  KAREN JACOBS, ESQ.

23                   and

24

25                                   Brian P. Gaffigan
                                     Official Court Reporter

54

1 characteristic. Later in the deposition, he says it is.

2         There are other places in the deposition we

3 have already shown the Court where I think this idea that he

4 has in his head, he had in his head at the time of the

5 deposition. That there is a difference between something

6 that is a descriptor of content, which is the keyword in the

7 Court's claim construction, and something that just counts.

8         THE COURT: All right. Thank you.

9      Mr. Chaikovsky, do you want to say anything in

10 response?

11         MR. CHAIKOVSKY: I don't have that deposition,

12 Your Honor, right in front of me. But I would say with

13 respect to that, that he was referring to Townshend. Again,

14 consistent with everything we have shown in his deposition

15 and his trial testimony and his expert reports, he was

16 referring to Townshend's specific description of count and

17 its use of bulk and bulk e-mail signature elements, and in

18 that context, he is telling you, hey, it does not meet the

19 Court's definition. He did do that. It is in those slides

20 as we saw and he did that consistently.

21         But he was not take the position he did at

22 trial, which is say claim 9 does not cover bulk, which he

23 did affirmatively so the patent would not be invalidated.

24         THE COURT: All right. Thank you. We're going

25 to take a recess and then I will come back and I will have

55

1 something to say.

2         (Recess taken.)

3         *   *   *

4         (Proceedings reconvened after recess.)

5         THE COURT: You can have a seat.

6         All right. So before the Court is Trend Micro's

7 motion to declare the case exceptional and to grant partial

8 attorney fees.

9         The motion, of course, arises under Section 285

10 which allows the Court where the prevailing party shows by

11 a preponderance of the evidence that the case is exceptional

12 to award attorney fees. The "exceptional" standard is

13 assessed under the totality of the circumstances and

14 requires the Court to consider, among other things, its

15 non-exhaustive list of factors, whether the case stands out

16 from the rest in terms of its substantive strength or its

17 litigation conduct.

18         As I noted, in this case the burden is on Trend

19 Micro to show by a preponderance of the evidence under the

20 totality of the circumstances that the case is exceptional.

21         And having considered the arguments both before

22 today, having lived with the case for a long time and having

23 heard the lengthy arguments today and reviewed the materials

24 submitted, I find that Trend Micro has met its burden, and I

25 am granting the motion.

56

1         What I want to do to try to explain how I

2 reached that conclusion is to go through the factors that I

3 have considered. And, mind you, not all of the factors

4 point in favor of Trend Micro. Some most definitely do not,

5 and let me start with some of those.

6         One factor I have considered is whether IV's

7 case was objectively unreasonable.

8         I find that it was not. Overall, IV's case was

9 not objectively unreasonable. In reaching this conclusion,

10 I think it is fair that I have considered not just the

11 specific allegations against Trend Micro but the highly

12 related allegations against Symantec and even against the

13 other defendants that were in the case.

14         It's true or at least there is nothing to

15 contradict IV's contentions that they reached they say

16 favorable settlements with two of the defendants. And it's

17 also true that the one trial we had, IV could arguably be

18 called the winner. They certainly did prove infringement

19 on two of three patents. And Symantec failed to prove that

20 any patent claims were invalid.

21         Plus, prior to that, I do recall there was a

22 great deal of litigation, and IV prevailed on a great deal

23 of that, it seemed to me a majority of all of that litigation.

24         So it would be wrong to say that IV's case was

25 objectively unreasonable.

57

1         I have also considered I guess the closely

2 related question of whether the case overall is exceptional.

3         I find it was not. It was, for the most part,

4 while hard fought, highly litigious, a case I will remember,

5 sure, but does it stand out in a way that makes it exceptional

6 overall? It does not. It does not. But I don't think

7 that under current law at least precludes the finding of

8 exceptionality with respect to the limited partial relief

9 that is being requested.

10         I have also considered whether, as alleged, IV

11 deliberately planned and executed a reversal of substantive

12 positions during its technical expert's testimony on

13 cross-examination at trial in the related case against

14 codefendant Symantec.

15         Here, I find, no, it has not been proven by a

16 preponderance of the evidence, the motivation and intent

17 portions of what I have just said, which as I understand to

18 be the allegations of Trend Micro. I am not persuaded by a

19 preponderance that this an intentional deliberate plan by IV.

20         But, now some factors that actually cut in favor

21 of the relief I'm granting, I do find that those acts are

22 what occurred, meaning specifically that the expert witness

23 belatedly, very late, at cross-examination at trial, disclosed

24 a new opinion. And that was a violation of at least Rule 26.

25         I further considered, in the very unique

58

1  circumstances here, did that expert Dr. McDaniel admit that
2  this is exactly what occurred, i.e., that he was disclosing
3  a new opinion during his cross-examination?  And the answer
4  here again is, yes, he did admit that under oath in front of
5  the jury and in front of me.
6          I also considered, did IV later oppose all
7  relief based on that admitted late disclosure of the new
8  expert opinion?  And did IV try to persuade me that the
9  expert did not change his opinion?
10         The answer, of course, is yes.  All of that
11  happened as well.  And it's fair to consider all of that
12  under the totality of the circumstances.
13         So then I asked, do these circumstances that I
14  have just described that favor the relief sought by Trend
15  Micro, do those stand out from others with respect to the
16  substantive strength of what IV's litigation position was
17  with respect to these very narrow questions of Dr. McDaniel,
18  his testimony at trial, and trying to put that testimony in
19  a position where the effort was to persuade the Court that
20  no relief at all was warranted?  Does all of that stand out
21  from other cases, from all the other portions of this case
22  in terms of either the substantive strength of a position IV
23  was advocating or the manner with which IV was litigating?
24         And the answer to that is, yes, solely with
25  respect to this collection of circumstances regarding Dr.

59

1  McDaniel's changed testimony.  IV's conduct was exceptional,
2  stands out, and meets the standard of Section 285.
3          I have also considered whether IV's conduct with
4  respect to Dr. McDaniel Daniel's changed testimony or new
5  opinion is something the Court should want to deter?
6          And the answer is yes.
7          And, relatedly, I have asked whether what IV did
8  with respect to Dr. McDaniel's changed opinion is something
9  for which Trend should be compensated?
10         And the answer to that is also yes.
11         I have considered IV's motivation.  I understand
12  the allegation seems to be from Trend Micro that IV was
13  motivated to deal with the Dr. McDaniel situation either
14  because of something relating to the ongoing PTO proceedings
15  which, according to Trend, were not going well for IV or
16  possibly maybe something to do with disappointment over
17  how the Symantec trial ended.
18         All I can say is those allegations are not proven.
19  They have also not been disproven.  And so the motivation
20  factor doesn't really cut in favor of one side or the other on
21  this record.
22         I have also considered, as part of the totality
23  of the circumstances, Trend Micro's litigation conduct.  I
24  disagree with Trend that that is irrelevant.  I think it is
25  relevant in a totality of the circumstances assessment, but

60

1  nothing that has been pointed to and nothing that I recall
2  about Trend's litigation conduct rises to the level of
3  litigation misconduct.  And, more importantly, nothing
4  pointed to or nothing that I recall is enough to undermine
5  the conclusions that I have already reached based on the
6  findings I have given you that I should grant the motion.
7          I have also considered, I think it is fair to
8  consider, that Trend did get some relief already in the
9  form of the clarification that I granted of my claim
10  construction.  But that, too, I think here under the
11  totality of the circumstances, did not undermine the
12  exceptionality of what IV did and the other reasons I have
13  given for the conclusion I have reached.
14         Finally, I agree with IV that this an equitable
15  component to a 285 analysis.  I have considered equity.  And
16  I just conclude, after all of this, that the very limited
17  relief sought is I believe the equitable outcome under the
18  totality of the circumstances.
19         Whether it will make a difference or not, I'll
20  at least say for the record that I have considered this
21  circumstance to be very unusual.  I have tried to carefully
22  delineate what I think was the unique circumstances that
23  give rise to this relief that I'm granting.
24         I certainly hope and don't intend to be opening
25  the door to regularly getting 285 motions any time a single

61

1  discovery dispute is resolved in one side's favor or the
2  other or there is a Rule 26 violation of any kind.  That is
3  not I think the correct interpretation of what is happening
4  here today.  But no one can predict the future, and I can
5  only do what I think is the right thing to do based on the
6  law and the facts before me, and that is what I have done.
7          I do want to give Trend an opportunity to update
8  the number for the fees that it is seeking because it is
9  fair for them to at least consider asking for relief that
10  includes the proceedings through today.
11         I order that the parties meet and confer and
12  submit a joint status report by Wednesday of next week for
13  how you propose we resolve, in fact, if there are any
14  disputes or whatever additional proof Trend wants to put
15  forward to get this case in a position where I could sign
16  some sort of order to effectuate the relief that I granted
17  today.
18         Are there any questions about that from Trend
19  Micro?
20         MR. CHAIKOVSKY:  No questions, Your Honor.
21         THE COURT:  Okay.  And from IV?
22         MR. FOLSE:  No, Your Honor.  Although I think
23  there was some briefing that the Court already has that
24  addresses the amount that was sought.
25         THE COURT:  I believe there is some.  I don't

1   know if -- I mean maybe Mr. Chaikovsky can tell me right

2   now.  Are you resting on what you submitted or did you

3   want the opportunity to confer about submitting something

4   additional?

5         MR. CHAIKOVSKY:  Yes, I think we need to confer

6   because we didn't submit anything with any detail.  We

7   submitted a bill of costs that has detail, but with respect

8   to fees we have not.  So, yes, we need to meet and confer on

9   that.

10         THE COURT:  So you can give me your positions on

11   Wednesday after you conferred on that.

12         Is there anything else?

13         MR. FOLSE:  There is also pending our objections

14   to their bill of costs which is a separate issue.

15         THE COURT:  Not one, I'm prepared to address

16   today.  Okay.

17         MR. FOLSE:  Thank you.

18         THE COURT:  Thank you all very much.  We will be

19   in recess.

20         (Proceedings end at 4:50 p.m.)

21

22     I hereby certify the foregoing is a true and accurate

     transcript from my stenographic notes in the proceeding.

23

24             /s/ Brian P. Gaffigan

           Official Court Reporter

25            U.S. District Court

# EXHIBIT 2

**Exhibit 2 - Trend's Claimed Fees for Dr. Aviel Rubin's Supplemental Expert Report**

| Date | Attorney | Rate/Hour per Trend's Exh. B | Proportional Hours Billed for Task | Proportional Amount for Task | Description |
|---|---|---|---|---|---|
| 2/27/2015 | D. Bartow | ███ | | ███ | ████████ |
| 2/28/2015 | D. Bartow | | ██ | ███ | ████████ |
| 3/1/2015 | B. Yen | | | ███ | ████████ |
| 3/2/2015 | B. Yen | | | ███ | ████████ |
| 3/3/2015 | B. Yen | | | ███ | ████████ |
| 3/4/2015 | B. Yen | | ██ | ███ | ████████ |
| 3/5/2015 | B. Yen | | | ███ | ████████ |
| 3/7/2015 | D. Bartow | | | ███ | ████████ |
| 3/9/2015 | D. Larson | | | ███ | ████████ |
| 3/9/2015 | B. Yen | | ██ | ███ | ████████ |
| 3/16/2015 | Y. Chaikovsky | ███ | ██ | ███ | ████████ |
| 3/17/2015 | D. Bartow | ███ | ██ | ███ | ████████ |
| 3/20/2015 | B. Yen | | | ███ | ████████ |
| 3/25/2015 | B. James | ███ | ██ | ███ | ████████ |
| 3/30/2015 | B. Yen | | ██ | ███ | ████████ |
| 4/6/2015 | B. Yen | ███ | ██ | ███ | ████████ |
| Total for billing entires specifically for Rubin's Supp. Report | | | ██ | ███ | |
| Total for billing entires specifically for Rubin's Supp. Report, plus half of the total for jointly preparing ███████ | | | ██ | ███ | |

# EXHIBIT 3

**Exhibit 3 - Trend's Joint billings for** █████████████████

| Date | Attorney | Rate/Hour per Trend's Exh. B | Proportional Hours Billed for Task | Proportional Amount for Task | Description |
|---|---|---|---|---|---|
| 3/2/2015 | D. Bartow | | ███ | █████████████████████ |
| 3/4/2015 | D. Bartow | ███ | ██ | ████████████████████ |
| 3/6/2015 | D. Bartow | ███ | ██ | ████████████████████████ |
| **Total for jointly preparing** ████████ ████ | | | ██ | ████ | |

# EXHIBIT 4

**Exhibit 4 - Trend's vague billing entries for** ████████████

| Date | Attorney | Rate/Hour per Trend's Exh. B | Proportional Hours Billed for Task | Proportional Amount for Task | Description |
|---|---|---|---|---|---|
| 3/9/2015 | D. Bartow | ███ | █ | ███████████ | |
| 3/10/2015 | D. Bartow | ███ | █ | ██████████ | |
| 3/12/2015 | D. Bartow | ███ | █ | ██████████ | |
| 3/13/2015 | D. Bartow | ███ | █ | ██████████ | |
| 3/17/2015 | D. Larson | ███ | █ | ████████████ | |
| 3/18/2015 | D. Larson | ███ | █ | █████████████ | |
| 3/19/2015 | D. Larson | ███ | █ | ██████████████ | |
| 3/19/2015 | D. Bartow | ███ | █ | ███████████ | |
| 3/20/2015 | D. Larson | ███ | █ | █████████████ | |
| 3/22/2015 | D. Larson | ██ | █ | ████████ | |
| 3/26/2015 | D. Bartow | ██ | █ | █████████ | |
| 4/10/2015 | D. Bartow | ██ | █ | ██████████ | |
| 4/15/2015 | D. Bartow | ██ | █ | █████████ | |
| **Total for vague billing entries for** ████ | | | █ | ████ | |

# EXHIBIT 5

# REDACTED
# IN ITS ENTIRETY

# EXHIBIT 6

**Exhibit 6 - Trend's Claimed Fees for Dr. Atul Prakash's Supplemental Expert Report**

| Date | Attorney | Rate/Hour per Trend's Exh. B | Proportional Hours Billed for Task | Proportional Amount for Task | Description |
|------|----------|------------------------------|-----------------------------------|-----------------------------|-------------|
| 2/11/2015 | Y. Chaikovsky | █████ | █ | █████ | ██████████████████████████████ |
| 2/12/2015 | D. Bartow | █████ | █ | █████ | ███████████████████████ |
| 2/24/2015 | B. James | █████ | █ | █████ | █████████████████████████████ |
| 2/26/2015 | D. Bartow | █████ | █ | █████ | ████████████████████████████ |
| 2/27/2015 | D. Larson | █████ | █ | █████ | ██████████████████████████████████ |
| 2/27/2015 | D. Bartow | █████ | █ | █████ | ███████████████████████████████ |
| 2/28/2017 | D. Bartow | █████ | █ | █████ | ████████████████████████████████ |
| 2/28/2017 | D. Larson | █████ | █ | █████ | ████████████████████████████████ |
| 3/1/2015 | D. Bartow | █████ | █ | █████ | ███████████████████████████ |
| 3/9/2015 | B. James | █████ | █ | █████ | ██████████████████████████ |
| 3/23/2015 | D. Bartow | █████ | █ | █████ | ███████████████████████████████████ t" |
| 3/26/2015 | B. James | ███ | █ | ███ | ███████████████████████████████ |
| 4/6/2015 | P. Ou | ███ | █ | ███ | ████████████████████████████████████ |
| 4/7/2015 | P. Ou | ███ | █ | ███ | █████████████████████████████████████ |
| 4/7/2015 | S. Jung | ███ | █ | ███ | ████████████████████████████████████ |
| 4/17/2015 | D. Bartow | ███ | █ | ███ | ████████████████████████████ |
| Total for billing entires specifically for Prakash's Supp. Report | | | ███ | ███ | |
| Total for billing entires specifically for **Prakash's** Supp. Report, plus half of total for jointly preparing ███████████ | | | ███ | ███ | |

# EXHIBIT 7

1

09:39:24 1                        IN THE UNITED STATES DISTRICT COURT

2                        IN AND FOR THE DISTRICT OF DELAWARE

3                                - - -

INTELLECTUAL VENTURES I, LLC,

4                                              :  CIVIL ACTION

                    Plaintiff,        :

5       v                                      :

                                               :

6       SYMANTEC CORPORATION,          :

                                               :  NO. 10-1067-LPS

7                    Defendant.         :

   ---------------------------------------

8       INTELLECTUAL VENTURES I, LLC,   :

                                               :  CIVIL ACTION

9                    Plaintiff,        :

   v                                           :

10                                             :

   TREND MICRO INCORPORATED, and       :

11      TREND MICRO INC. (USA),         :

                                               :  NO. 12-1581-LPS

12                    Defendants.

                                - - -

13

14                        Wilmington, Delaware

                          Friday, April 10, 2015

15                        *Oral Argument Hearing*

                                - - -

16

17      BEFORE:        HONORABLE **LEONARD P. STARK**, Chief Judge

                                - - -

18      APPEARANCES:

19

                    FARNAN, LLP

20                  BY:  BRIAN E. FARNAN, ESQ.

21                       and

22                  SUSMAN GODFREY L.L.P.

                    BY:  BROOKE A.M. TAYLOR, ESQ.

23                       (Seattle, Washington)

24                       and

25                                      Brian P. Gaffigan

                                        Official Court Reporter

**Page 2**

1   APPEARANCES:  (Continued)

2

3        SUSMAN GODFREY L.L.P.
         BY:  JOHN P. LAHAD, ESQ.
4            (Houston, Texas)

5            Counsel for Plaintiff

6        MORRIS NICHOLS ARSHT & TAYLOR, LLP
         BY:  KAREN JACOBS, ESQ.
7
              and
8
         LATHAM & WATKINS, LLP
9        BY:  DOUGLAS E. LUMISH, ESQ.
              (Menlo Park, California)
10
              and
11
         LATHAM & WATKINS, LLP
12       BY:  MICHAEL J. GERARDI, ESQ.
              (Washington, District of Columbia)
13
              Counsel for Symantec Corporation
14

15       MORRIS NICHOLS ARSHT & TAYLOR, LLP
         BY:  KAREN JACOBS, ESQ.
16
              and
17
         PAUL HASTINGS, LLP
18       BY:  YAR R. CHAIKOVSKY, ESQ.,
              D. STUART BARTOW, ESQ., and
19            BRYAN JAMES, ESQ.
              (Palo Alto, California)
20
              and
21
         PAUL HASTINGS, LLP
22       BY:  BLAIR M. JACOBS, ESQ.
              (Washington, District of Columbia)
23
              Counsel for Trend Micro Incorporated
24            and Trend Micro, Inc. (USA)

25

**Page 4**

1   Lumish --

2            MR. LUMISH:  Good morning, Your Honor.

3            MS. JACOBS:  -- Mike Gerardi, and also David

4   Majors from Symantec.

5            THE COURT:  Welcome to all of you.

6            MS. JACOBS:  Thank you.

7            THE COURT:  So we have a pretty big agenda

8   today.  I want to start on the 101 motions.  Have the

9   defendants talked about it?  I assume you both want to be

10  heard, but I'm curious if that is the case and how you

11  want to go ahead with the presentations.

12           MR. CHAIKOVSKY:  Your Honor, we did.  And

13  we're splitting it up in the sense I would cover kind of

14  the introductory legal issues relevant to the issue on the

15  '050 patent, and Mr. Lumish will be covering the '142 and

16  the '610.

17           THE COURT:  Okay.  Is that correct, Mr. Lumish?

18           MR. LUMISH:  The only question I have is how

19  much guidance on how much time so I will know when to use

20  the hook, if I have to, with Yar Chaikovsky.

21           THE COURT:  Let me come back to that in just a

22  moment.  Is there an objection from IV to hearing those two

23  presentations first and then hearing once from IV?

24           MS. TAYLOR:  No, Your Honor.

25           THE COURT:  Give me a sense as to how much time

**Page 3**

1            - oOo -

2        P R O C E E D I N G S

3        (REPORTER'S NOTE:  The following oral argument

4   hearing were held in open court, beginning at 10:02 a.m.)

5            THE COURT:  Good morning, everyone.

6            (The attorneys respond, "Good morning, Your

7   Honor.")

8            THE COURT:  I'll have you put your appearances

9   on the record for us, please.

10           MR. FARNAN:  Good morning, Your Honor.

11           THE COURT:  Good morning.

12           MR. FARNAN:  Brian Farnan on behalf of the

13  plaintiff.  With me today is Brooke Taylor.

14           MS. TAYLOR:  Good morning, Your Honor.

15           MR. FARNAN:  And John Lahad from Sussman Godfrey.

16           MR. LAHAD:  Good morning, Your Honor.

17           THE COURT:  Welcome back to all of you.

18           MS. JACOBS:  Good morning, Your Honor.

19           THE COURT:  Good morning.

20           MS. JACOBS:  Karen Jacobs from Morris Nichols.

21  For Trend Micro, we have here with us, Yar Chaikovsky, Blair

22  Jacobs, and Stuart Bartow from Paul Hastings.

23           (Counsel nod greetings.)

24           THE COURT:  Good morning.

25           MS. JACOBS:  And for Symantec, we have Doug

**Page 5**

1   you think you might need.

2            MR. CHAIKOVSKY:  If given the time, we would use

3   closer to 90 minutes, Your Honor.

4            THE COURT:  Ninety minutes altogether on your side?

5            MR. CHAIKOVSKY:  Yes.

6            THE COURT:  What does IV think?

7            MR. LAHAD:  I need about half that time.

8            THE COURT:  About half that.  Is that just you

9   speaking on the 101 issues?

10           MR. LAHAD:  Yes, Your Honor.

11           THE COURT:  Let's aim for about an hour per

12  side, so Mr. Chaikovsky will have to factor that in as he

13  begins.  I won't make it a hard cut off of 60 minutes but

14  I would like to keep it, and I think it can be adequately

15  covered in more like that than in an hour and-a-half.

16           Regardless, I do know with have several other

17  issues related to the upcoming trial.  We will get to those

18  today as well, but precisely when we get to them will depend

19  on how much time we give to the 101 issues.  So let's start

20  on 101.

21           MR. CHAIKOVSKY:  Thank you, Your Honor.

22           So as we know, we're going to start here and

23  we're going to start with the 101 with respect to the three

24  patents-in-suit.  We start with the test of *Alice*.  The

25  two steps are put forward as whether we have an ineligible

170

1 the case ever provided any information, testimony or written
2 evidence, that bulk e-mail should be excluded from claim 9
3 until trial, until that surprise was sprung.
4 We, on the other hand, have put forward -- and
5 this is just some. The record is replete with examples of
6 situations where all three of the claims, according to their
7 expert, included bulk e-mail as a characteristic.
8 So, Your Honor, if it's easier to come at this
9 from a Rule 26/Rule 37 question, that's fine. I did note
10 that counsel did say undisclosed opinions are not a reason
11 to change claim construction.
12 Well, undisclosed opinions are absolutely a
13 reason to have testimony precluded and to consider
14 additional sanctions related with that. So if the Court
15 would prefer to take this up as part of the pretrial
16 process, we have some time to get some briefing in. We're
17 happy to do that. I think the record speaks for itself.
18 It's expeditious given that the motion to clarify is in
19 front of the Court right now.
20 There is absolutely no harm that has been
21 demonstrated if what we do is clarify the Court's claim
22 construction so that bulk e-mail is contemplated as being
23 a characteristic of each one of the three claims.
24 She said it would wreak havoc. But, Your
25 Honor, there are often ITC cases that have different claim

171

1 constructions than District Court cases. It is persuasive
2 but it's not binding.
3 The Federal Circuit is more than capable of
4 understanding very minor changes in claim construction. And
5 the reason that it would be done here would be to avoid
6 surprise and unfair testimony.
7 And as a matter of fact, it was never an issue
8 during claim construction because it was always understood at
9 least by the defendants that bulk e-mail was a characteristic
10 of all three of the claims.
11 THE COURT: Now, we have mostly talked about
12 bulk e-mail, and bulk e-mail was in the parenthetical for
13 claim 22, but you are asking me now to expressly write in
14 "frequency" into all three.
15 MR. JACOBS: Right.
16 THE COURT: I understand you are going to tell
17 me that is what you see in the patent, but do you have any
18 flip-flop type of argument supporting that one as well?
19 MR. JACOBS: "Frequency" again has always been
20 described as being a characteristic in that the frequency
21 is what is used to determine the existence of spam, bulk
22 e-mail, and any of the information that is described in the
23 patent. So to answer your question directly, there is no
24 indication of flip-flopping regarding "frequency" in the
25 record. It is the "bulk e-mail" issue.

172

1 If we're going to clarify, we might as well
2 clarify it was originally in claims 1 and 4 that were
3 originally filed. It was claimed, "frequency" was claimed as
4 being a characteristic. It is described in the specification
5 as being a characteristic. And it is very, very clear that if
6 we're going to give "e.g.," if we're going to give examples,
7 we might as well, at this point in time, to avoid future new
8 testimony and surprise, make sure we're as comprehensive as
9 possible.
10 So let me just finish up by touching upon
11 "descriptor" because they're trying to use "descriptor" in
12 a very, very limited way, Your Honor. Where we see this
13 "descriptor" part of your claim construction is going is
14 where we really, really start to see what is happening here.
15 They're trying to say that "descriptor" means
16 there needs to be some type of measuring of internal content
17 whereas look at the importance of "frequency" throughout
18 the entire patent. Frequency is external. Frequency is a
19 number.
20 A descriptor is a descriptor. They're trying
21 to limit it in a way that a descriptor is something that is
22 looking at internal content only. That is what they're
23 trying to do there. That is wholly improper. So they're
24 taking your claim construction and they're importing
25 limitations into your claim construction to try to avoid

173

1 prior art. That is certainly something that finds no
2 support in the law.
3 "Frequency" should be added, Your Honor. Again,
4 we're talking about as an example, they're e.g. That is an
5 example because it is a characteristic. There is no dispute
6 that it's a characteristic. And we ought to be ahead and
7 make sure that we're being as complete as possible.
8 Last point. As you pointed out, I think that
9 you hit the nail on the head, Judge Stark, there is a
10 dispute. We can handle the dispute in one of a couple of
11 different ways. There is no doubt we're happy to handle
12 the dispute under Rule 26 and Rule 37. But we're standing
13 here saying that there is no doubt in our mind the patent
14 supports the position, their own expert, all the way through
15 fact discovery, supported the position that claim 9 includes
16 bulk e-mail as a characteristic.
17 Now frequency has become part of the issue
18 because we want to clarify, we want to make sure that we
19 have comprehensive claim construction.
20 They're saying no. They're saying no both with
21 regard to frequency and bulk e-mail.
22 That strikes me as a traditional $O_2Micro$
23 situation. That is why we framed this initially and as
24 quickly as we could as a motion to clarify. But all along
25 we contemplated that if it was a more expeditious form of

194

1 round of discovery.  With trial in a month, it's just
2 impractical.
3        THE COURT:  All right.  Thank you.  We're going
4 to take a recess, and I will come back and tell you some
5 things about how we're going to proceed.
6        (Brief recess taken.)
7        *    *    *
8        (Proceedings reconvened after recess.)
9        THE COURT:  Have a seat.
10        I have time to give you some decisions, and I am
11 going to give you decisions basically on the issues that
12 were argued this afternoon.
13        Now, with respect to 101, I don't want anyone
14 to draw any conclusions from the fact that I am giving you
15 decisions on the issues that were argued this afternoon.  In
16 my mind, this is analogous to giving damages instructions to
17 a jury:  "If you reach the damages issues, here is how you
18 would do it" doesn't mean you have found infringement or
19 validity.
20        Just because I'm giving you decisions that only
21 relate to the trial next month doesn't mean that I have
22 already decided there will or will not be a trial next
23 month.  But you are here, you have argued it.  The issues
24 are ripe and we are getting close to trial so I'm going to
25 rule on them.

195

1        So with that preface, we first have Trend's
2 motion for clarification of the claim construction.
3        This motion is granted in large part.  And my
4 thoughts are a little bit disjointed but I'm going to try to
5 explain to you what I am ruling and why.
6        The relief I am granting is that we will clarify
7 our construction to include bulk e-mail on all three of the
8 terms that were in dispute.  But I have not yet decided
9 whether also to add "frequency."  And I will want and I
10 guess hereby Order that the parties meet and confer and
11 come up with a schedule to get me very short and focused
12 briefing just on the question of whether I should further
13 clarify my construction to add "frequency" in light of what
14 I am ruling today and in light of the fact that trial is
15 fast approaching.
16        How did reach this decision?  First off, I
17 don't think this motion is untimely.  I think the law makes
18 clear that claim construction can be done at any time.
19 Claim construction is a matter of law that the Court needs
20 to decide and not leave to the jury.
21        I don't really view what is in front of me
22 today as a motion for reconsideration, but even if I did, it
23 would still be proper and, in my view, timely under the
24 circumstances given that it is based on events that occurred
25 at the Symantec trial and the motion came in relatively

196

1 expeditiously, within a month of the events at the Symantec
2 trial.
3        What events happened at the Symantec trial?  Well,
4 in my view, Dr. McDaniel testified credibly that he changed
5 his opinion.  That is, plaintiff's expert Dr. McDaniel opined
6 at trial that bulk e-mail is not a characteristic according to
7 the Court's construction of "indication of a characteristic"
8 under claim 9 and admitted that he had changed his opinion
9 regarding the scope of claim 9 after the deposition during
10 trial preparation with IV's attorneys.
11        Notwithstanding IV's position that it never
12 believed Dr. McDaniel changed his opinion, I find again that
13 he testified credibly at trial that he did in fact change
14 his position and under those changed circumstances, which,
15 of course, could not have been known to Trend Micro previously,
16 this is a proper basis for seeking relief and the timing
17 again of the motion was acceptable under the circumstances.
18        It's appropriate to address this motion and to
19 grant this relief now.  If I don't, as I have already
20 suggested, the parties will put in front of the jury what
21 is in reality a claim construction dispute.
22        There is a dispute as to whether bulk e-mail is
23 within the scope of claim 9, and that is not a dispute that
24 under the circumstances I should allow to be played out in
25 front of the jury.

197

1        Also, it would be just simply unhelpful to the
2 jury to give this jury these constructions as they, prior to
3 today, exist which have different parentheticals for similar
4 terms.
5        I recognize I denied similar or arguably even
6 identical relief in the context of the Symantec trial.  I
7 don't view that as precluding me from granting the relief to
8 Trend that I'm granting today.
9        In any case, the situations are very distinct.
10 Symantec raised the issue during trial after there had been
11 openings and there had been some testimony whereas here
12 we're before trial, no jury has been selected or heard any
13 evidence under the unclarified construction.
14        Given the timing in Symantec, the arguments and
15 records provided by Symantec were nothing like the record
16 provided by Trend.  Given how it came up, I didn't have
17 the time that I have since had to go back and refresh my
18 recollection on the claim construction and other events in
19 the case whereas here I have had time to read the briefs,
20 review the record, and nobody has been locked into a trial
21 position yet in front of the jury.  So it's a different
22 procedural circumstance.
23        There was some back and forth during the
24 argument about, well, maybe at this deposition question, it
25 wasn't asked clearly enough for Dr. McDaniel to understand

1    that I need to resolve it today.

2            If you can't work it out, in light of everything

3    that I have ruled as to whether or not those two witnesses

4    should be permitted to come to trial, then put that in the

5    proposed Pretrial Order and I'll deal with that dispute in

6    connection with everything else at the pretrial conference.

7            I think that covers everything that was argued

8    that I intended to rule on today.

9            Is there any questions about any of that,

10   Ms. Taylor, or anyone on the plaintiff's side?

11           MS. TAYLOR:  No, Your Honor.

12           THE COURT:  And on the defense side?

13           MR. CHAIKOVSKY:  No, Your Honor.

14           THE COURT:  Okay.  In your submission on Monday,

15   I would ask if you provide me a proposed Form of Order on

16   the motion for clarification that I can sign just to clean

17   that up on the record.

18           We'll be in recess.  Have a nice weekend.  Thank

19   you.

20           (Hearing ends at 3:23 p.m.)

21

22       I hereby certify the foregoing is a true and accurate

     transcript from my stenographic notes in the proceeding.

23

24               /s/ Brian P. Gaffigan
                 Official Court Reporter

25               U.S. District Court

# EXHIBIT 8

Exhibit 8: Summary of Time Entries Related to Claim Construction

**Table 1: McDermott Will & Emery Fees ("bulk" and "frequency")**

| Date | Timekeeper | Gross Amount Billed |
|------|------------|---------------------|
| 01/30/15 | C. Bright | |
| 01/30/15 | G. Yoder | |
| 01/30/15 | Y. Chaikovsky | |
| 01/31/15 | D. Bartow | |
| 01/31/15 | C. Bright | |
| 02/02/15 | D. Bartow | |
| 02/03/15 | Y. Chaikovsky | |
| 02/05/15 | D. Bartow | |
| 02/06/15 | B. James | |
| 02/06/15 | Y. Chaikovsky | |
| 02/07/15 | D. Bartow | |
| 02/08/15 | D. Bartow | |
| 02/09/15 | C. Bright | |
| 02/11/15 | D. Bartow | |
| 02/12/15 | H. Rawson | |
| 02/12/15 | D. Bartow | |
| 02/17/15 | C. Trevino | |
| 02/23/15 | D. Bartow | |
| 02/26/15 | D. Bartow | |
| 02/27/15 | Y. Chaikovsky | |
| 02/28/15 | D. Bartow | |
| 03/01/15 | D. Bartow | |
| 03/02/15 | H. Rawson | |
| 03/02/15 | D. Bartow | |
| 03/03/15 | H. Rawson | |
| 03/11/15 | C. Trevino | |
| 03/20/15 | B. James | |
| 03/20/15 | Y. Chaikovsky | |
| 03/20/15 | D. Bartow | |
| 03/21/15 | C. Bright | |
| 03/22/15 | B. James | |
| 03/24/15 | B. James | |
| 03/25/15 | B. James | |
| 03/30/15 | C. Bright | |
| 03/30/15 | H. Rawson | |
| 04/06/15 | H. Rawson | |
| | **Sub-Total** | |
| | **Less 20% Discount** | |

Exhibit 8: Summary of Time Entries Related to Claim Construction

**Table 2: Paul Hastings Fees ("bulk" and "frequency")**

| Date | Timekeeper | Gross Amount Billed |
|------|------------|---------------------|
| 03/30/15 | Y. Chaikovsky | ███ |
| 03/31/15 | D. Bartow | ███ |
| 03/31/15 | Y. Chaikovsky | ███ |
| 04/01/15 | D. Bartow | ███ |
| 04/01/15 | Y. Chaikovsky | ███ |
| 04/02/15 | D. Bartow | ███ |
| 04/03/15 | D. Bartow | ███ |
| 04/04/15 | D. Bartow | ███ |
| 04/05/15 | D. Bartow | ███ |
| 04/06/15 | Y. Chaikovsky | ███ |
| 04/07/15 | D. Bartow | ███ |
| 04/07/15 | B. James | ███ |
| 04/07/15 | Y. Chaikovsky | ███ |
| 04/08/15 | C. Trevino | ███ |
| 04/08/15 | D. Bartow | ███ |
| 04/08/15 | Y. Chaikovsky | ███ |
| 04/09/15 | Y. Chaikovsky | ███ |
| 04/10/15 | B. Jacobs | ███ |
| 04/10/15 | D. Bartow | ███ |
| 04/10/15 | B. James | ███ |
| 04/10/15 | Y. Chaikovsky | ███ |
|  | **Sub-Total** | ███ |
|  | **Less 20% Discount** | ███ |

Exhibit 8: Summary of Time Entries Related to Claim Construction

**Table 3: Paul Hastings Fees ("frequency" only)**

| Date | Timekeeper | Gross Amount Billed |
|------|------------|---------------------|
| 04/11/15 | B. James | |
| 04/12/15 | D. Bartow | |
| 04/12/15 | B. James | |
| 04/13/15 | Y. Chaikovsky | |
| 04/14/15 | D. Bartow | |
| 04/14/15 | B. James | |
| 04/15/15 | B. Yen | |
| 04/15/15 | D. Bartow | |
| 04/15/15 | B. James | |
| 04/15/15 | S. Sung | |
| 04/15/15 | S. Jung | |
| 04/15/15 | Y. Chaikovsky | |
| 04/15/15 | D. Bartow | |
| 04/16/15 | B. James | |
| 04/16/15 | S. Sung | |
| 04/16/15 | S. Jung | |
| 04/16/15 | Y. Chaikovsky | |
| 04/17/15 | D. Bartow | |
| 04/17/15 | B. James | |
| 04/17/15 | S. Sung | |
| 04/17/15 | Y. Chaikovsky | |
| | **Sub-Total** | |
| | **Less 20% Discount** | |

Exhibit 8: Summary of Time Entries Related to Claim Construction

**Table 4: Morris, Nichols, Arsht & Tunnel ("bulk" and "frequency")**

| Date | Timekeeper | Gross Amount Billed |
|------|-----------|---------------------|
| 03/01/15 | K. Jacobs | |
| 03/02/15 | K. Jacobs | |
| 03/02/15 | M. Flynn | |
| 03/03/15 | K. Jacobs | |
| 03/13/15 | M. Flynn | |
| 03/30/15 | K. Jacobs | |
| 04/01/15 | R. Sinclair | |
| 04/02/15 | R. Sinclair | |
| 04/06/15 | R. Sinclair | |
| 04/08/15 | R. Sinclair | |
| 04/09/15 | K. Jacobs | |
| 04/09/15 | R. Sinclair | |
| 04/10/15 | K. Jacobs | |
| 04/10/15 | R. Sinclair | |
| | **Total** | |

# EXHIBIT 9

**Exhibit 9 - Fee Chart for Internal Communications**

| Date | Attorney | Proportional Hours Billed for Task | Proportional Amount for Task | Description of portion of entry for which discount was applied |
|------|----------|-----------------------------------|------------------------------|--------------------------------------------------------------|
| 1/30/2015 | C. Bright | | | |
| 1/31/2015 | C. Bright | | | |
| 2/3/2015 | Y. Chaikovsky | | | |
| 2/6/2015 | B. James | | | |
| 2/6/2015 | Y. Chaikovsky | | | |
| 2/9/2015 | C. Bright | | | |
| 2/27/2015 | Y. Chaikovsky | | | |
| 3/9/2015 | C. Bright | | | |
| 3/10/2015 | C. Bright | | | |
| 3/30/2015 | C. Bright | | | |
| 3/30/2015 | Y. Chaikovsky | | | |
| 3/31/2015 | Y. Chaikovsky | | | |
| 4/1/2015 | Y. Chaikovsky | | | |
| 4/7/2015 | B. James | | | |
| 4/7/2015 | Y. Chaikovsky | | | |
| 4/8/2015 | Y. Chaikovsky | | | |
| 4/10/2015 | B. James | | | |
| 4/11/2015 | S. Bartow | | | |
| 4/11/2015 | B. James | | | |

**Exhibit 9 - Fee Chart for Internal Communications**

| Date | Attorney | Proportional Hours Billed for Task | Proportional Amount for Task | Description of portion of entry for which discount was applied |
|---|---|---|---|---|
| 4/12/2015 | B. James | | | |
| 4/23/2015 | B. James | | | |
| 4/27/2015 | B. Yen | | | |
| 5/1/2015 | B. Yen | | | |
| 5/1/2015 | B. James | | | |
| 5/1/2015 | S. Sung | | | |
| 5/1/2015 | Y. Chaikovsky | | | |
| 5/5/2015 | B. Yen | | | |
| 5/5/2015 | B. James | | | |
| 5/5/2015 | S. Sung | | | |
| 5/5/2015 | Y. Chaikovsky | | | |
| 5/6/2015 | D. Bartow | | | |
| 5/7/2015 | B. Yen | | | |
| 2/2/2017 | D. Bartow | | | |
| 3/13/2017 | D. Bartow | | | |
| 3/14/2017 | D. Bartow | | | |
| 6/6/2017 | Y. Chaikovsky | | | |
| 8/30/2017 | P. Ou | | | |
| 8/31/2017 | Y. Chaikovsky | | | |
| **Total Amount** | | | | |

EXHIBIT 10

**Exhibit 10**

| AIPLA SURVEY MEAN (AVERAGE) RATES FOR LARGE LAW FIRMS >150 LAWYERS | | |
|---|---|---|
| **Year** | **Billing Rates (Associates)** *Mean* | **Billing Rates (Partners)** *Mean* |
| 2014 | $466 | $733 |
| 2016 | $544 | $837 |

| AIPLA SURVEY MEAN (AVERAGE) RATES FOR PHILADELPHIA CMSA | | |
|---|---|---|
| **Year** | **Billing Rates (Associates)** *Mean* | **Billing Rates (Partners)** *Mean* |
| 2014 | $326 | $510 |
| 2016 | $338 | $578 |