IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 12-1581 (LPS) |
| ) | |
| v. ) | |
| ) | |
| TREND MICRO INCORPORATED and ) | **PUBLIC VERSION** |
| TREND MICRO, INC. (USA), ) | |
| ) | |
| Defendants. ) | |

**TREND MICRO'S REPLY BRIEF IN SUPPORT OF
<u>ITS ACCOUNTING OF ATTORNEYS FEES</u>**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | Karen Jacobs (#2881) |
|  | Michael J. Flynn (#5333) |
|  | 1201 North Market Street |
|  | Wilmington, DE 19899-1347 |
|  | (302) 658-9200 |
| OF COUNSEL: | kjacobs@mnat.com |
| Yar R. Chaikovsky | mflynn@mnat.com |
| Philip Ou | *Attorneys for Trend Micro Incorporated* |
| PAUL HASTINGS LLP | *and Trend Micro, Inc. (USA)* |
| 1117 S. California Avenue |  |
| Palo Alto, CA 94304 |  |
| (650) 320-1800 |  |

Originally Filed:  November 13, 2017
Redacted Version Filed:  November 20, 2017

# TABLE OF CONTENTS

I.   IV's Specific Objections Re-Hash Arguments Already Considered And Rejected By The Court and Improperly Seek To Narrow The Court's Order ............................................... 2

    A.   Activities relating to adding "frequency" to the claim construction of "characteristic" are recoverable ................................................................................... 2

    B.   Activities relating to technical expert reports responding to Dr. McDaniel's changed testimony are recoverable ................................................................... 3

        1.   Dr. Rubin's invalidity analysis ................................................................. 3

        2.   Dr. Prakash's non-infringement analysis ................................................. 4

        3.   "█████████████████████" relating to Dr. McDaniel's changed testimony has already been reasonably apportioned ............................... 5

II.  IV's General Objections Are Flawed, Unreasonable, And Should Be Rejected .................... 6

    A.   IV's request to exclude all apportioned block-billed time is unreasonable ........... 6

    B.   IV's 50% reduction of all time entries that include a "communication" is unsupported and unreasonable ................................................................................ 7

    C.   Trend's staffing was appropriate given the magnitude of the case and did not result in duplicative or repetitive work ................................................................... 8

    D.   The billing rates of Trend's attorneys are not excessive ........................................ 9

III. Conclusion ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Glass Co., Ltd. v. Guardian Industries Corp.*,
 2013 WL 936451 (D. Del. March 11, 2013) .............................................................................7

*Estate of Schultz v. Potter*,
 2010 WL 883710 (W.D. Pa. Mar. 5, 2010) ..............................................................................7

**Statutes**

35 U.S.C. § 285 ..............................................................................................................................3

Having forced Trend to incur significant fees in responding to IV's conduct that the Court has found to be sanctionable, IV now launches into a full frontal attack on Trend's accounting of those fees – raising every possible objection in an effort to slice the fees that Trend actually incurred as a result of IV's conduct by more than half.  IV further demands scientific exactitude and contends that Trend should not be permitted to recover its fees where any estimation or apportionment is required.  The cumulative effect is a proposed reduction of Trend's requested ▬▬▬▬ by ▬▬▬▬▬▬ leaving Trend's recovery to ▬▬▬▬  This position, however, eviscerates the very basis on which the Court granted sanctions in the first place and cannot be the proper result.

Trend's accounting of fees is well-supported, reasonable, and within the scope of the relief sought in its Sanctions Motion (D.I. 244) and granted by the Court.  After updating with the three invoices attached at Ou Decl., Ex. F and Jacobs Decl., Ex. 3 (not yet available at the time of the opening brief), the total amount sought is ▬▬▬▬  This amount can be broken down further accordingly:

|  | Fees for work in response to changed testimony (incurred Jan. 2015 – May 2015) | "Fees for fees" (primarily incurred Jan. 2017 – present)[1] | TOTAL |
|---|---|---|---|
| **Lead Counsel Fees (Paul Hastings and McDermott)** | ▬▬ | ▬▬ | ▬▬ |
| **Delaware Counsel Fees (MNAT)** | ▬▬ | ▬▬ | ▬▬ |
| **TOTAL** | ▬▬ | ▬▬ | ▬▬ |

As the table shows, the amount of fees sought for *all work* in responding to Dr. McDaniel's change in testimony (setting aside "fees for fees"), which includes—(1) preparing

---

[1] These fees include all accounted fees from 2017 and applicable fees from April and May 2015.

the motion for clarification; (2) analyzing IV's opposition thereto; (3) preparing the reply; (4) preparing for the April 10, 2015 hearing; (5) oral argument at the hearing; (6) analyzing the Court's directive and preparing the Order following the hearing; (7) preparing the supplemental letter briefing requested by the Court; and (8) working with Dr. Rubin and Dr. Prakash on analyzing Dr. McDaniel's changed testimony, how it impacted their opinions, and preparing supplemental reports to address Dr. McDaniel's testimony—is ▇▇▇▇▇▇▇▇.

Despite the Court *granting* Trend's Sanctions Motion and permitting Trend to also recoup its fees in connection with seeking and recovering its fees, IV's proposal would ultimately leave Trend with zero compensation and over ▇▇▇▇ worse off compared to if it had not brought its Sanctions Motion in the first instance.[2]  IV's proposal should be rejected.

### I. IV's Specific Objections Re-Hash Arguments Already Considered and Rejected By the Court and Improperly Seek To Narrow The Court's Order

Trend's Sanctions Motion set forth the limited categories for which it sought fees, which the Court ultimately accepted in granting Trend's motion. *Id.* at 1, *citing* D.I. 246, Bartow Decl. at ¶ 3. Nevertheless, IV seeks to re-hash the same arguments, now as objections, that IV already made in opposing Trend's motion. IV's "second-bite" objections should be rejected.

#### A. Activities relating to adding "frequency" to the claim construction of "characteristic" are recoverable

Trend sought fees for activities relating to the potential inclusion of "frequency" in the claim constructions. D.I. 245 at 17; D.I. 246, Bartow Decl. at ¶ 3. IV opposed (D.I. 254) and Trend responded (D.I. 258 at 4-5). The Court granted the Sanctions Motion in full with no

---

[2] This delta of over ▇▇▇▇ does not account for the three invoices included with the reply. Prior to including those invoices (which total ▇▇▇▇▇▇), the amount of "fees for fees" incurred by Trend totaled ▇▇▇▇▇▇, which exceeds the amount IV contends Trend should be entitled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. If the Court were to limit Trend's recovery to the ▇▇▇▇▇▇ proposed by IV (and not include the three invoices attached hereto), Trend's recovery would be close to ▇▇▇▇▇▇ worse off compared to if it had not brought its Sanctions Motion.

2

exclusions. (D.I. 263) ("IT IS HEREBY ORDERED that Defendants' motion to declare this case exceptional and award fees under 35 U.S.C. § 285 (D.I. 244) is GRANTED").

To be sure, the detailed record set forth in Trend's motion demonstrates that the fees Trend incurred were a direct result of Dr. McDaniel's change in testimony during the Symantec trial. As explained therein, Trend filed a Motion for Clarification (D.I. 168) to request that the Court (1) "clarify that bulk email is a 'characteristic' within the scope of claim 9 of the '050 patent" "and/or alternatively" (2) include frequency in the exemplary parentheticals for the constructions of the "characteristic" terms. *Id.* at 2; *see also* 18-20. Trend's subsequent request to include frequency in the construction was a direct result of Dr. McDaniel's changed opinion that bulk e-mail was not a characteristic (D.I. 269, slide 32 *citing* Symantec Tr. 675:9-24; 2081:12-2083:1), and would not have been sought but for Dr. McDaniel's newly disclosed opinion and attempt to distinguish Townshend based on this new opinion.

### B. Activities relating to technical expert reports responding to Dr. McDaniel's changed testimony are recoverable

#### 1. Dr. Rubin's invalidity analysis

Like the "frequency" term, activities responding to IV's change of opinion, including Trend's work with experts, was within the scope of relief sought by Trend and granted by the Court. This included work with both Trend's invalidity expert (Dr. Rubin) and non-infringement expert (Dr. Prakash) for the '050 patent, in addressing Dr. McDaniel's changed opinion.

IV concedes that at least a portion of Dr. Rubin's supplemental invalidity report (*i.e.,* the section discussing Dr. McDaniel's changed testimony) should fall within the scope of recoverable work. IV, however, contends that the "second part of Dr. Rubin's report" (the Chen '170 patent) "has nothing to do with bulk email" and thus, work related to it is not recoverable. IV's overly-narrow view of its exceptional conduct and what resulted from it, however, is

3

incorrect. Trend does not dispute that the Chen '170 patent "never mentions bulk email"—but that is precisely why Dr. McDaniel's new testimony that "bulk" is not a characteristic for claim 9 made the Chen '170 patent much more relevant.

As the Court knows, the Townshend prior art reference was a centerpiece to the invalidity of the '050 patent and was the sole anticipatory reference on which Symantec relied during its trial. Symantec and Trend had invested substantial time, effort, and resources developing its invalidity case based on Townshend, the Court's claim constructions and Dr. McDaniel's disclosed opinions. Understandably, when Dr. McDaniel changed his opinions in an attempt to argue around Townshend, this new opinion introduced immediate chaos into Trend's invalidity trial preparation and necessarily caused Trend to focus on alternative invalidity theories that Dr. McDaniel's new, and improper, opinion did not impact (*i.e.,* here, a virus patent because virus unquestionably was a characteristic). IV's arguments that the '170 Patent does not discuss "bulk e-mail" is misguided and actually explains why Trend needed to, and should have been allowed to, supplement its invalidity case in response to Dr. McDaniel's changed testimony. All of the work related to Dr. Rubin's supplemental report was warranted and should be recoverable.

2. Dr. Prakash's non-infringement analysis

IV's attempt to block Trend from recovering any fees regarding work with Dr. Prakash should be rejected. First, in focusing on Trend's Motion for Leave to supplement Dr. Prakash's opinions – which was filed *after* the Court granted Trend's motion for clarification, IV ignores the work Dr. Prakash did *before* to address Dr. McDaniel's new opinion. Trend has not sought to recover any fees relating to Dr. Prakash after the April 10 hearing. Further, although some of the work with Dr. Prakash was to address IV's statements in the reexam, that work necessarily included analyzing those statements in the context of Dr. McDaniel's newly disclosed opinions

4

and their impact on Dr. Prakash's opinions. As a result, IV's reliance on Trend's Motion for Leave to exclude any and all work done with Dr. Prakash in addressing Dr. McDaniel's changed opinion is misguided and inaccurate.

Second, Trend already accounted for the fact that some work with Dr. Prakash, prior to the April 10 hearing, was not directly related to Dr. McDaniel's new opinion, and apportioned certain time entries to account for this. For example, the time entry on February 27, 2015 from Yar Chaikovsky included two items: (1) "███████████████████████████████████████ ███████████████████" and (2) ███████████████████████████████████████ ███████████████████████████████████". Ex. A, Invoice No. 2748556 at 31. The second item clearly falls within the scope of relief and Trend reasonably believed that a portion of the first item did (accounting for work with Dr. Prakash unrelated to Dr. McDaniel's change in testimony). Accordingly, Trend apportioned this entry to include 75%.[3]

### 3. "Preparing Supplemental Expert Reports" relating to Dr. McDaniel's changed testimony has already been reasonably apportioned

Next, IV seeks to reduce Trend's award of fees "where its attorneys worked on 'supplemental expert reports' without identifying the specific expert or subject matter of work." D.I. 282 at 7. What IV fails to account for again is that Trend already apportioned for such work. Trend has represented previously, and states again, that it does not seek any fees relating

---

[3] A similar apportionment can be seen on the time entry for Stuart Bartow for the same day, where work involved Dr. Rubin's supplemental report, Dr. Prakash's supplemental report, trial preparation with Dr. Prakash, and one unrelated item (preparing the exhibit list). Instead of apportioning 67% or 75% of this time to the accounting of fees, because Trend recognized that some work with Dr. Prakash was not directly related, Trend only apportioned 50% of this time in its accounting of fees. *Id.* Other examples of such apportionment can be found at, *e.g.*, March 2, 2015 (S. Bartow), March 6, 2015 (S. Bartow), March 23 (S. Bartow).

5

to Dr. Leonard's supplemental damages report.[4] Moreover, Trend reasonably apportioned time entries that do not specify work with a particular expert to exclude work with Dr. Leonard. As discussed above, Trend believes that work with Dr. Rubin falls within the scope of relief and a portion of the work with Dr. Prakash falls within the scope of relief (for which Trend had already reasonably apportioned in its accounting of fees, as explained above).

Separately, IV's proposed reductions should be rejected because they include reductions that are inaccurate and improper (even accepting IV's basis for them). For example, IV's Ex. 4 proposes a ▇▇▇ reduction for a March 20, 2015 entry from David Larson. But as the invoice shows, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. A, Invoice No. 275592 at 25. As another example, IV's Ex. 4 proposes a reduction of ▇▇▇ for an April 15, 2015 time entry from Stuart Bartow that included ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ with several other tasks. As Trend explained above, Trend did not include any expert report related work after the April 10 hearing. The time from this entry included in the accounting of fees was to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. A, Invoice No. 2050455 at 20.

## II. IV's General Objections Are Flawed, Unreasonable, And Should Be Rejected

### A. IV's request to exclude all apportioned block-billed time is unreasonable

First, the Court should reject the most extreme relief IV requests—that any instance where Trend used its best judgment to apportion how much time from a block-billed entry should be attributable to the tasks that fell within the scope of the relief sought and granted, should be excluded in its entirety. IV argues that, *e.g.,* "[b]ut Ou is not Bartow, and therefore

---

[4] At the Court's request, Trend will submit unredacted versions of its invoices showing entries for work unrelated to Dr. McDaniel's changed testimony. This will include a significant number of entries and billed time relating to Dr. Leonard's supplemental damages report.

6

cannot provide any real information regarding how much time Bartow actually spent on each disparate task in Bartow's billing entry." D.I. 282 at 13. In this way, IV tries to avoid Trend being compensated for any time for which it cannot provide a first-hand, exact account. That is not what the "lodestar approach" requires, and IV fails to cite any authority that the time reasonably expended in the lodestar calculation cannot include reasonable approximations or apportionments where appropriate. *Asahi Glass Co., Ltd. v. Guardian Industries Corp.*, 2013 WL 936451 at *1 (D. Del. March 11, 2013).

IV's reliance on a footnote in *Estate of Schultz v. Potter*, 2010 WL 883710 at *5 (W.D. Pa. Mar. 5, 2010) to support its extreme position is misplaced. D.I. 282 at 14. In *Schultz*, the court determined that travel time should be excluded from the fee award, and Plaintiff's accounting included "38.9 hours for travel time." The court recognized that some of that "travel time" "includes time for matters that are non-travel" (*i.e.,* reimbursable), but Plaintiff failed to segregate it. Unlike in *Schultz*, Trend has segregated what it believes to be compensable time.

As noted above, *supra* at 1-2, accepting IV's position would result in Trend being worse off financially than had it foregone seeking fees for the exceptional conduct by which it was prejudiced. For at least equitable reasons, that should not occur.

    B.    IV's 50% reduction of all time entries that include a "communication" is unsupported and unreasonable

IV asks the Court to reduce Trend's award by ▬▬▬▬ based on purportedly unrecoverable communications. IV does not fully explain its methodology, but by comparing the entries in Ex. 9 to Trend's invoices, it appears that IV (1) identified any time entry including a "communication" as **part** of the description and reduced each by 50% and (2) excluded **entirely** any time entry billed for a communication.

7

First, none of the cases cited by IV stands for the proposition that communications, whether within a law firm, between co-counsel (Paul Hastings and MNAT), or even with a client (which IV apparently also believes should not count) are *per se* not recoverable. Courts, in some instances at their discretion, have reduced accounting of fees for *e.g.,* excessive internal communications, but there is no evidence of that here. As IV admits, the majority of the time entries identified in IV's Ex. 9 include a "conference" as **part of** the description of the work performed. IV has twisted the case law to contend that such an inclusion taints the entire time entry into requiring a 50% reduction. That is not the law, nor is it reasonable.

As an example, Stuart Bartow's March 14, 2015 time entry for ▇▇▇▇ states "▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. IV seeks to reduce this entry by 50%, simply because Mr. Bartow had a telephone conference with Ms. Jacobs from MNAT, Trend's Delaware counsel. In reviewing MNAT's invoice, Ms. Jacobs did not even bill Trend for this teleconference, which strongly suggests that the conference was a brief one (as opposed to the ▇▇▇▇ one for which IV assumes and contends is *per se* unrecoverable).

C.     <u>Trend's staffing was appropriate given the magnitude of the case and did not result in duplicative or repetitive work</u>

IV requests a 10% reduction based on the number of time keepers "for tasks pertaining to only a *very narrow portion of this litigation*." D.I. 282 at 16 (emphasis in original). IV's argument is disconnected from the facts. Although the Court found exceptionality for a discrete portion of the case, Dr. McDaniel's new opinions had a significant impact on a case was rapidly headed for trial and directly resulted in a significant amount of work relating to*, e.g.,* all eight items described *supra* at 1, in addition to the Sanctions motion. Though the amount of fees incurred (and now sought) may be insignificant compared to typical fee awards in patent cases,

8

the amount of work required (and in short periods of time) as a direct result of the exceptional conduct in this case undermine IV's claim that there was overstaffing and duplicative work.

IV relies on its allegation that five attorneys billed time for preparing the Sanctions Motion as purported support of "overstaffing" and "duplicative and repetitive work". It is unclear who the fifth is, but three attorneys from Paul Hastings (Yar Chaikovsky, Stuart Bartow and Howard Yuan) and one from MNAT (Karen Jacobs) billed time for preparing the motion (*see* Jan. 30 – Feb. 2, 2017 invoices). The majority was done by Mr. Bartow (day-to-day partner) and Mr. Yuan (associate), with Mr. Chaikovsky (lead counsel) and Ms. Jacobs (lead Delaware counsel) providing comments and finalizing the brief. This staffing (four attorneys for an important brief) is hardly excessive, and notably, IV has five lead counsel and two Delaware counsel listed on the cover page of its opposition to Trend's accounting of fees. (D.I. 282).

Considering the magnitude of the entire litigation, the number of items that Dr. McDaniel's changed testimony impacted, and the duration of time for which potential fees may be recovered, the staffing of this matter was not unreasonable and no reduction is warranted.

D. The billing rates of Trend's attorneys are not excessive

Finally, IV seeks an additional 10% reduction by arguing that Trend's rates are excessive. Although IV seeks a 10% reduction across the board, its arguments focus on Messrs. Chaikovsky and Bartow.[5] But IV misstates or mischaracterizes the facts and data in support of its argument.

For example, IV asserts that ███████████████████████████████████████████ ███████████████████████████████████████████ IV's analysis as to

---

[5] IV has not objected to the billing rates of Trend's Delaware counsel, MNAT, ███████ ███████████████████████████████████████████. *E.g.*, *compare*  Exs. B and 2.

9

Mr. Bartow are similarly flawed. Moreover, and notably, none of the cases cited in IV's objections require the Court to use **averages** (whether from AIPLA survey or other sources) as a benchmark for calculating percent reductions as IV has suggested. As Trend noted in its opening brief, the billing rates of its attorneys fall within the 1st and 3rd quartiles from the AIPLA survey, and thus are consistent with these survey rates. And the rates of Trend's attorneys from Paul Hastings and McDermott are generally consistent with Trend's Delaware counsel. *Compare* Exs. B and 2.

IV's proposed 10% reduction based on a gratuitously formulated calculation by IV's counsel based on the highest billing partner amongst Trend's attorneys is unwarranted.

### III. Conclusion

Trend respectfully requests that the Court overrule IV's objections and award Trend a total of ▮▮▮▮▮▮▮, which does not include fees for responding to IV's objections (which Trend respectfully submits should be considered, and will submit upon the Court's request).

---

(. . . continued)
[6] IV argues ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 282 at 18. Although ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is hardly excessive. Moreover, IV ignores that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  |  |
|  | */s/ Michael J. Flynn* |
|  | Karen Jacobs (#2881) |
|  | Michael J. Flynn (#5333) |
|  | 1201 N. Market Street |
|  | P.O. Box 1347 |
|  | Wilmington, DE 19899-1347 |
| OF COUNSEL: | (302) 658-9200 |
|  | kjacobs@mnat.com |
| Yar R. Chaikovsky | mflynn@mnat.com |
| Philip Ou | *Attorneys for Trend Micro Incorporated* |
| PAUL HASTINGS LLP | *and Trend Micro, Inc. (USA)* |
| 1117 S. California Avenue |  |
| Palo Alto, CA 94304 |  |
| (650) 320-1800 |  |

November 13, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on November 20, 2017, upon the following individuals in the manner indicated:

| | |
|---|---|
| Joseph J. Farnan, III, Esquire<br>Brian E. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Parker C. Folse III, Esquire<br>Brooke A.M. Taylor, Esquire<br>SUSMAN GODFREY L.L.P.<br>1201 Third Avenue, Suite 3800<br>Seattle, WA  98101-3000<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| John P. Lahad, Esquire<br>Weston O'Black, Esquire<br>Richard W. Hess, Esquire<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston, TX  77002<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

　　　　　　　　　　　　　　　　　　　　*/s/ Michael J. Flynn*
　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Michael J. Flynn (#5333)