# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>          Plaintiffs,<br><br>    v.<br><br>TREND MICRO INCORPORATED and<br>TREND MICRO, INC. (USA),<br><br>          Defendants. | : : : : : : : : : : : : : | C.A. No. 12-1581-LPS |

## MEMORANDUM ORDER

At Wilmington this **16th** day of **March, 2020**:

Having reviewed the record, and for the reasons stated below, **IT IS HEREBY ORDERED THAT** Defendants' Motion for Review of Clerk's Taxation of Costs (D.I. 301) is **GRANTED** to the extent noted below. The specific amount Plaintiffs will be ordered to pay Defendants will be determined after the Court reviews an additional submission.[1]

    1.      On December 8, 2010, Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV" or "Plaintiffs") filed this patent infringement action against

---

[1] There appears to be a discrepancy between the total amount requested in Defendants' motion ($161,691.72) (*see* D.I. 241) and the substituent parts Defendants seek to have Plaintiffs pay (which add up only to $155,770.86) (*see* D.I. 301 at 12-13). This discrepancy appears to be largely due to Defendants' failure to include in their Motion $5,551.81 for costs incurred for clerk fees and $405.05 for costs incurred for file histories of the patents-in-suit, which had been included in their Bill of Costs. (*See* D.I. 243 (Bartow Decl.) at 2; *see also* D.I. 303 at 14) The Court has only considered awarding costs for the sum of the parts requested – that is, a maximum of $155,770.86 – as Defendants have necessarily not met their burden of proving they are owed an amount greater than the sum of the parts they attempt to recover.

Defendants Trend Micro Incorporated and Trend Micro, Inc. ("Trend Micro" or "Defendants"), as well as Check Point Software Technologies Ltd., Check Point Software Technologies Inc., McAffee, Inc., and Symantec Corporation, asserting U.S. Patent Nos. 5,987,610 ("the '610 patent"), 6,073,142 ("the '142 patent"), 6,460,050 ("the '050 patent"), and 7,506,155 ("the '155 patent"). (D.I. 2)

    A.    On November 21, 2012, the case against Trend Micro was severed. (D.I. 1) IV voluntarily withdrew claims involving the '610 and '155 patents. (D.I. 191; D.I. 215 at 2; D.I. 232; D.I. 234; D.I. 301 at 2)

    B.    On February 6, 2015, a jury trial concluded in the related matter against Symantec. (*See* C.A. No. 10-1067 D.I. 676)

    C.    On April 22, 2015, the Court granted Trend Micro's summary judgment motion and invalidated the '050 and '142 patents under 35 U.S.C. § 101. (D.I. 215-16)

    D.    As of that date, trial in this matter had been scheduled to begin in just 2 ½ weeks, on May 11, 2015. (D.I. 155)

2.    On June 17, 2015, the Court entered Final Judgment in favor of Trend Micro. (D.I. 234)

3.    On September 30, 2016, the Court of Appeals for the Federal Circuit affirmed the judgment of invalidity of the '050 and '142 patents. (D.I. 240)

4.    As correctly stated by Defendants: "Resolving the infringement claims by [IV] took over half a decade of document production, depositions, hearings, and multiple opinions and judgments by this Court and the Federal Circuit." (D.I. 301 at 1)

5. On February 2, 2017, Trend Micro filed a Bill of Costs with the Clerk of Court, supported by a Declaration of D. Stuart Bartow. (D.I. 241-43)[2]

6. IV objected to the Bill of Costs on March 1, 2017. (D.I. 252)

7. On March 12, 2019, the Clerk of Court entered his Taxation of Costs in the amount of $7,488.50. (D.I. 300) ("Taxation")

8. On March 19, 2019, Trend Micro filed its motion objecting to the Taxation. (D.I. 301)

9. On March 25, 2019, in the related case, the Court granted Symantec's motion to review the Clerk's taxation of costs, *see Intellectual Ventures I LLC v. Symantec Corporation*, C.A. No. 10-1067 D.I. 793 ("*Symantec*"), ordering IV to pay Symantec $276,463.99 in costs and resolving many of the same disputes that are presented by the motion pending here.

10. The pending motion was fully briefed as of April 22, 2019. (*See* D.I. 303, 304)

11. "Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012). In particular, Rule 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." As the Third Circuit has observed, Rule 54(d)(1) "uses the word 'costs' as a term of art, rather than to refer to all expenses a prevailing party may incur in a given action." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 458 (3d Cir. 2000).

---

[2] Trend Micro also moved to declare the case exceptional under 35 U.S.C. § 285 (D.I. 244), which the Court did on September 1, 2017 (D.I. 263, 264). On October 24, 2018, the Court granted Trend Micro's request for $444,051.14 in attorneys fees pursuant to Section 285. (D.I. 293) IV appealed this order on October 23, 2018. (D.I. 294) On December 19, 2019, the Federal Circuit reversed and remanded on the Section 285 issue. (D.I. 308) The Court will address the remand in a separate Order.

12. The categories of costs that are taxable are set out in 28 U.S.C. § 1920, a statute to which the Supreme Court "has accorded a narrow reading." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 171 (3d Cir. 2012) (citing *Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437, 442 (1987)). Section 1920 states, in full:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

13. In the District of Delaware, Rule 54 and Section 1920 are supplemented by Local Rule 54.1, which provides additional guidance on taxable costs. Pursuant to Local Rule 54.1(a)(1), "[u]nless otherwise ordered by the Court, the prevailing party shall be entitled to costs." D. Del. L.R. 54.1(a)(1). Local Rule 54.1 directs prevailing parties to submit a bill of costs to the Clerk, who verifies the bill and makes any necessary adjustments. *See id.*

14. Together, § 1920, Federal Rule 54, and Local Rule 54.1 create a "strong presumption" that costs should be awarded to the prevailing party. *See Reger v. The Nemours*

*Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010); *see also Paoli*, 221 F.3d at 462. "Only if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party." *Paoli*, 221 F.3d at 468. "This is so because the denial of such costs is akin to a penalty." *Reger*, 599 F.3d at 288. "Thus, if a district court, within its discretion, denies or reduces a prevailing party's award of costs, it must articulate its reasons for doing so." *Id.*

15. A consequence of the strong presumption that the prevailing party should be awarded its costs that are shown to be within the narrow statutory categories of taxable costs is that "the assessment of costs most often is merely a clerical matter that can be done by the court clerk." *Taniguchi*, 566 U.S. at 573 (internal quotation marks omitted); *see also Paoli*, 221 F.3d at 453 (describing costs analysis as "essentially ministerial act of the clerk of court"). Nevertheless, a party disappointed with the Clerk's taxation determination may appeal it to the District Court, which must review the Clerk's decision *de novo*. *See Reger*, 599 F.3d at 288; *Paoli*, 221 F.3d at 461; *see also* Fed. R. Civ. P. 54(d)(1) ("On motion served . . ., the court may review the clerk's action."). And, notwithstanding the Local Rules, the Court "retains discretion to award costs to the full extent permitted by Section 1920." *Honeywell Int'l Inc. v. Nokia Corp.*, 2014 WL 2568041, at *5 (D. Del. May 30, 2014).

16. In reviewing the Clerk's costs decision, the Court may consider such factors as: "(1) the prevailing party's unclean hands, bad faith, dilatory tactics, or failures to comply with process during the course of the instant litigation or the costs award proceedings; and (2) each of the losing parties' potential indigency or inability to pay the full measure of a costs award levied against them." *Reger*, 599 F.3d at 288 n.3 (internal quotation marks omitted). "In contrast, however, a district court may not consider (1) the losing parties' good faith in pursuing the

5

instant litigation (although a finding of bad faith on their part would be a reason not to reduce costs); (2) the complexity or closeness of the issues – in and of themselves – in the underlying litigation; or (3) the relative disparities in wealth between the parties." *Id.* (internal quotation marks omitted). In other words, that a case is "a classic close case, brought in good faith" is not an "appropriate criteri[on] in determining whether a costs award is equitable." *Paoli*, 221 F.3d at 465.

17. "[T]he losing party bears the burden of making the showing that an award is inequitable under the circumstances." *Id.* at 462-63. Notwithstanding this burden on the losing party, the Court (like the Clerk) has discretion to deny a request for taxation of costs based on a prevailing party's failure to support its request with sufficient and specific documentation. *See* 28 U.S.C. § 1924 ("Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."). This principle is reflected in Local Rule 54.1(a)(2), which provides, "[t]he bill of costs shall clearly describe each item of cost and comply with the provisions of 28 U.S.C. § 1924."

18. The parties agree that Trend Micro is the prevailing party. It is also undisputed that Trend Micro filed the Bill of Costs and a supporting affidavit in a timely manner. The disputes relate to the Clerk of Court's denials of portions of Trend Micro's Bill of Costs, resulting in reduction of Trend Micro's requested $161,691.72 to an award of $7,488.50. (*See* D.I. 241, 300)

A. Transcript Costs

The Clerk of Court denied Defendants' request for transcript costs in the amount of $3,085.85. (D.I. 300 at 8) Defendants object. (D.I. 301 at 5) The Court will grant Defendants' request to recover some of their costs in obtaining transcripts, but not all of those costs.

The Court agrees with Trend Micro that it was necessary for litigating this large, complex patent infringement action – spanning many years and, at times, involving many parties – for Trend Micro to obtain copies of the transcripts of hearings and conferences with the Court, including trial transcripts from the related *Symantec* litigation. The Court considered these *Symantec* trial transcripts in connection with its review of Trend Micro's Section 285 motion. (*See* D.I. 264 at 3-5, 15, 18-19, 22-26, 32-33, 39-40, 44-50, 57-59; *see also Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1382 (Fed. Cir. 2019) (discussing *Symantec* trial events in context of appeal of Trend Micro-related ruling) Transcripts of the *Symantec* trial "were also necessary for Trend Micro to prepare for [its] trial" (D.I. 304 at 4), which was scheduled to begin three months after the *Symantec* trial and involved many of the same issues and witnesses. *See generally Symantec* at 6 ("[I]t was necessary for litigating this large, complex patent infringement action . . . for Symantec to obtain copies of the transcripts of hearings and conferences with the Court, even those involving other parties.").

However, Trend Micro has failed to establish why it needed to order expedited transcripts of the *Symantec* trial. Trend Micro does not indicate that it was participating or assisting in the *Symantec* trial. It does not explain how having same-day transcripts was necessary to representing its client, as opposed to being simply for the convenience of counsel. The reasons that persuaded the Court to award costs for expedited transcripts in *Symantec* – "The use of daily (i.e., highly expedited) transcripts ***during*** a jury trial is commonplace in high-stakes patent

7

litigation ... and ... almost certainly necessary, for purposes including preparing examinations and cross-examinations, understanding the Court's rulings [on] objections and at sidebars, arguing motions for judgment as a matter of law, providing support for jury instructions, and aiding the presentation to the jury ...." (*Symantec* at 6) (emphasis added) – do not apply to a party that is preparing for a ***future*** trial. Accordingly, the Court will award costs equal to the cost of obtaining transcripts with a 14-day turn-around.[3]

B. Exemplification, Printing, and Copying Costs

The Clerk of Court denied Defendants' request for exemplification fees of **$11,445.45**, as well as Defendants' request for **$10,893.63** in costs related to preparation of Defendants' technology tutorial and presentation slides for the Markman hearing. (D.I. 300 at 5-6, 10) Defendants object. (D.I. 301 at 5-8) The Court will award all of these costs, consistent with its ruling in *Symantec*.

The Court will grant Defendants' requested **$11,445.45** in costs for conversion of electronic documents to the proper format for production to IV in discovery. (D.I. 301 at 6; D.I. 303 at 4-5; D.I. 304 at 4-5; *see also Race Tires Am.*, 674 F.3d at 171 n.11 ("[W]e have acknowledged that the costs of conversion to an agreed-upon production format are taxable as the functional equivalent of 'making copies.'"); *Laboratory Skin Care Inc. v. Limited Brands, Inc.*, 2016 WL 1266564 at *3 (D. Del. Mar. 30, 2016)) Regardless of whether trial occurred,

---

[3] The amount Trend Micro is entitled to obtain for trial transcripts with a 14-day turnaround time is not a number that can be discerned from the existing record. The parties will be given an opportunity to confer and submit an order accounting for this amount.

The Court is persuaded that Trend Micro provided adequate proof of cost (including firm invoices, despite a lack of court-reporter invoices) for the transcripts it ordered. (*See* D.I. 301 at 5; D.I. 303 at 2-3; D.I. 304 at 3-4; *see also Symantec* at 2 ("[I]t is within the Court's discretion to accept the firm billing for these costs, and IV cites no authority otherwise."))

"Trend Micro's preparations were undertaken in accordance with the applicable pre-trial deadlines set forth in the applicable Scheduling Orders and Pretrial Order." (D.I. 304 at 5) (citing *Honeywell Int'l Inc.*, 2014 U.S. Dist. LEXIS 79611, at *37) "[P]reparation of video clips into a format that could be readily presented at trial was necessary to streamline presentation of evidence at trial." (D.I. 304 at 6) Here, trial was imminent, as the Court granted summary judgment and cancelled trial only 2 ½ weeks before it was scheduled to begin. Moreover, "to agree with [Plaintiffs] in this case would punish [Defendants] for prevailing on summary judgment." *Honeywell Int'l Inc.*, 2014 U.S. Dist. LEXIS 79611, at *37.

The Court will also grant Trend Micro's requested **$10,893.63** for its share of the costs of preparation of a technology tutorial, a request to which IV does not now object. (*See* D.I. 303 at 6)

### C. Deposition Costs

The Clerk of Court awarded Defendants **$6,578.50** of their requested $124,267.92 in deposition transcript fees. (D.I. 300 at 3-4) Defendants object. (D.I. 301 at 8-11)

The Court will grant Defendants' requested **$124,267.92** for transcripts for depositions that were necessary for use in the case. *See Honeywell*, 2014 WL 2568041, at *6 (awarding deposition costs despite standards of LR 54.1(b)(3) not being met). This is consistent with the Court's ruling in *Symantec*, in which the Court was persuaded "by a preponderance of the evidence that all of the deposition transcripts for which [Trend Micro now also] seeks to recover its costs were necessary for use in the case." (*Symantec*, D.I. 793 at 8; *see also* D.I. 301 at 8 ("[T]he majority of these depositions were cited in the parties' submissions that were addressed in the Court's claim construction, summary judgment and Daubert decisions, were reasonably necessary when taken, and would have been reasonably been necessary for trial, had a trial been

9

necessary.")) The Court again takes a "practical view" of the litigation (*see Symantec*, D.I. 793 at 8) and finds the deposition for which Trend Micro seeks to recover transcript costs were all reasonably necessary when taken.

IV lodges specific objections to the taxing of rough drafts of deposition transcripts (D.I. 303 at 7-8); real-time feed costs during the deposition (*id.* at 8-9); expedited processing (*id.* at 9); video synchronization of deposition film with the related transcripts (*id.* at 9-10); and extras such as optical character recognition, linked exhibits, conference rooms, reporter travel fees, CD packages, and shipping/handling (*id.* at 10-11). IV contends that these expenses are solely for the convenience of counsel and not necessary to litigation. As in *Symantec*, however, the Court finds that expedited processing, rough drafts, "real time" feeds, shipping and handling, and the other add-ons were reasonably necessary. (*Symantec*, D.I. 788 at 7-9 (Symantec opposing the taxation of "expedited processing, rough drafts, or 'RealTime' feeds"); *Symantec*, D.I. 793 at 8 (awarding all requested deposition costs)) This Court is not alone in finding such costs taxable under 28 U.S.C. § 1920. (*See* D.I. 304 at 8-10) (citing cases)[4]

D. Process Server Costs

The Clerk of Court awarded Defendants **$910.00** of the requested $6,078.01 in process server fees. (D.I. 300 at 8-9) Defendants object. (D.I. 301 at 11-12) The Court agrees with the Clerk.

It is undisputed that costs for service of subpoenas are taxable under 28 U.S.C. § 1920(1). IV argues that this does not extend to fees for expedited service and is limited only to the fees of

---

[4] The Court suspects that a sophisticated patent litigant like IV uses many if not all of these same supposed "conveniences." Parties to high-stakes patent litigation like that initiated here by IV should understand that these types of costs may turn out to be recoverable by the prevailing party.

the United States Marshal. (D.I. 303 at 13) While some courts have awarded costs for rush services (*see* D.I. 304 at 10) (citing cases), Trend Micro offers no evidence or persuasive reasoning for why expedition was required here. Further, as IV explains, it should not have to pay over $1,000 in costs for attempting to serve a potential prior art witness who was never actually served or deposed. (D.I. 303 at 14)

**IT IS FURTHER ORDERED** that the parties shall meet and confer and, no later than March 20, 2020, submit a proposed form of Order for the Court to enter, which shall include the precise amount of costs Plaintiffs will be ordered to pay Defendants, consistent with the rulings stated herein.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE